# EXHIBIT 4



60 2022 00022349

# Nassau County
# Maureen OConnell
# County Clerk
# Mineola, NY 11501

Instrument Number: 2022- 00022349

As

## M08 - MORTGAGE AGREEMENT

Recorded On: February 18, 2022

Parties: JERICHO PLAZA PORTFOLIO LLC

TO NATIXIS REAL ESTATE CAPITAL LLC

Recorded By: RIVERSIDE

Billable Pages: 16

Num Of Pages: 17

Comment:

### ** Examined and Charged as Follows: **

| | | | | | | |
|---|---|---|---|---|---|---|
| M08 - MORTGAGE AGREEMENT | 125.00 | AFT - AFFIDAVIT | 5.00 | Blocks - Mortgages - $300 | | 300.00 |
| Recording Charge: | 430.00 | | | | | |
| | Amount | Consideration Amount | RS#/CS# | | | |
| Tax-Mortgage | 0.00 | 0.00 | DM 57400 | Basic | 0.00 | Spec ASST | 0.00 |
| OYSTER BAY | | | | Local NY CITY | 0.00 | Spec ADDL SONYMA | 0.00 |
| EXEMPT | | | | Additional MTA | 0.00 | Transfer | 0.00 |
| Tax Charge: | 0.00 | | | | | |

Property Description:

| Line | Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|---|
| 1 | 11 | 355 | 32 | | OYSTER BAY |
| 2 | 11 | 355 | 37 | | OYSTER BAY |

### ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For: Nassau County, NY

**File Information:**

Document Number: 2022- 00022349

Receipt Number: 2510567

Recorded Date/Time: February 18, 2022 11:08:58A

Book-Vol/Pg: Bk-M Vl-46359 Pg-166

Cashier / Station: 0 GJS / NCCL-6XT0JK2

**Record and Return To:**

MCDERMOTT WILL & EMERY LLP

ATTN SCOTT A WEINBERG ESQ

1 VANDERBILT AVE

NEW YORK NY 10017

*Maureen O'Connell*

County Clerk Maureen O'Connell



Premises located in the County of Nassau, Town of Oyster Bay and State of New York:

STREET ADDRESS: One Jericho Plaza and Two Jericho Plaza, Jericho, New York
SECTION: 11
BLOCK: 355
LOT(S): 31 and 32

JERICHO PLAZA PORTFOLIO LLC, as assignor

to

NATIXIS REAL ESTATE CAPITAL LLC,
as assignee

## ASSIGNMENT OF LEASES AND RENTS

Dated: As of December 31, 2021

THIS INSTRUMENT PREPARED BY, AND WHEN RECORDED PLEASE RETURN TO:

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017-3852
Attention: Scott A. Weinberg, Esq.

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS (as the same may be amended, modified, supplemented, restated or replaced from time to time, this "*Assignment*") dated and effective as of December 31, 2021, is made by JERICHO PLAZA PORTFOLIO LLC, a Delaware limited liability company, having an address at 101 Hudson Street, Suite 1703, Jersey City, New Jersey 07302, as assignor ("*Borrower*"), to NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, having an address at 1251 Avenue of the Americas, New York, New York 10020, as assignee (together with its successors and assigns, "*Lender*").

R E C I T A L S:

WHEREAS, Borrower is the owner of fee simple title to that certain parcel of real property (the "*Premises*") described in **Exhibit "A"** attached hereto, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon (collectively, the "*Property*"); and

WHEREAS, Borrower and Lender have entered into a certain Loan Agreement, dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*"), pursuant to which Lender has agreed to make a secured loan to Borrower in the original principal amount of $149,180,000.00 (the "*Loan*"); and

WHEREAS, Borrower has executed that certain Consolidated, Amended and Restated Promissory Note in such principal amount, dated as of the date hereof (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, the "*Note*"), which is secured by, *inter alia*, that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (as amended from time to time, the "*Security Instrument*") on the Property; and

WHEREAS, it is a condition to the obligation of Lender to make the Loan to Borrower pursuant to the Loan Agreement that Borrower execute and deliver this Assignment; and

WHEREAS, this Assignment is being given as additional security for the Loan; and

WHEREAS, capitalized terms used in this Assignment without definition have the respective meanings assigned to such terms in the Loan Agreement or the Security Instrument, as the case may be, the terms of each of which are specifically incorporated by reference herein.

NOW, THEREFORE, for good and valuable consideration, receipt of which by the parties hereto is hereby acknowledged, and additionally for the purpose of additionally securing the Debt, Borrower hereby assigns, transfers, conveys and sets over unto Lender, all right, title and interest of Borrower in and to all Leases and all Rents;

TO HAVE AND TO HOLD the same unto Lender, and its successors and assigns forever, upon the terms and conditions and for the uses hereinafter set forth.

And Borrower hereby further agrees as follows:

1. **Certain Representations, Warranties and Covenants.** Borrower represents, warrants and covenants to Lender that:

(a) The payment of the Rents to accrue under any Lease will not be waived, released, reduced, discounted or otherwise discharged or compromised by Borrower;

(b) Borrower has not performed, and will not perform, any acts, and has not executed, and will not execute, any instrument that would prevent Lender from exercising its rights under this Assignment; and

(c) Borrower hereby authorizes and directs any tenant under any of the Leases and any successor to all or any part of the interests of any such tenant to pay directly to the applicable Clearing Account, in accordance with the terms of the Loan Agreement, the Rents due and to become due under such tenant's Lease, and such authorization and direction shall be sufficient warrant to the tenant to make future payments of Rents directly to the Clearing Account in accordance with the terms of the Loan Agreement without the necessity for further consent by Borrower.

2. **Assignment; Deferred Exercise of Rights.**

(a) As part of the consideration for the Debt, Borrower does hereby absolutely and unconditionally assign to Lender all right, title and interest of Borrower in and to all present and future Leases and Rents, and this Assignment constitutes a present and absolute assignment and is intended to be unconditional and not as an assignment for additional security only. It is further intended that it not be necessary for Lender to institute legal proceedings, absent any requirements of law or regulation to the contrary, to enforce the provisions hereof. Borrower hereby authorizes Lender or its agents to collect the Rents; provided, however, that prior to an Event of Default, Borrower shall have a revocable license, but limited as provided in this Assignment and in any of the other Loan Documents, to otherwise deal with, and enjoy the rights of the lessor under, the Leases.

(b) Upon the occurrence and during the continuance of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, the license referred to in Subsection (a) above shall immediately be revoked and Lender shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity.

3. **Rents Held in Trust by Borrower.** Rents held or received by Borrower shall be held or received by Borrower as trustee for the benefit of Lender only and shall be promptly deposited directly to the applicable Clearing Account in accordance with the terms of the Loan Agreement.

4. **Effect on Rights Under Other Documents.** Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by Lender of its rights and remedies under any of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms of the other Loan Documents. The rights of Lender under the other Loan Documents may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents or grant of a security interest contained in any of the other Loan Documents.

5. **Event of Default.** Upon or at any time after the occurrence and during the continuance of an Event of Default, then in addition to and without limiting any of Lender's rights and remedies hereunder and under the other Loan Documents and as otherwise available at law or in equity:

(a) Lender may, at its option, without waiving such Event of Default and without regard to the adequacy of the security for the Debt, either in person or by agent, without bringing any action or

DM_US 183721394-4.105065.0051

proceeding, or by a receiver appointed by a court, without taking possession of the Property in its own name, demand, sue for, direct tenants to pay Rents directly into any Clearing Account or otherwise collect and receive all Rents, including those past-due and unpaid, for application to the payment of the Debt in accordance with the terms of the Loan Documents, and Lender may enter into, and to the extent that Borrower would have the right to do so, cancel, enforce or modify any Lease. The exercise by Lender of the option granted it in this Section 5(a) and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any Event of Default.

(b) Borrower hereby acknowledges and agrees that payment of any item of Rent by a Person to Lender as hereinabove provided shall constitute payment in full of such item of Rent by such Person, as fully and with the same effect as if it had been paid to Borrower.

(c) Lender in respect of the Leases and Rents shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as in effect in the State in which such rights and remedies are asserted as described in Section 12(b) hereof to the extent of such rights thereunder and additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted.

6. **Application of Rents and Proceeds.** After the occurrence and during the continuance of an Event of Default, Rents received or held by Borrower or Lender shall be applied in accordance with the terms of the Loan Documents.

7. **Attorney-in-Fact.** Upon the occurrence and during the continuance of any Event of Default, Borrower hereby appoints Lender the attorney-in-fact of Borrower to take any reasonable action and execute any instruments that Borrower is obligated, or has covenanted and agreed under the Loan Agreement or the other Loan Documents to take or execute, which appointment as attorney-in-fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing provisions of this Section 7, upon the occurrence and during the continuance of an Event of Default, Borrower does hereby irrevocably appoint Lender as its attorney-in-fact with full power, in the name and stead of Borrower to demand, collect, receive and give complete acquittance for any and all of the Rents now due or that may hereafter become due, and at Lender's discretion, to file any claim, to take any other action, to institute any proceeding or to make any settlement of any claim, either in its own name or in the name of Borrower or otherwise, which Lender may deem reasonably necessary or desirable in order to collect and enforce the payment of Rents.

8. **Termination.** Lender, by the acceptance of this Assignment, agrees that when all of the Debt shall have been paid in full, this Assignment shall terminate, and Lender shall promptly execute and deliver to Borrower, upon such termination such instruments of termination or re-assignment and Uniform Commercial Code termination statements, all without recourse and without any representation or warranty whatsoever, as shall be reasonably requested by Borrower.

9. **Expenses.** Borrower agrees to pay to Lender all reasonable third-party out-of-pocket expenses (including reasonable expenses for attorneys' fees and costs of every kind) of, or incident to, the enforcement of any of the provisions of this Assignment or performance by Lender of any obligation of Borrower hereunder which Borrower has failed or refused to perform.

10. **Further Assurances.** Borrower agrees that, from time to time upon the written request of Lender, it will give, execute, deliver, file and/or record any financing statements, notice, instrument, document, agreement or other papers and do such other acts and things that may be reasonably necessary to create, preserve, perfect or validate this Assignment, to enable Lender to exercise and enforce its rights

3

hereunder with respect to this Assignment or to otherwise carry out the purposes and intent of this Assignment.

**11. No Obligation by Lender.** Prior to the date on which Lender takes title to and/or physical possession of the Property pursuant to a foreclosure action, Lender's acceptance and recording of a deed in lieu of foreclosure or otherwise, by virtue of this Assignment, Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any of the Leases. This Assignment shall not operate to constitute Lender as a lender in possession of the Property or to place responsibility for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by any tenant or other party in possession or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control thereof. Notwithstanding anything herein to the contrary, the foregoing shall not relieve Lender of any liability if such liability arises as a result of Lender's gross negligence or willful misconduct.

**12. Miscellaneous.**

(a) No failure on the part of Lender or any of its agents to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by Lender or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. Subject to Section 16 hereof, the remedies herein are cumulative and are not exclusive of any remedies provided by law.

(b) WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE ENFORCEMENT OF THIS ASSIGNMENT, THIS ASSIGNMENT SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS SECTION AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN ALL MATTERS RELATING TO THIS ASSIGNMENT AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

(c) Subject to Section 16 hereof, all rights and remedies set forth in this Assignment are cumulative, and Lender may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby; and no such right or remedy set forth in this Assignment shall be deemed exclusive of any of the remedies or rights granted to Lender in any of the Loan Documents. Nothing contained in this Assignment shall be deemed to limit or restrict the rights and remedies of Lender under the Loan Agreement or any of the other Loan Documents.

(d) Until the indebtedness and all other obligations secured by the Loan Documents is paid in full, Borrower will, upon request, deliver from time to time to Lender executed originals to the extent available, otherwise photocopies certified by Borrower as true, correct and complete, of executed originals, of any and all existing Leases to which Borrower is a party, and executed originals, or photocopies of executed originals, so certified by Borrower, if an executed original is not available, of all other and future

Leases to which Borrower is a party, and upon request of Lender, will specifically transfer and assign to Lender such other and future Leases upon the same terms and conditions as herein contained.

(e) Borrower represents that it: (i) has been advised that Lender engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Borrower or its affiliates; (ii) is represented by competent counsel and has consulted counsel before executing this Assignment; and (iii) has relied solely on its own judgment and on its counsel and advisors in entering into the transaction(s) contemplated hereby without relying in any manner on any statements, representations or recommendations of Lender or any parent, subsidiary or affiliate of Lender.

13. **No Oral Change.** This Assignment may not be amended except by an instrument in writing signed by Borrower and Lender.

14. **Successors and Assigns.** Borrower may not assign its rights under this Assignment except as permitted under the Loan Agreement. Subject to the foregoing, this Assignment shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective successors and assigns.

15. **Notices.** All notices, demands, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Loan Agreement.

16. **Exculpation.** It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Assignment shall be limited as and to the extent provided in Section 11.1 of the Loan Agreement.

17. **Section 291-f Agreement.** This Assignment is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Borrower shall (unless such notice is contained in such tenant's Lease) deliver notice of this Assignment in form and substance reasonably acceptable to Lender, to all present and future Tenants under any Lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Lender the full protections and benefits of Section 291-f.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, this Assignment has been duly executed by Borrower as of the day and year first above written.

BORROWER:

**JERICHO PLAZA PORTFOLIO LLC,**
a Delaware limited liability company

By: _____
Name: Menachem Meisner
Title: Authorized Signatory

## ACKNOWLEDGMENT

STATE OF NEW ~~YORK~~ Jersey v.s )
                            ) ss:
COUNTY OF Bergen )

On December 27, 2021, before me, personally appeared Menachem Meisner, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

OFFICIAL SEAL
VLADIMIR SHPUNTOV
NOTARY PUBLIC - NEW JERSEY
My Comm. Expires August 14, 2023

## Exhibit "A"
[LEGAL DESCRIPTION]

Parcel I
All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more particularly described as follows:

Beginning at a point formed by the intersection of the northerly side of the "North Service Road" of the Long Island Expressway (Interstate 495) also known as North Marginal Road with the southerly side of Jericho Turnpike (New York State Route 25),

Running thence, in an easterly direction along the southerly side of Jericho Turnpike the following two (2) courses and distances:

1. Along the arc of a curve to the right, Radius 493.00 feet, Length 206.32 feet,
2. North 52 degrees 50 minutes 04 seconds East, 1357.05 feet to the division line of Tax Lots 31 and 32,

Running thence along the aforementioned division line, South 36 degrees 12 minutes 08 seconds East, 923.09 feet to a point,

Running thence through and over Tax Lot 31 the following six (6) courses and distances:

1. South 53 degrees 46 minutes 05 seconds West, 29.48 feet,
2. North 36 degrees 09 minutes 16 seconds West, 351.64 feet,
3. South 53 degrees 50 minutes 44 seconds West, 456.70 feet,
4. South 36 degrees 09 minutes 16 seconds East, 84.37 feet,
5. South 09 degrees 55 minutes 28 seconds East, 28.60 feet,
6. South 36 degrees 07 minutes 44 seconds East, 275.61 feet to the northerly side of the "North Service Road" of the Long Island Express (Interstate 495) also known as North Marginal Road,

Running thence in an easterly direction along the northerly side of said "North Service Road" the following six (6) courses and distances:

1. Along the arc of a curve to the right, Radius 19279.57 feet, Length 122.39 feet,
2. South 03 degrees 58 minutes 52 seconds East, 1.00 feet,
3. Along the arc of a curve to the right, Radius 19280.57 feet, Length 518.67 feet,
4. South 87 degrees 33 minutes 37 seconds West, 125.94 feet,
5. Along the arc of a curve to the right, Radius 1200.00 feet, Length 568.71 feet,
6. North 65 degrees 17 minutes 09 seconds West, 65.53 feet to the southerly side of Jericho Turnpike (New York State Route 25) and place or point of beginning.

**FOR INFORMATION ONLY: Section: 11, Block: 355, Part of Lot 31**

(continued)

Parcel II
All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more particularly described as follows:

Beginning at a point on the southerly side of Jericho Turnpike (New York State Route 25), as widened, said point being the following two (2) courses and distances from the intersection formed by the westerly side of Simpson Street with the southerly side of Jericho Turnpike before widening:

1. South 53 degrees 48 minutes 56 seconds West, 50.00 feet,
2. South 36 degrees 12 minutes 08 seconds East, 14.76 feet,

Running thence, from said point of beginning, along the westerly line lands of the County of Nassau, lands now or formerly of Fleet Homes, Inc, and the map of "Sacramento Homes" the following two (2) courses and distances:

1. South 36 degrees 12 minutes 08 seconds East, 1505.86 feet,
2. South 19 degrees 18 minutes 04 seconds West, 146.15 to the northerly side of the "North Service Road" of the Long Island Expressway (Interstate 495) also known as North Marginal Road,

Running thence in an easterly direction, along the north side of the "North Service Road" the following three (3) courses and distances:

1. Along the arc of a curve to the right, Radius 19280.57 feet, Length 610.63 feet,
2. North 04 degrees 40 minutes 07 seconds West, 1.00 feet,
3. Along the arc of a curve to the right, Radius 19279.57 feet, Length 45.52 feet (actual) 45.56 (deed) to the division line between Tax Lots 31 and 32,

Running thence along the aforementioned division line, North 36 degrees 12 minutes 08 seconds West, 1256.44 feet to the southerly side of Jericho Turnpike (New York State Route 25),

Running thence along the southerly side of Jericho Turnpike, North 52 degrees 50 minutes 04 seconds East, 693.16 feet to the place or point of beginning.

**FOR INFORMATION ONLY: Section: 11, Block: 355, Lot: 32**

# TAX LAW SECTION 255 AFFIDAVIT
Assignment of Leases and Rents

STATE OF NEW JERSEY )
                             )   ss.:
COUNTY OF BERGEN )

The undersigned, being duly sworn, does depose and say:

1. I am an Authorized Signatory of **JERICHO PLAZA PORTFOLIO LLC**, a Delaware limited liability company (the "Borrower") having an address at 101 Hudson Street, Suite 1703, Jersey City, New Jersey 07302, and I am familiar with the facts set forth herein.

2. Borrower is the owner of certain property which is more particularly described on Exhibit A (the "Property").

3. Borrower has executed and delivered to **NATIXIS REAL ESTATE CAPITAL LLC**, a Delaware limited liability company ("Lender"), a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 31, 2021, encumbering the Property and securing the principal sum of $149,180,000.00 (the "Mortgage"). The Mortgage was recorded immediately prior hereto and no mortgage recording tax is required to be paid with such recording. Mortgage recording tax in the amounts set forth in Exhibit B attached hereto was duly paid at the time of the recording of the mortgages set forth on Exhibit B, which mortgages have been consolidated, amended and restated by the Mortgage

4. That herewith offered for recording is an Assignment of Leases and Rents dated as of December 31, 2021 (the "Assignment of Rents").

5. That the Assignment of Rents was given to Lender as further security for a loan secured by the Mortgage and does not create or secure any new or further indebtedness or obligations secured by or which under any contingency may be secured by the Assignment of Rents.

[NO FURTHER TEXT ON THIS PAGE]

Deponent respectfully requests exemption from the mortgage recording tax under Section 255 of Article 11 of the Tax Law of the State of New York for said Agreement.

_____
Name: Menachem Meisner

Sworn to before me this 27 day of December, 2021

_____
Notary Public



OFFICIAL SEAL
VLADIMIR SHPUNTOV
NOTARY PUBLIC - NEW JERSEY
My Comm. Expires August 14, 2023

# EXHIBIT A

## (PROPERTY DESCRIPTION)

Parcel I

All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more particularly described as follows:

Beginning at a point formed by the intersection of the northerly side of the "North Service Road" of the Long Island Expressway (Interstate 495) also known as North Marginal Road with the southerly side of Jericho Turnpike (New York State Route 25),

Running thence, in an easterly direction along the southerly side of Jericho Turnpike the following two (2) courses and distances:

1. Along the arc of a curve to the right, Radius 493.00 feet, Length 206.32 feet,
2. North 52 degrees 50 minutes 04 seconds East, 1357.05 feet to the division line of Tax Lots 31 and 32,

Running thence along the aforementioned division line, South 36 degrees 12 minutes 08 seconds East, 923.09 feet to a point,

Running thence through and over Tax Lot 31 the following six (6) courses and distances:

1. South 53 degrees 46 minutes 05 seconds West, 29.48 feet,
2. North 36 degrees 09 minutes 16 seconds West, 351.64 feet,
3. South 53 degrees 50 minutes 44 seconds West, 456.70 feet,
4. South 36 degrees 09 minutes 16 seconds East, 84.37 feet,
5. South 09 degrees 55 minutes 28 seconds East, 28.60 feet,
6. South 36 degrees 07 minutes 44 seconds East, 275.61 feet to the northerly side of the "North Service Road" of the Long Island Express (Interstate 495) also known as North Marginal Road,

Running thence in an easterly direction along the northerly side of said "North Service Road" the following six (6) courses and distances:

1. Along the arc of a curve to the right, Radius 19279.57 feet, Length 122.39 feet,
2. South 03 degrees 58 minutes 52 seconds East, 1.00 feet,
3. Along the arc of a curve to the right, Radius 19280.57 feet, Length 518.67 feet,
4. South 87 degrees 33 minutes 37 seconds West, 125.94 feet,
5. Along the arc of a curve to the right, Radius 1200.00 feet, Length 568.71 feet,
6. North 65 degrees 17 minutes 09 seconds West, 65.53 feet to the southerly side of Jericho Turnpike (New York State Route 25) and place or point of beginning.

**FOR INFORMATION ONLY: Section: 11, Block: 355, Part of Lot 31**

Parcel II

All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more particularly described as follows:

Beginning at a point on the southerly side of Jericho Turnpike (New York State Route 25), as widened, said point being the following two (2) courses and distances from the intersection formed by the westerly side of Simpson Street with the southerly side of Jericho Turnpike before widening:

1. South 53 degrees 48 minutes 56 seconds West, 50.00 feet,
2. South 36 degrees 12 minutes 08 seconds East, 14.76 feet,

Running thence, from said point of beginning, along the westerly line lands of the County of Nassau, lands now or formerly of Fleet Homes, Inc, and the map of "Sacramento Homes" the following two (2) courses and distances:

1. South 36 degrees 12 minutes 08 seconds East, 1505.86 feet,
2. South 19 degrees 18 minutes 04 seconds West, 146.15 to the northerly side of the "North Service Road" of the Long Island Expressway (Interstate 495) also known as North Marginal Road,

Running thence in an easterly direction, along the north side of the "North Service Road" the following three (3) courses and distances:

1. Along the arc of a curve to the right, Radius 19280.57 feet, Length 610.63 feet,
2. North 04 degrees 40 minutes 07 seconds West, 1.00 feet,
3. Along the arc of a curve to the right, Radius 19279.57 feet, Length 45.52 feet (actual) 45.56 (deed) to the division line between Tax Lots 31 and 32,

Running thence along the aforementioned division line, North 36 degrees 12 minutes 08 seconds West, 1256.44 feet to the southerly side of Jericho Turnpike (New York State Route 25),

Running thence along the southerly side of Jericho Turnpike, North 52 degrees 50 minutes 04 seconds East, 693.16 feet to the place or point of beginning.

**FOR INFORMATION ONLY: Section: 11, Block: 355, Lot: 32**

# EXHIBIT B

## (THE MORTGAGES)

1. **SUBSTITUTE MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTUREFILING A**
   Mortgagor:      One-Two Jericho Plaza Owner LLC
   Mortgagee:      Jericho Plaza Note LLC
   Amount:         $71,425,000.00
   Dated:          February 12, 2016
   Recorded:       May 20, 2016
   Liber:          41243
   Page:           388

   Notes:
   As derived from Promissory Note and Mortgage Splitter Agreement recorded May 20, 2016 in Liber 41243Page 1. Said Agreement split a consolidated lien into two separate liens as follows:
   (i) Substitute Promissory Note A above; and
   (ii) Substitute Promissory Note B in the sum of $92,325,000.00 which was satisfied by Satisfaction ofMortgage recorded June 10, 2016 in Liber 6654 Page 604 and released from the PUE.

1A. **ASSIGNMENT OF SUBSTITUTE MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTSAND FIXTURE FILING A**
   Assignor:       Jericho Plaza Note LLC
   Assignee:       Parlex 7 Finco, LLC
   Dated:          February 12, 2016
   Recorded:       June 10, 2016
   Liber:          41291
   Page:           677

2. **GAP MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTUREFILING**
   Mortgagor:      Jericho Plaza LLC
   Mortgagee:      Parlex 7 Finco, LLC
   Amount:         $3,575,000.00
   Dated:          February 12, 2016
   Recorded:       August 22, 2016
   Liber:          41448
   Page:           957
   Tax Paid:       $37,537.50

**2A.** **CONSOLIDATED, AMENDED AND RESTATED ACQUISITION LOAN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**
From: Jericho Plaza LLC
To: Parlex 7 Finco, LLC
Dated: February 12, 2016
Recorded: August 22, 2016
Liber: 41449
Page: 1

Notes:
This Agreement consolidates, amends and restates Mortgages 1-2 above to form a single lien in the amount of $75,000,000.00.

**2B.** **ASSIGNMENT OF MORTGAGE (ACQUISITION LOAN)** (# 1-2A)
Assignor: Parlex 7 Finco, LLC
Assignee: HSBC Bank USA, National Association, as Agent
Dated: May 13, 2019
Recorded: May 31, 2019
Liber: 43468
Page: 255

**3.** **BUILDING LOAN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**
Mortgagor: Jericho Plaza LLC
Mortgagee: Parlex 7 Finco, LLC
Amount: $17,000,000.00
Dated: February 12, 2016
Recorded: August 22, 2016
Liber: 41449
Page: 66
Tax Paid: $178,500.00

**3A.** **ASSIGNMENT OF MORTGAGE (BUILDING LOAN)** (# 3)
Assignor: Parlex 7 Finco, LLC
Assignee: HSBC Bank USA, National Association, as Agent
Dated: May 13, 2019
Recorded: May 31, 2019
Liber: 43468
Page: 261

**4.** **GAP MORTGAGE**
Mortgagor: G&I IX Jericho Plaza LLC
Mortgagee: HSBC Bank USA, National Association, as Agent
Amount: $34,599,596.26
Dated: May 14, 2019
Recorded: May 31, 2019
Liber: 43468
Page: 273
Tax Paid: $363,295.80

**4A.** **MORTGAGE ASSUMPTION, CONSOLIDATION AND MODIFICATION AGREEMENT**
From: G&I IX Jericho Plaza LLC
To: HSBC Bank USA, National Association, as Agent
Dated: May 14, 2019
Recorded: May 31, 2019
Liber: 43468
Page: 284

Notes:
This Agreement consolidates Mortgages 1-4 above to form a single lien in the amount of $122,000,000.00.

**4B.** **ASSIGNMENT OF MORTGAGE**

Assignor: HSBC Bank USA, National Association, as Agent
Assignee: Natixis Real Estate Capital LLC, a Delaware limited liability company
Dated: December 31, 2021
Recorded: To be duly recorded in the Nassau County Clerk/Register's Office.

Unpaid principal: $118,507,367.31

**5.** **GAP MORTGAGE**
From: Jericho Plaza Portfolio LLC
To: Natixis Real Estate Capital LLC, a Delaware limited liability company
Amount: $30,672,632.69
Dated: December 31, 2021
Recorded: To be duly recorded in the Nassau County Clerk/Register's Office.

Tax Paid: $322,062.30