UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE FOR NATIXIS COMMERCIAL MORTGAGE SECURITIES TRUST 2022-JERI, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2022-JERI (FOR THE BENEFIT OF THE CERTIFICATEHOLDERS), acting by and Midland Loan Services, a division of PNC Bank National Association as Special Servicer under the Trust Servicing Agreement dated as of April 18, 2022,<br><br>Plaintiff,<br><br>v.<br><br>JERICHO PLAZA PORTFOLIO LLC; MENACHEM MEISNER; POWER-FLO TECHNOLOGIES INC. d/b/a UNITED ELECTRIC POWER; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; LIBERTY ELEVATOR CORPORATION; JE GRANT ASSOCIATES LLC d/b/a ENERGY PLUS SOLUTIONS; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,<br><br>The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Premises Herein Described,<br><br>Defendants. | Civil Action File No. 24cv917 |

**ORDER APPOINTING RECEIVER**

**THIS MATTER** is before the Court on the motion by U.S. Bank Trust Company, National Association, solely in its Capacity as Trustee ("Trustee") for Natixis Commercial Mortgage Securities Trust 2022-Jeri, Commercial Mortgage Pass-Through Certificates, Series 2022-Jeri ("Trust"), for the Benefit of the Certificate Holders) (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through Midland Loan Services, a division of PNC Bank National Association ("Special Servicer"), as Special Servicer under the Trust and Servicing Agreement dated as of April 18, 2022 (the "TSA") for the appointment of a receiver (the "Motion"). Upon review of the Motion and the Complaint Plaintiff filed herein on February 7, 2024 (the "Complaint"), for good cause shown, the Court FINDS as follows:

1.      That this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332;

2.      That Plaintiff's Complaint against Jericho Plaza Portfolio LLC ("Borrower"), and Menachem Meisner ("Guarantor") (collectively, "Defendants") demonstrates grounds for the appointment of a receiver of the Borrower's Assets (as defined below) pertaining to certain real property and improvements located at the One Jericho Plaza and Two Jericho Plaza, Jericho, New York 11753 (Section: 11;  Block: 355; Lots: 31 and 32), and more particularly described in **Exhibit 1** annexed hereto (the "Property"), and that immediate and irreparable injury may result in the event a receiver is not appointed;

3.      That Defendants received notice of the Motion; and

4.      That Borrower is in default of its obligations under the Loan (as defined herein) as a result, of its failure to remit the balance of the amounts due and owing under the Loan Documents on the Maturity Date, January 9, 2024.

Based on the foregoing FINDINGS, the Court therefore grants the relief requested in the Motion.

**IT IS HEREBY ORDERED** that Ian V. Lagowitz (the "Receiver") of Trigild IVL Group, LLC, maintaining an office at 24 Church Street, Montclair, New Jersey 07042, be and hereby is appointed as the receiver of Borrower's Assets (as defined herein).

**IT IS FURTHER ORDERED** that:

1.      The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Borrower (collectively, "Borrower's Assets"):

(a)      The Property; and

(b)      All non-privileged documents, instruments, agreements and materials in Defendants' and/or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, financing, operation, preservation and protection of the Borrower's Assets, including the Property, without limitation, all service agreements, contracts, licenses, permits, floor plans, space plans, specifications, surveys, maps, and drawings of the Property, access codes, all keys, key cards, masters, user IDs, combinations, passwords with respect the Property, maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, security systems, or other systems for which Defendants have had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order (collectively, the "Records"), to the extent that the foregoing is in the possession and/or control of Defendants;

(c)      All checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Borrower's Assets, including the Property, except for the ones

3

directly held or actually controlled by Plaintiff, together with all funds contained therein (collectively, the "Accounts"), to the extent that the foregoing is in the possession or control of Defendants;

(d)     All rents, payments, revenues, refunds and other income from, relating to or derived from the Borrower's Assets, including the Property, received on or after the date of this Order (collectively, the "Income"), to the extent that the foregoing is in the possession and/or control of Defendants;

(e)     All security, utility, prepayments and other deposits received by Defendants and/or their agents after the date of this Order and any deposits made by either Defendant to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Borrower's Asset, including the Property, (collectively, the "Deposits"), to the extent that the foregoing is in the possession and/or control of Defendants; and

(f)     The originals, if any in the possession or control of Defendants, of all leases, subleases, licenses, franchise agreements, tenant notices, lease amendments, side agreements, easement agreements, in Defendants' or their agents' possession or control relating to the use or occupancy of the Borrower Assets, including the Property (collectively, the "Leases").

2.     Defendants, their agents, employees, members, managers, officers and representatives, and any and all other contractors, persons and entities retained, hired or engaged by any Defendants (collectively, the "Defendant Parties") are hereby ordered (a) to immediately surrender possession and control of the Borrower's Assets, including the Property, to the Receiver; and (b) to immediately surrender possession and control of all the Borrower's Assets in their possession and control, specifically and unless already provides, including, without limitation, all

4

Records, Accounts, Income, Deposits, the originals of all Leases and the originals of all other contracts and agreements relating to the Property, to the Receiver.

3. Borrower, and all persons acting under its direction, and any other manager of the Property, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property that is the subject of this Order, and are prohibited and restrained from (1) disposing of, dissipating, mishandling, or misappropriating any of the Property or other such property that is the subject of this Order, (2) taking any actions that would, directly or indirectly, have an adverse impact on the value of the Property, (3) canceling, reducing, or modifying any and all insurance coverage in existence to the Property, all until further order of the Court;

4. The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Borrower's Assets, including the Property, to receive all Income and Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Accounts. All such documents shall be submitted to the Receiver within ten (10) business days of the date of this Order. Any future income related to the Property shall be turned over to the Receiver immediately upon receipt.

5. Subject to paragraph 9 of this Order, all funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the loan from Plaintiff's predecessor-in-interest to Borrower in the original principal amount of $149,180,000.00 (the "Loan") pursuant to all documents, instruments and agreements evidencing, securing or relating to the Loan (collectively, the "Loan Documents") and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the foreclosure and sale (or acceptance of a Deed-in-Lieu of Foreclosure) of

5

the Property; (ii) Plaintiff's sale of the Loan, (iii) payment of the Loan in full; or (iv) further Order of this Court.

6.     The Receiver is authorized to serve this Order on any of the financial institutions that maintain any Accounts, and any such financial institution and any other persons in active concert or participation with Defendants is authorized to take such steps as are necessary to restrain or prevent Defendants from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Accounts and are authorized to immediately turn over all funds in the Accounts to the Receiver. Any financial institution maintaining Accounts is authorized to provide to the Receiver a complete listing of account numbers under the name of Defendants, including accounts previously closed.

7.     Defendants and their agents charged with operating and/or managing the Borrower's Assets, including the Property, are hereby directed to cooperate with the Receiver and to deliver to the Receiver and Plaintiff, without any right of offset or recoupment, the following if in their possession, custody and control, within ten (10) business days after the date of this Order:

(a)     an accounting of all Income, all Expenses, all Accounts and all Deposits for the period beginning from January 1, 2021;

(b)     an updated rent roll dated as of the date of this Order identifying for each of the Leases: the term, space occupied, rent required to be paid, security deposit paid to Borrower, security deposit applied by Borrower, any rental concessions, commencement date, expiration date, options to renew/expend/purchase, expense recovery provisions, and identifying any default or payment delinquencies thereunder;

(c)     monthly operating statements prepared for each calendar month for the months of January 2024 through and including the present month, and year-to-date operating

#241278029_v2 516952.00645

statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Defendant or its agents charged with operating the Property;

        (d)      all Income generated by the Property from and after the date of this Order, including Income generated by the Property which was not applied to the standard and customary operating expenses of the Property or delivered to Plaintiff. Additionally, Defendants and/or their agents charged with operating and/or managing the Property are hereby directed to deliver to the Receiver and Plaintiff promptly, but in any event within ten (10) business days after the date of this Order, an itemization of all unpaid bills and other amounts due and payable relating to the Property, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Defendants and/or Borrower's management company, and Borrower's tax identification number. Unless otherwise provided herein, the Receiver shall not be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Property prior to the Receiver's taking possession of the Property. The Receiver shall request that all utilities companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any services being provided to the Property without notice to Receiver and Court approval. Defendants and their agents shall cooperate and provide assistance to the Receiver in furtherance of such requests. The Receiver is authorized to open new customer accounts with each utility that provides services to the Property, or at Receiver's option, require Defendants to name Receiver as an authorized user

#241278029_v2 516952.00645

of any of the existing utility accounts for the Property, in which case, Receiver shall inure to the benefit of Borrower's security on deposit with such utility company, if any.

8.      The Receiver is authorized and directed to demand, collect and receive from all tenants, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of the Property (collectively, "Tenants") under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.  All Tenants are authorized to pay the Receiver all rents and other amounts and consideration now due and unpaid under the Leases or hereafter to become fixed or due thereunder.

9.      The Receiver is hereby authorized and directed to lease, rent and license the Property on such terms and conditions as may be approved in writing by Plaintiff, provided however, that all proposed leases for a term in excess of one year are to be approved in writing by Plaintiff and Borrower or upon further Order of this Court.  No required consent of Plaintiff, nor any other provision of this Order shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.

10.     The Receiver is authorized and directed to: (a) deposit or cause to be deposited all Income and all other funds and monies received by it pursuant to this Order in a segregated account in the Receiver's name under Borrower's federal tax identification number and referencing the instant case, in a FDIC-insured bank; and (b) make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts to Plaintiff's counsel, Holland & Knight

#241278029_v2 516952.00645

LLP, 31 West 52nd Street, New York, NY 10019 to the attention of Stacey Lara, Esq. at Stacey.lara@hklaw.com.

11.     Notwithstanding anything set forth in the Loan Documents to the contrary, the Receiver is authorized and directed to use the Income and all other funds and monies coming into the Receiver's hands pursuant to this Order (other than Deposits) as follows:

(a)     first, to the Receiver toward payment of the Receiver's fees as set forth on **Exhibit 2** attached hereto and incorporated herein;

(b)     second, to the reasonable costs and expenses incurred by the Receiver in the performance of the Receiver's duties in accordance with this Order;

(c)     third, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities of the Property, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Property arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Borrower's Assets in accordance with this Order (collectively, "Expenses"), provided, however, that the Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff and shall not expend in excess of $10,000.00 without the prior written approval of Plaintiff or upon order of this Court, except that nothing in this provision shall restrict Receiver from expending funds and resources without approval of Plaintiff to address an emergent health or safety issues requiring immediate or preventative repairs, and provided further, however, that the Receiver may, only upon the prior written approval of Plaintiff, use Income to pay Expenses arising prior to the date of this Order; and

#241278029_v2 516952.00645

(d)     last, all remaining Income, funds and monies (collectively, "*Excess Funds*"), except for a reasonable Receiver's reserve if approved in advance and in writing by Plaintiff, to Plaintiff for application against the outstanding expenses, interest, principal, and other amounts owed by Borrower under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion.

12.     If the Receiver determines at any time, and from time to time, that the amount of Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 9(a) through 9(c) of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit, whereupon Plaintiff shall have the right, but not the obligation, to advance to the Receiver funds to pay all or any portion of such deficit and (a) any such funds advanced by Plaintiff shall be deemed an advance to Borrower under the Loan Documents for the protection and preservation of the Property and the other Borrower's Assets, shall be added to the outstanding principal amount of the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Mortgage (as defined in the Complaint) and the Loan Documents; and (b) no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability to Borrower under the Loan Documents or otherwise.

13.     The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary for: (a) the proper management, operation, preservation and protection of the Property and the Borrower's Assets or to gain or recover possession of all or any part thereof; (b) the collection of any Income now due or hereafter to become due or fixed; and (c) the removal of any Tenant or other person unlawfully possessing,

10

occupying or using any part of the Property. Any and all litigation by or against Borrower relating to the operation and management of the Property, be and is hereby stayed during the pendency of the Receiver's appointment although the Receiver has the option, but not the obligation to continue prosecution of or defense of any such action. Any party to such pending or future litigation may seek stay relief from the Court. This paragraph does not apply to this action or any other action that Plaintiff may bring in connection with the Loan.

14.     The Receiver is authorized to use the tax identification number of Borrower with respect to the Property for banking purposes. The Receiver shall not prepare or file state or federal tax returns on behalf of Borrower and shall not be responsible for paying any unpaid federal or state taxes on behalf of Borrower.

15.     On or before the fifteenth (15th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to Plaintiff (with a copy to Defendants) concerning the operations, income and expenses of the Property, together with a rent roll for the Property dated as of the end of each such month stating the name of each Tenant and the rent, income and other consideration to be paid by each such Tenant.

16.     The Receiver is authorized to engage a management company ("Manager") of the Borrower's Assets, including the Property, to manage the Borrower's Assets, including the Property, without further motion or Court approval, to act on behalf of the Receiver as the Receivers' authorized representative, with the full force and power of the Receiver to carry out the duties and obligations of the Receiver as set forth herein, including, without limitation, obtaining turnover, possession and control of the Borrower's Assets, including the Property, and all books,

11

records, bank accounts, deposits and any other Receivership Property in accordance with the provisions of this Order.

17.     Subject to the written consent of Plaintiff or upon approval of the Court, the Receiver is authorized to engage accountants and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to Borrower's Assets, to prepare financial statements and reports required under this Order, to initiate carry on and maintain such actions, suits and proceedings for and on behalf of the Receiver as may be necessary for the Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Receiver.  Upon the approval of Plaintiff of the reasonable fees and expenses of such accountants and attorneys, the Receiver shall be authorized to pay such fees and expenses as Expenses.

18.     (a)      The Receiver with Defendants' cooperation shall cause all insurance policies currently insuring or otherwise relating to the Borrower's Assets, including the Property, and/or to the ownership, maintenance, repair, improvement, management, leasing, use, preservation or protection of the Borrower's Assets, including the Property, or to Borrower's interest in the Property to be endorsed to name the Receiver and the Receiver's agents, employees and contractors as additional insureds or as a loss payees (as applicable) thereunder, all as their respective interests may appear.

(b)      Defendants shall deliver to the Receiver and Plaintiff all material communications received by Defendants from the issuer of any such insurance policies, including, without limitation, cancellation notices, default notices, any pending or ongoing insurance claims, potential claims that have not yet been filed, and anything that requires a response, as well as any

#241278029_v2 516952.00645

information, notices or documentation concerning any completed or pending tax appeals related to the Borrower's Assets, including the Property.

(c)     The Receiver is authorized to obtain from Borrower's insurance carrier the industry standard insurance protections afforded property managers of similarly situated properties, including but not limited to, being named as an additional insured on Borrower's liability policies related to the Borrower's Assets, including the Property, and receiving from Borrower's liability insurance policies, property insurance policies and business interruption or rent loss insurance policies appropriate waiver of subrogation clauses pursuant to which Borrower's insurance carriers would waive all rights of subrogation against the Receiver with respect to losses payable under such policies.  In the event Receiver, in consultation with Plaintiff, deems the Borrower's current insurance coverage to be inadequate or too costly, Receiver may obtain new policies and coverage.  In that event, Receiver shall notify Borrower that premiums due the Borrower's policies will not be paid as a Property expense.

(d)     The Receiver is authorized and directed to maintain in full force and effect all such insurance policies and, if and when necessary upon expiration or termination of such currently existing policies, to procure and pay the premiums for comparable insurance policies relating to the Borrower's Assets, including the Property, with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents, or otherwise as may be approved by Plaintiff.

(e)     Except as provided herein, Borrower and its agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Borrower's Assets, including the Property, that are in effect as of the date of this Order without the consent of Plaintiff and/or the Receiver.

#241278029_v2 516952.00645

19.     Subject to the restrictions of this Order, the Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Borrower's Assets, including, without limitation, the Property and otherwise to carry out the Receiver's obligations under this Order.

20.     In holding, retaining, managing, operating, preserving and protecting the Borrower's Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Borrower's Assets, including, without limitation, the Property.  The Receiver is hereby authorized to reject any existing contract related to the operations or maintenance of the Property and shall not be liable for payment of any termination or cancellation fees associated therewith. The Receiver shall not terminate employees at the Property in a manner that causes Plaintiff or Borrower to incur any liability under the Worker Adjustment and Restraining Notification Act (29 U.S.C. §§2101 TO 2109), provided, however, Receiver shall not be liable for any claims or liabilities that arose prior to the appointment of the Receiver that are in any way related to an employee's employment with, or separation from, Borrower or its property manager, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, and health benefits.

21.     Notwithstanding anything in this Order to the contrary, Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan

14

Documents, including, without limitation, exercising its rights as holder of security title to Borrower's Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify the Receiver of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the Receiver to any personal liability.

22.    If and when foreclosure proceedings against the Property shall have been consummated, or upon execution and delivery by Borrower and acceptance by Plaintiff of a deed in lieu of foreclosure for the Property, or upon payment of the Loan in full, and without further order of this Court, the Receiver shall within 30 days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and to Defendants concerning the operations of Borrower's Assets. The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver.

23.    The Receiver is required to submit proof of a receiver's bond with the Clerk of this Court in the amount of $50,000.00 within ten (10) business days of this Order. Upon the Receiver's submission of proof of a receiver's bond, the Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Borrower's Assets.

24.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Property and the Borrower's Assets and otherwise to comply with the terms of this Order.

25.     The Receiver may procure or maintain utility services for the Property. Regardless of their internal policies, no utility provider currently providing gas/steam, electric, water, sewer, trash, phone, cable, internet, or other utility services to the Property shall be permitted to terminate such service or refuse to authorize any new account based upon unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, and further then added that by the terms of this Order, any utility service provider to the Property is command to open an account without any deposit in the Receiver's name, but using Borrower's account information and that the Receiver is not responsible for any utility bills accruing prior to its appointment as Receiver.

26.     No person or entity, including governmental entity, shall file suit against the Receiver, or take other action against the Receiver, regarding anything relating to the Borrower's Assets, including the Property, or Receiver's action or inaction as Receiver, without an order of the Court permitting suit or action, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of the court in this action.

27.     The Receiver and its directors, officers, affiliates, employees, agents, representatives and attorneys, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, breach of fiduciary duty, or the failure to comply with the Court's orders.

#241278029_v2 516952.00645

28.     In the event that a bankruptcy case is filed by Borrower during the pendency of the receivership created by this Order, Borrower must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

29.     Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

(a)     Immediately contact Plaintiff and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the Receiver's obligation to turn over the Borrower's Assets (11 U.S.C. Section 543).  If Plaintiff indicates no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the Borrower's Assets (to the trustee in bankruptcy, or if one has not been appointed, then to Borrower), and otherwise comply with 11 U.S.C. Section 543.

(b)     If Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Borrower's Assets pending the outcome of those motions pursuant 11 U.S.C. Section 543 (a).  During this period, the Receiver's authority to preserve the Borrower's Assets is limited as follows:  The Receiver may continue to collect rents, issues, and profits.  The Receiver may make disbursements, but only those which are necessary to preserve and protect the Borrower's Assets.  The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would effect a material change in circumstances of the Borrower's Assets.

#241278029_v2 516952.00645

(c)      The Receiver is authorized to retain legal counsel to assist the

Receiver with the bankruptcy proceedings.

**IT IS FURTHER ORDERED**, that the Parties and all persons and entities acting in

concert with any of them are hereby **ENJOINED** from:  (a) taking any action inconsistent with

the terms of this Order; (b) interfering with the Receiver exercising its powers and performing its

duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the

Borrower's Assets, specifically including, without limitation, the Records; and (d) taking any

action with respect to the control, use, management, preservation, repair, maintenance, leasing or

operation of the Property and the Borrower's Assets, except as otherwise permitted under this

Order or upon the specific request of the Receiver.

**SO ORDERED** this _12th_ day of _February_, 2024.

_____
_Paul A. Engelmayer_
United States District Judge

#241278029_v2 516952.00645

# EXHIBIT 1

**Exhibit A**
**(Property Description)**

**Parcel I**

All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and
situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more
particularly described as follows:
Beginning at a point formed by the intersection of the northerly side of the "North Service Road" of the
Long Island Expressway (Interstate 495) also known as North Marginal Road with the southerly side of
Jericho Turnpike (New York State Route 25),
Running thence, in an easterly direction along the southerly side of Jericho Turnpike the following two (2)
courses and distances:
1. Along the arc of a curve to the right, Radius 493.00 feet, Length 206.32 feet,
2. North 52 degrees 50 minutes 04 seconds East, 1357.05 feet to the division line of Tax Lots 31 and
32,
Running thence along the aforementioned division line, South 36 degrees 12 minutes 08 seconds East,
923.09 feet to a point,
Running thence through and over Tax Lot 31 the following six (6) courses and distances:
1. South 53 degrees 46 minutes 05 seconds West, 29.48 feet,
2. North 36 degrees 09 minutes 16 seconds West, 351.64 feet,
3. South 53 degrees 50 minutes 44 seconds West, 456.70 feet,
4. South 36 degrees 09 minutes 16 seconds East, 84.37 feet,
5. South 09 degrees 55 minutes 28 seconds East, 28.60 feet,
6. South 36 degrees 07 minutes 44 seconds East, 275.61 feet to the northerly side of the "North
Service Road" of the Long Island Express (Interstate 495) also known as North Marginal Road,
Running thence in an easterly direction along the northerly side of said "North Service Road" the following
six (6) courses and distances:
1. Along the arc of a curve to the right, Radius 19279.57 feet, Length 122.39 feet,
2. South 03 degrees 58 minutes 52 seconds East, 1.00 feet,
3 Along the arc of a curve to the right, Radius 19280.57 feet, Length 518.67 feet,
4. South 87 degrees 33 minutes 37 seconds West, 125.94 feet,
5 Along the arc of a curve to the right, Radius 1200.00 feet, Length 568.71 feet,
6. North 65 degrees 17 minutes 09 seconds West, 65.53 feet to the southerly side of Jericho
Turnpike (New York State Route 25) and place or point of beginning.

FOR INFORMATION ONLY: Section: 11, Block: 355, Part of Lot 31
(continued)

**Parcel II**

All that certain plot, piece or parcel of land with any improvements existing thereon, being, lying and
situated in Jericho, Town of Oyster Bay, County of Nassau, State of New York, being bounded and more
particularly described as follows:
Beginning at a point on the southerly side of Jericho Turnpike (New York State Route 25), as widened, said
point being the following two (2) courses and distances from the intersection formed by the westerly side
of Simpson Street with the southerly side of Jericho Turnpike before widening:
1. South 53 degrees 48 minutes 56 seconds West, 50.00 feet,
2. South 36 degrees 12 minutes 08 seconds East, 14.76 feet,
Running thence, from said point of beginning, along the westerly line lands of the County of Nassau, lands
now or formerly of Fleet Homes, Inc, and the map of "Sacramento Homes" the following two (2) courses
and distances:
1. South 36 degrees 12 minutes 08 seconds East, 1505.86 feet,
2. South 19 degrees 18 minutes 04 seconds West, 146.15 to the northerly side of the "North Service
Road" of the Long Island Expressway (Interstate 495) also known as North Marginal Road,
Running thence in an easterly direction, along the north side of the "North Service Road" the following
three (3) courses and distances:
1. Along the arc of a curve to the right, Radius 19280.57 feet, Length 610.63 feet,
2. North 04 degrees 40 minutes 07 seconds West, 1.00 feet,
3. Along the arc of a curve to the right, Radius 19279.57 feet, Length 45.52 feet (actual) 45.56
(deed) to the division line between Tax Lots 31 and 32,
Running thence along the aforementioned division line, North 36 degrees 12 minutes 08 seconds West,
1256.44 feet to the southerly side of Jericho Turnpike (New York State Route 25),
Running thence along the southerly side of Jericho Turnpike, North 52 degrees 50 minutes 04 seconds East,
693.16 feet to the place or point of beginning.

FOR INFORMATION ONLY: Section: 11, Block: 355, Lot: 32

2

#241360247_v1

# EXHIBIT 2

# TRIGILD

—— EST 1976 ——

A PROPOSAL FOR

## Jericho Plaza Portfolio LLC



1 & 2 Jericho Plaza
Jericho, NY 11753

**Presented to:**

Chris Hamilton
Commercial Asset Consultant Sr. – Real Estate Solutions
Midland Loan Services, a Division of PNC Bank, NA
Christopher.Hamilton@midlandls.com
(972) 942-4920

trigild.com

# TRIGILD

# TRIGILD IVL OVERVIEW

Trigild IVL has successfully handled over 2,000 court-appointed fiduciary assignments throughout the country, operated multimillion dollar businesses, and liquidated billions of dollars of business, real estate, FF&E, and related assets. We have served in multiple roles under the auspices of numerous courts – including as Receiver, Bankruptcy Trustee and Chief Restructuring Officer. Equipped with decades of experience, Trigild IVL is an expert at devising long-term solutions and sound strategies that maximize recovery.

## Fiduciary Team Experience

- Since 1988, Trigild IVL has handled over 2,000 receivership appointments for over 3,500 real estate and business assets.
- Receiver professionals include Attorneys at Law who are admitted to the California and Texas bars, Licensed Real Estate Brokers, Paralegals, MBAs, and CPAs who are supported by in-house accounting, operations, marketing, HR, and IT professionals.
- Serving as federal equity receiver on a filing by the Securities and Exchange Commission (SEC) for an alleged Ponzi scheme.
- Served as receiver in 41 different states and Puerto Rico and the Virgin Islands with an aggregate value of nearly $50 billion.
- State and federal receiverships for hotels, restaurants, convenience stores, multifamily, office, industrial, retail, gas stations, truck stops, apartments, office buildings, assisted care facilities, retail centers, mobile home parks, residential subdivisions, marinas, self-storage units, senior care, and a water park.
- Approved as Receiver by the State of New York Unified Court System
- As receiver, has directed the sale of over 300 properties.
- General Counsel has extensive legal, financial, and real estate experience with significant transactional and litigation knowledge, including contract drafting and negotiation, processing of entitlements, alternative dispute resolution and trial work.
- 40-year-old property management firm specializing in distressed properties and operating businesses located throughout the United States.
- Extensive construction management experience on all asset types
- Trigild's staff has done expert witness work in matters concerning hotel liability, security, feasibility studies, "slip and fall", wrongful termination, value of leased premises, safety standards and operating performance.
- Bondable for virtually any dollar amount required.
- Frequent speakers to professional financial and legal groups on foreclosure and uses of receiverships.
- Host of the Trigild Lender Conference and Trigild Spring Conference - annual educational conferences on the latest trends for handling non-performing commercial loans.
- Publisher of the *Trigild Deskbook*, a state-by-state guide to Receivership and Foreclosure laws-by-state guide to Receivership and Foreclosure laws.

# TRIGILD

## PROPOSED FEE SCHEDULE

**Receivership**

Monthly:                                   $3,000 per month or
                                           $300 per hour

                                           Plaintiff approval required for time
                                           exceeding 10 hours per month

                                           Reimbursement of all out-of-pocket
                                           expenses

**In-House Counsel**                       $400 per hour

**Property Management/Accounting**         Third Party subject to Plaintiff
                                           Consent




**DALLAS**
4131 North Central Expressway
Suite 775
Dallas, TX 75204
214/422/2365

**SAN DIEGO**
9339 Genesee Avenue
San Diego, CA 92121
858/242/1222

**NEW JERSEY**
24 Church Street
Montclair, NJ 07042
973/220/1950

**MIAMI**
17555 Collins Avenue
Suite 3301
Sunny Isles Beach, FL 33179
858/242/1222

**CHICAGO**
100 N. LaSalle Street
Suite 812
Chicago, IL 60602
858/242/1222

# TRIGILD

## SCOPE OF WORK & TERMS

# Receivership Services

### Receiver/Paralegal Documents & Communication

- Provide a proposed Order Appointing Receiver to lender's legal counsel.
- As requested, appear telephonically in court
- Obtain and file Receiver's Oath and Bond.
- Prepare, serve parties of record and file Receiver's Opening Report.
- If required by the Court prepares, serve parties of record, and file all Receiver's Interim Reports.
- Prepare, serve parties of record and file Receiver's Final Account and Report.
- Prepare and file Receiver's Certificate(s) if applicable.
- As appropriate, file motions to close out Receivership.
- Upon discharge of Receiver, cancel Receiver's bond.

### Receivership Start-Up

- Secure control of all property operations in coordination with a qualified property management firm.
- Secure control of property related bank account(s).
- Manage funds in property bank account(s), open new bank account(s) in the name of the Receivership Estate and transfer all funds to Receivership account(s).
- Change merchant account numbers, if any.
- Assess and oversee cash handling procedure.
- Manage operating income, if any.
- Review and audit accounts receivable/accounts payables.
- Evaluate and address status of bad debts and rental delinquencies.
- Review known pre-receivership operating expenses to assess validity of outstanding invoice(s) / claim(s) and facilitate payment to claimant(s).
- Examine State / City Tax Systems to determine need for Tax ID number.
- Acquire Employer Identification Number from Internal Revenue Service.
- Transfer or apply for new business and tax licenses as applicable.
- Determine status of property tax payments.
- Evaluate existing insurance coverage and secure additional coverage, as necessary.
- Secure sales and marketing materials.
- Notify utility companies of receivership.
- Transfer existing utility accounts or open new accounts for the Receivership Estate.
- Notify licensors of receivership.
- Transfer existing or apply for new licenses to ensure property compliance.
- Analyze property's security threat level to determine whether or not onsite security is needed.
- Audit property's life safety emergency protocols.
- Review key control and inventory administration keys; change locks where necessary.

**DALLAS**
4131 North Central Expressway
Suite 775
Dallas, TX 75204
214/422/2305

**SAN DIEGO**
9339 Genesee Avenue
San Diego, CA 92121
858/242/1222

**NEW JERSEY**
24 Church Street
Montclair, NJ 07042
973/220/1950

**MIAMI**
17555 Collins Avenue
Suite 3301
Sunny Isles Beach, FL 33179
858/242/1222

**CHICAGO**
100 N. LaSalle Street
Suite 812
Chicago, IL 60602
858/242/1222

## TRIGILD

- Evaluate payments of common area maintenance charges, if any, between property and adjacent properties and implement changes as appropriate.
- Identify and secure contracts and leases.
- Review, evaluate and consider renewal or replacement of relevant of property-related agreements.
- Perform other reviews as necessary, leasing documentation, leasing process, and cost segregation.
- Notify vendors of receivership.
- Conduct audit of current vendors to determine necessity of each.
- Hire / terminate vendors
- Complete and submit opening report that details the following to the court:
    - Property inspection and property condition report
    - Property and unit inventory
    - Inspection Photographs

**Receivership Closing**

- Notify vendors that Receivership is closing.
- Request final invoices.
- Send out accounts receivable notification.
- Send notification letter to the necessary license, permit, and tax agencies.
- Cancel insurance policies in name of Receivership.
- Coordinate transition of service and maintenance contracts from receiver to Plaintiff upon foreclosure.
- Contact utility companies to perform final meter reading.
- As appropriate, prepare and submit closing inventories.
- Notify tenants that Receivership is closing.
- Prepare or oversee final accounting.
- Close accounts and disburse funds.
- Prepare Receiver's final report for the court.
- Close out Receivership with court.

**DALLAS**
4131 North Central Expressway
Suite 775
Dallas, TX 75204
214/422/2365

**SAN DIEGO**
9339 Geneseo Avenue
San Diego, CA 92121
858/242/1222

**NEW JERSEY**
24 Church Street
Montclair, NJ 07042
973/228/1950

**MIAMI**
17555 Collins Avenue
Suite 3301
Sunny Isles Beach, FL 33179
858/242/1222

**CHICAGO**
100 N. LaSalle Street
Suite 812
Chicago, IL 60602
858/242/1222

# TRIGILD

# PROPOSED PROJECT TEAM



### CHRIS NEILSON, *Managing Partner*

Chris Neilson, J.D., Managing Partner, oversees Trigild's business operations and serves as one of the firm's principal receivers. Federal and state courts throughout the United States have appointed Neilson as receiver over all types of commercial properties, including offices, malls, shopping centers, apartments, hotels, and golf courses. Neilson is also an approved fiduciary in the State of New York.

In addition to his receivership work, Neilson has handled the resolution of millions of dollars of unsecured judgments against debtors throughout the U.S. and has sourced and secured debtor-in-possession financing for fiduciaries through bankruptcy. Neilson was also a founding partner of P.D. Capital, a commercial real estate investment company focused on acquiring value-add retail projects.

Neilson began his legal career as an attorney practicing in the real estate and capital markets groups of an AmLaw 100 law firm where he focused on complex loan workouts for securitized business trusts (REMICs) through their special servicers.

Neilson received his J.D. from the Southern Methodist University Dedman School of Law where he was a member of the SMU Law Review and received a B.B.A. from Baylor University where he was the Outstanding Graduating Senior of the Hankamer School of Business.



### IAN LAGOWITZ, *Managing Partner*

Ian Lagowitz founded IVL Group, where he has been involved in nearly one thousand receivership, fiduciary, and trustee appointments over the course of his 25-year real estate career. He is well versed in bankruptcy recovery, having been involved in disposing hundreds of retained assets from bankruptcy sales, reviewing approximately 10,500 proof of claims, and handling cures and assumptions for the transfer of operating leases.

In addition to his specialization in asset management and distressed assets, he is highly experienced in property evaluation, leasing, sales, redevelopment, brownfield redevelopment, mergers and acquisitions, institutional work-outs, asset recovery and property management.

Ian Lagowitz joined Onyx Equities in 2010. As Director of Receivership and REO Management, his responsibilities included serving as a court appointed receiver and managing agent, client relations, and oversight of the receivership and REO portfolio. Ian also led operations for 12 states. He was responsible for facilitating the opening of Onyx's regional offices in Atlanta, GA, Annapolis, MD, Charlotte, NC and Memphis, TN.

Prior to joining Onyx, Ian held key roles at a variety of notable organizations including DiLeo Associates and The Alman Group. Ian is a graduate of the University of Maryland. He is a licensed broker in the state of New Jersey. He is a board member of Prodigal Sons and Daughters, and he is currently the Associate Coach for the Seton Hall University Men's Golf Team.

# TRIGILD



### DAVID WALLACE, *Chief Operating Officer and General Counsel*

David Wallace oversees Trigild's team in court-ordered receiverships for assets across the nation, successfully resolving distressed loans and preserving assets as a court-appointed fiduciary.

Mr. Wallace led a team of real estate asset managers, property managers, property accountants, accounting firms, and law firms in a bankruptcy liquidation of interests in a real estate portfolio that included more than 100 companies with equity and other management entities. The portfolio, valued at over $1.6 billion, included assets in the multifamily, student housing, and retail asset classes, and creditors recouped more than 60% of their claims.

Mr. Wallace also leads the legal team on a number of other fiduciary assignments, in bankruptcy, state, and federal courts. He has extensive experience in workouts related to CMBS and balance sheet loans, as well as transactions involving private equity, REITs, and sovereign wealth funds. Further, Mr. Wallace has overseen and served as lead counsel in a number of fraudulent transfer actions with ultimate recoveries in the tens of millions of dollars. Wallace also serves as a Ch. 11 trustee for a large real estate holding company with assets across multiple property types.

Wallace holds a B.B.A in Finance from Texas Christian University and a J.D. from Southern Methodist University. Prior to joining Trigild, Mr. Wallace worked as a financial analyst and also as an attorney with Fulbright & Jaworski, LLP. At Fulbright, Mr. Wallace represented a broad range of clients in both litigation and transactional matters. Mr. Wallace also represented a number of master and special servicers in connection with CMBS loan transactions and workouts. Clients included pharmaceutical and device manufacturers, banks, oil and gas companies, and other Fortune 500 companies across an array of industries.

Mr. Wallace lives in Keller, TX with his wife and two daughters, and enjoys playing golf in his free time.



### LEWIS TAULBEE, *President of Retail*

Mr. Taulbee has over 25 years of experience in the shopping center industry. He has had proven success in all aspects of management, development, and leasing for Mall assets. This includes hundreds of regional malls, lifestyle centers, and outlet shopping centers throughout the United States and several abroad.

Throughout his career, Mr. Taulbee has chaired many executive boards, chambers and committees in multiple communities throughout the United States, Asia, and UK. He is a standing member of International Council of Shopping Centers (ICSC), Commercial Real Estate Finance Council (CREFC), and Building Owners and Management Associations (BOMA).

Throughout his career, Mr. Taulbee has served in executive roles with Simon Property Group, Starwood Capital, and most recently as the Managing Director of Asset Services with JLL. In these roles, Mr. Taulbee was responsible for management, development, acquisitions and dispositions of shopping malls throughout the United States. For the past decade, Mr. Taulbee has worked with investors and financial institutions to repurpose and redeveloped distressed debt assets.

In 2023, he joined the Trigild team as the President of Retail. His depth of knowledge and experience in all retail asset classes helps Trigild expand its capacity and continue to provide best-in-class service.

# TRIGILD



**MAEGAN KALBERMATTEN,** *Director of Operations & Receiverships*

Maegan is a detail-oriented manager with over seven years of operational and receivership experience across multiple asset classes. She applies strong communication and leadership skills, process improvement tactics, and workflow optimization methods to elevate operational efficiencies.

Prior to joining Trigild IVL, Maegan served as Director of Asset Management and Receiverships at IVL Group. At IVL, Maegan was responsible for monthly reporting, bonds, bank account setup, operational and transitional takeovers, coordinating monthly calls with bond holders and special servicers, and managing client relations.

Prior to IVL, Maegan also served as Property Transition Manager and Asset Manager for Onyx Management Group. During her tenure with Onyx, Maegan was responsible for and implemented the operation of regional offices in Atlanta, Charlotte, Philadelphia, Memphis, and Annapolis. In addition, she transitioned over 75,000,000 SF in Receivership and REO Management assets.

Maegan is a graduate of Pennsylvania State University, with a bachelor's degree in Hotel, Restaurant, and Institutional Management

# THANK YOU

**We appreciate your consideration.**

Proposal Submitted by:

| **Chris Neilson** | **Ian Lagowitz** | **Maegan Kalbermatten** |
|---|---|---|
| chris.neilson@trigild.com | ian.lagowitz@trigild.com | maegan.kalbermatten@trigild.com |
| 214/766/9272 | 973/226/1950 | 973/226/1950 |

Please visit our website at *www.trigild.com.*

**DALLAS**
4131 North Central Expressway
Suite 775
Dallas, TX 75204
214/422/2365

**SAN DIEGO**
9339 Genesee Avenue
San Diego, CA 92121
858/242/1222

**NEW JERSEY**
24 Church Street
Montclair, NJ 07042
973/226/1950

**MIAMI**
17555 Collins Avenue
Suite 3301
Sunny Isles Beach, FL 33179
858/242/1222

**CHICAGO**
190 N. LaSalle Street
Suite 812
Chicago, IL 60602
858/242/1222