UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF NATIXIS COMMERCIAL MORTGAGE SECURITIES TRUST 2022-JERI, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2022-JERI, acting by and through Midland Loan Services, a division of PNC Bank, National Association as Special Servicer under the Trust Servicing Agreement dated as of April 18, 2022, | Civil Action File No. 1:24-cv-00917-PAE |

                                           Plaintiff,

                  v.

JERICHO PLAZA PORTFOLIO LLC; MENACHEM MEISNER POWER-FLO TECHNOLOGIES INC. d/b/a UNITED ELECTRIC POWER; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; LIBERTY ELEVATOR CORPORATION; JE GRANT ASSOCIATES LLC d/b/a ENERGY PLUS SOLUTIONS; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,

The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Properties Herein Described

                                           Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO AMEND THE ORDER APPOINTING A RECEIVER**

**HOLLAND & KNIGHT LLP**
Keith M. Brandofino
Stacey A. Lara
Maryanne Pederson
31 West 52nd Street
New York, New York 10019
(212) 751-3001
keith.brandofino@hklaw.com
stacey.lara@hklaw.com
maryanne.pederson@hklaw.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

PRELIMINARY STATEMENT .......................................................................................... 2

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    PLAINTIFF'S MOTION TO AMEND THE RECEIVERSHIP ORDER SEEKS TO
    AUTHORIZE THE RECEIVER TO MARKET THE PROPERTY FOR SALE, AND
    THEN SELL THE PROPERTY AFTER COURT APPROVAL IN COMPLIANCE WITH
    THE REQUIREMENT OF 28 USC § 2001 ................................................................... 4

        A.    Plaintiff has no Intention to Circumvent the Foreclosure Process ............................. 4

        B.    The Sale of Property in a Receivership is a Judicial Sale ....................................... 5

        C.    There is a Detailed Statutory Procedure for any Sale of the Property ..................... 6

CONCLUSION ...................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Deutsche Bank Trust Co. v Fredonia Temple/Brigham Apartments,*
No. EK12022000097 (Sup. Ct. N.Y. Chautauqua Co. Dec. 2023)............................................5

*Golden Pac. Bancorp. v. F.D.I.C.,*
375 F.3d 196 (2d Cir. 2004)........................................................................................6, 7

*In re Haywood Wagon Co.,*
219 F. 655 (2d Cir. 1914)...........................................................................................6

*Lawsky v. Condor Cap. Corp.,*
154 F. Supp. 3d 9 (S.D.N.Y. 2015) ...............................................................................7, 8

*Phelan v. Middle States Oil Corp.,*
154 F. 2d 978 (2d Cir. 1946)........................................................................................6

*S.E.C. v. Credit Bankcorp., Ltd.,*
297 F.3d 127 (2d Cir. 2002)........................................................................................6

*United States v. Ianniello,*
824 F.2d 203 (2d Cir. 1987)........................................................................................6

*Wilmington Trust, N.A. v. 6400 Raleigh Crabtree, LLC, et. al.,*
(S.D.N.Y., Feb. 5, 2024)........................................................................................5, 8

**Statutes**

28 U.S.C. § 2001 ................................................................................................ *passim*

## **INTRODUCTION**

Plaintiff respectfully submits this reply memorandum of law in further support of its motion seeking an order amending the Receivership Order (*see* ECF No. 33), pursuant to which the Court appointed Ian V. Lagowitz as Receiver of the Borrower's Assets.[1]

By this motion, Plaintiff seeks to expand the authority granted to the Receiver to permit him to engage a broker to market the sale of the office buildings located at One Jericho Plaza and Two Jericho Plaza, Jericho, New York 11753. As demonstrated below and in the supporting papers, such relief is necessitated by the conduct of Borrower, Guarantor and their affiliates that have severely jeopardized the Property and the Collateral, which includes an apparent abandonment of the Property, the abject failure to provide services to tenants, the misappropriation of millions of dollars in rents and the unauthorized sale of equipment all aimed at enriching the Borrower's investors.   Notwithstanding the egregious conduct of Borrower and Guarantor, Plaintiff remains mindful of Borrower's legal rights of redemption.   To be clear, Plaintiff does not seek to circumvent Borrower's rights.   Instead, Plaintiff seeks authority to have Receiver market the Property and solicit offers in an attempt to maximize the liquidation proceeds, which will inure to the benefit of Plaintiff, Borrower and Guarantor as it relates to his deficiency liability.   No relief sought by the motion limits or prevents Borrower from exercising its right of redemption and tendering the full amount necessary to payoff of the Loan.

---

[1] Capitalized terms not defined herein shall have the same meanings as ascribed in the Declaration of Christopher G. Hamilton, sworn to on February 7, 2024 (the "Hamilton Decl.") submitted in support of the Plaintiff's prior *ex parte* order to show cause for an order appointing the Receiver (ECF Nos. 4-8).

## PRELIMINARY STATEMENT

As set forth in Plaintiff's moving papers, following Receiver's appointment, Plaintiff and Receiver of several unsolicited offers to purchase the Property. Given the interest in the Property that has been expressed by the market, and in an effort to maximize the recovery on this defaulted loan, Plaintiff seeks an order amending the Receivership Order, pursuant to 28 U.S.C. § 2001, to authorize the Receiver to: (i) engage Jeff Dunne of CBRE, Inc. ("CBRE"), as broker, to market the Property for sale; and (ii) sell the Property, by public or private sale, subject to the approval of this Court pursuant to the requirements of 28 U.S.C. § 2001 ("Plaintiff's Motion") (ECF Nos. 43-47).

Defendants' opposition to Plaintiff's Motion should be rejected for several reasons.

First, Defendants argument that no authority exists for the Receiver to sell the Property until "after a merits decision" is disingenuous, at best. 28 U.S.C. § 2001 specifically sets forth the procedure for a receiver to sell property "under *any order or decree* of any court of the United States" and does not, as Defendants' strained interpretation suggests, provide that any sale may *only* be employed after a judgment of foreclosure and sale is entered. Here, as explained more fully below, Plaintiff is requesting that the Court issue an order permitting the Receiver to market the Property for sale, and that any offers obtained during this process will be submitted to the Court for approval in accordance with the mandate of 28 U.S.C. § 2001. Further, Plaintiff intends to move on parallel tracks, seeking summary judgment on the undisputed Maturity Default during the sale process.

Second, Defendants' claim that Plaintiff failed to show a factual basis for commencing a sales process now is utterly without merit. Plaintiff has demonstrated that Defendants failed to pay more than $3 million in operating expenses at the Property – which Defendants do not dispute

– and that such failure has caused serious maintenance, safety and security issues at the Property. The declarations of Mr. Hamilton and the Receiver set forth numerous examples of Defendants egregious conduct, including, for example, the failure to install "legal hold open devices" on fire exit doors resulting in safety issues for the building, the failure to provide security at the Property, and the improper sale of equipment (secured by UCC liens) at the Property.  In short, Defendants' conduct over the past two year makes plain that its plan is the drain the property of all assets for the purpose of increasing its profits to the detriment of Lender.

Third, Defendants argument that such a sale *could* clog its right of redemption is baseless. Given the Maturity Default and Plaintiff's acceleration of the Loan, Defendants have the right to pay off the full amount of the Debt at any time.  And Defendants will have the right to object to any sale during the required hearing and approval process by the Court, the right to bid on the Property and pay off the Loan.  Further, Defendants unsupported claim that they could prevail in the litigation wholly ignores the undisputed Maturity Default, which establishes Plaintiff's *prima facie* case for foreclosure.

For the reasons set forth below, as well as in Plaintiff's moving papers, this Court should grant Plaintiff's Motion.

## **FACTUAL BACKGROUND**

For a full recitation of the relevant facts, Plaintiff respectfully refers the Court to the Complaint (*see* ECF No. 1), Hamilton Declaration (*see* ECF No. 6), Lagowitz Declaration (*see* ECF No. 44), Reply Declaration of Christopher Hamilton dated April 18, 2024 ("Hamilton Reply Decl."), the Reply Declaration of Ian V. Lagowitz, dated April 17, 2024 ("Receiver Reply Decl."), each of which are submitted in support of this Motion.

## ARGUMENT

**PLAINTIFF'S MOTION TO AMEND THE RECEIVERSHIP
ORDER SEEKS TO AUTHORIZE THE RECEIVER TO MARKET THE
PROPERTY FOR SALE, AND THEN SELL THE PROPERTY AFTER COURT
APPROVAL IN COMPLIANCE WITH THE REQUIREMENT OF 28 USC § 2001**

### A.     Plaintiff has no Intention to Circumvent the Foreclosure Process

In opposition to the Plaintiff's Motion, Defendants argue that "Plaintiff's motion seeks to circumvent the foreclosure process and effectively grant to Plaintiff now – without legal or factual basis and before any substantive proceedings on the merits determination of Plaintiff's claims – the ultimate relief it seeks in this action.  It should be denied."  (ECF No. 77, at 1).

Contrary to the Defendants' assertions, Plaintiff seeks a *parallel track* – proceeding with its mortgage foreclosure action, while the Receiver is simultaneously engaged in retaining a broker for the sale process, which process must be approved by the Court, after a hearing (where Defendants may submit objections).  *See* Hamilton Reply Decl., ¶ 17.

Moreover, Defendants argument that no authority exists for the Receiver to sell the Property until "after a merits decision" is disingenuous, at best.  28 U.S.C. § 2001 specifically sets forth the procedure for a receiver to sell property "under *any order or decree* of any court of the United States" and does not, as Defendants' strained interpretation suggests, provide that any sale

may *only* be employed after a judgment of foreclosure and sale is entered.  Defendants do not cite *a single case* to the contrary. [2]

Moreover, this action involves the Borrower's failure to pay the Debt due under the Loan Documents, including all amounts due on the January 9, 2024, Maturity Date.  Borrower has admitted the Maturity Default,[3] which effectively establishes Plaintiff's *prima facie* case for foreclosure of the Mortgage.  Thus, Plaintiff intends to file a motion for summary judgment based on the Borrower's Maturity Default and seek a Judgment of Foreclosure and Sale of the Property, each of which Plaintiff will likely prevail upon given the indisputable defaults.

**B.    The Sale of Property in a Receivership is a Judicial Sale**

"A receiver, as an officer or arm of the court is a trustee with the highest kind of fiduciary obligations." *Wilmington Trust, N.A. v. 6400 Raleigh Crabtree, LLC, et. al.*, S.D.N.Y., Feb. 5, 2024, Case: 1:20-cv-06089-JGK-JLC, citing *Phelan v. Middle States Oil Corp.*, 154 F. 2d 978, 991 (2d Cir. 1946).  A receiver "owes a duty of strict impartiality, or undivided loyalty, to all persons interested" and is "bound to act fairly and openly with respect to every aspect of the proceedings before the court." *Id*.

---

[2] Defendants claim that a receiver sale is not permitted under New York law is also unfounded.  While in New York state courts, a receiver may not ordinarily sell the Property without consent of the Borrower and Court approval (but often do under these circumstances), federal courts in New York permit such sales pursuant to 28 U.S.C. § 2001, as long as the requirement of the statute are met.  Moreover, at least one New York court, *sua sponte*, issued a Supplemental Order Expanding the Powers and Authority of Receiver to Sell Mortgaged Premises."  *See Deutsche Bank Trust Co. v Fredonia Temple/Brigham Apartments*, No. EK12022000097 (Sup. Ct. N.Y. Chautauqua Co. Dec. 2023) (noting that the Court directed the Receiver to "prepare and submit a supplement to the Receivership Order expanding the authority and powers of the Receiver to market, sell and monetize the subject Property" and after objections submitted in response, ordered the Receiver to engage a broker to market the property, solicit competitive bids, and submit a request to the Court for approval of any such sale).  The Court in *Fredonia* directed that the receiver to market and sell the property, based in part, on the financial condition of the Property and concerns for the declining value of the asset.

[3] *See* Declaration of Defendant Menachem Meisner in Support of Opposition to Plaintiff's Motion to Amend the Order Appointing a Receiver (ECF Nos. 78, 78-1) (letter dated February 23, 2024, by Defendants' counsel, which states ". . . there was no such event prior to the Borrower's maturity default last month - . . .").

And contrary to Defendants' arguments, the sale of a property in a receivership is a judicial sale. *In re Haywood Wagon Co.*, 219 F. 655 (2d Cir. 1914). In *Haywood*, the Second Circuit observed that "in a judicial sale, the court is the vendor and the sale is by the court itself even though the receiver may be the instrumentality of the sale. Until a sale by the receiver is confirmed by the court, no rights are conferred on the purchaser." *Id.*

## C.     There is a Detailed Statutory Procedure for any Sale of the Property

In exercising his fiduciary obligations, a receiver "has the affirmative duty to endeavor to realize the largest possible amount for" and to "protect the value of an asset that is the subject of litigation." *Id.; see also Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 201 (2d Cir. 2004); *United States v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987). In connection with a receiver's fiduciary duty, receivers are "granted broad powers to, *inter alia*, . . . liquidate those assets . . ." *S.E.C. v. Credit Bankcorp., Ltd.*, 297 F.3d 127, 130 (2d Cir. 2002); *see also Phalen*, 154 F.2d at 991 (holding that receivers are granted broad powers, including the power to liquidate assets); *Credit Bancorp.*, 297 F.3d at 130 (same).

Here, Plaintiff is seeking an order amending the Receivership Order, to permit the Receiver to engage a broker to market the Property for sale and authorize the Receiver to sell the Property at a public or private sale subject to the approval of this Court pursuant to the requirements of 28 U.S.C. § 2001.

Pursuant to 28 U.S.C. § 2001, courts grant the authority to modify an order appointing the receiver, at any time, to authorize a receiver to sell real Property, at a public or private sale or other disposition.

This detailed, Court controlled, process also negates any claims by Defendants that any receiver sale clogs their right of redemption. Since the Loan has been accelerated after the

Maturity Default (*see* Compl. ¶¶ 60-61), Defendants can pay off the Loan at any time, provided they pay the full amount due and owing to Lender. Any marketing and sale process by the Receiver will not change that right. Further, Defendants will have the opportunity to object to any sale before the Court and bid or repay the Loan during the sales process.

As explained above, Borrower has caused numerous Events of Default to occur, including the Maturity Default, and the failure to pay operating expenses which has resulted in the imposition of liens and judgments against the Property. *See* ECF No. 1. Further, prior to and since the Maturity Default, Borrower has failed to properly maintain the Property, including, but not limited failing to: (i) continue basic ground maintenance and cleaning, (ii) maintain air conditioning, and (iii) pay over $3 million in outstanding operating expenses including outstanding electricity bills (which, without payment by Lender, would have resulted in shut termination of electricity at the Property). *See* Lagowitz Decl. at ¶¶ 10 and 11.

In addition, Plaintiff has received unsolicited offers to purchase the Property. *See* Lagowitz Decl., ¶12. Thus, Plaintiff seeks an order from this Court amending the Receivership Order to authorize the Receiver to engage Jeff Dunne of CBRE, as broker, to market the Property, and to sell the Property at a public or private sale, subject to Court approval.

New York courts have held that a receiver "must endeavor to realize the largest possible amount for assets . . ." *Golden Pac, Bankcorp*., 375 F.3d at 201. In connection therewith, ". . .the Receiver is required to establish is that there are sound business reasons for selling the assets. . ." *Lawsky v. Condor Cap. Corp.*, 154 F. Supp. 3d 9, 22 (S.D.N.Y. 2015). Further, courts have held that a Receiver's determination that [a sale] is in the best interest of [the parties] is owed deference under the business judgment rule. *Id.* (citation omitted).

Accordingly, Plaintiff is requesting only that the Receiver be permitted to engage Dunne of CBRE to market the Property for sale.  In the event that the Receiver determines that any such proposed sale is in the best interests of the Property, the Receiver would submit a proposed contract to the Court, during which time the Defendants would have an opportunity to oppose a sale of the Property, upon a subsequent motion for an order approving the sale which would require a showing by the Receiver that there is sound business reasons for selling or otherwise disposing of the Property.  *Id.; see also Wilmington Trust, N.A. v. 6400 Raleigh Crabtree, LLC, et. al.*, S.D.N.Y., Feb. 5, 2024, Case: 1:20-cv-06089-JGK-JLC, Dkt. No. 191.

Based on the foregoing, it is respectfully requested that, the Receivership Order be amended to authorize the Receiver to engage Jeff Dunne of CBRE, as broker, to market the Property, and authorize the Receiver to sell the Property at a public or private sale or other disposition subject to the approval of the Court pursuant to the requirements of 28 U.S.C. § 2001.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion in its entirety.

Dated: New York, New York
          April 18, 2024

HOLLAND & KNIGHT LLP

By: *Stacey A. Lara*
    Keith M. Brandofino
    Stacey A. Lara
    Maryanne Pederson
    31 West 52nd Street
    New York, New York 10019
    (212) 751-3001
    keith.brandofino@hklaw.com
    stacey.lara@hklaw.com
    maryanne.pederson@hklaw.com
    *Attorneys for Plaintiff*