**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF NATIXIS COMMERCIAL MORTGAGE TRUST 2022-JERI, COMMERCIAL MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2022-JERI, acting by and through Midland Loan Services, a division of PNC Bank, National Association as Special Servicer under the Trust Servicing Agreement dated as of April 18, 2022, | Civil Action No. 24-cv-00917 |
| *Plaintiff*, | |
| v. | **MENACHEM MEISNER'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** |
| JERICHO PLAZA PORTFOLIO LLC; MENACHEM MEISNER; POWER-FLO TECHNOLOGIES INC. d/b/a UNITED ELECTRIC POWER; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; LIBERTY ELEVATOR CORPORATION; JE GRANT ASSOCIATES LLC d/b/a ENERGY PLUS SOLUTIONS and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, | |
| *Defendants*. | |

Defendant MENACHEM MEISNER ("Guarantor") hereby answers the Plaintiff's Complaint. Unless expressly admitted, Guarantor denies all allegations in the Complaint, including any allegations in section headings and footnotes.

## PARTIES

1. Plaintiff U.S. Bank Trust Company, National Association, acting solely in its capacity as trustee, is a national banking association that serves as the trustee of a commercial mortgage-backed securities trust.

**ANSWER:** Guarantor admits the allegations in Paragraph 1.

2.    Plaintiff, not individually, but solely in its capacity as trustee for the Trust under the TSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.

**ANSWER:**  Guarantor admits the allegations in Paragraph 2.

3.    Defendant Jericho Plaza Portfolio LLC ("Borrower") is a Delaware limited liability company with an address at 101 Hudson Street, Suite 1703, Jersey City, New Jersey 07302.

**ANSWER:**  Guarantor admits the allegations in Paragraph 3.

4.    Borrower is named as a defendant to extinguish all estate, right, title and interest it holds, including its interest as the record fee owner, in and to certain real property located in Jericho New York, County of Nassau, and State of New York, at (i) One Jericho Plaza, Jericho, New York 11753, Block: 355; Lot 31; and (ii) Two Jericho Plaza, New York 11753, Block: 355; Lot: 32, as more particularly described in Exhibit 1 annexed hereto and made a part hereof (the collectively the "Property").

**ANSWER:**  Paragraph 4 purports to state Plaintiff's intent or purpose for naming Borrower as a defendant in this action.  Plaintiff's intents and purposes are facts uniquely within Plaintiff's knowledge.  Guarantor thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.    Defendant Menachem Meisner ("Guarantor") is an individual and resident of New Jersey with an address at 101 Hudson Street, Suite 1703, Jersey City, New Jersey 07302.

**ANSWER:**  Guarantor admits the allegations in Paragraph 5.

6.    Guarantor guaranteed Borrower's obligations pursuant to the Guaranty (as defined in paragraph 28 of this Complaint).

**ANSWER:**  Guarantor admits that Guarantor entered into the Guaranty and respectfully refers the Court to the Guaranty and the Loan Agreement for a complete and accurate recitation of the Guaranty's terms.

7.    Defendant New York State Department of Taxation and Finance ("DTF") is an agency authorized to administer and collect all taxes for the State of New York and has a principal place of business located at Attn: Office of Counsel, Building 9, W A Harriman Campus, Albany, New York 12227.

**ANSWER:** Guarantor admits the allegations in Paragraph 7 that DTF is an agency authorized to administer and collect taxes for the State of New York. The remaining statements in Paragraph 7 are legal conclusions for which no response is required.

8.      Plaintiff names DTF as a party defendant herein because of any title or claim it might have against the Property as a possible lienor due to possible unpaid amounts which are or may be due or may become due to DTF from any owner of record of the Property, including without limitation any unpaid amounts and/or liens against the Property resulting from judgments in favor of DTF.

**ANSWER:** Guarantor lacks knowledge or information sufficient to form a belief about Plaintiff's reasons for naming DTF as a party defendant and therefore denies the allegations in Paragraph 8.

9.      Power-Flo Technologies Inc. d/b/a United Electric Power ("Power-Flo") is a New York corporation with an address at 270 Park Avenue, Garden City Park, New York 11040.

**ANSWER:** Guarantor admits the allegations in Paragraph 9 that Power-Flo has an address at 270 Park Avenue, Garden City Park, New York 11040. The remaining statements in Paragraph 9 are legal conclusions for which no response is required.

10.     Plaintiff names Power-Flo as a party defendant herein because of any title or claim it might have against the Property as a judgment creditor.

**ANSWER:** Guarantor lacks knowledge or information sufficient to form a belief about Plaintiff's reasons for naming Power-Flo as a party defendant and therefore denies the allegations in Paragraph 10. By way of further response, Guarantor avers that on or about February 12, 2024, Power-Flo recorded a Satisfaction of Judgment in the Office of Clerk of Court of the State of New York, Nassau County, which certifies that Power-Flo's judgment against Guarantor has been paid and satisfied in full. Guarantor further avers that on February 23, 2024, this Court ordered a discontinuance of this action against Power-Flo per the Stipulation of Discontinuance Against Power-Flo Technologies Inc., filed on February 15, 2024.

11.    Liberty Elevator Corporation ("Liberty") is a New Jersey corporation with an address at 63 East 24th Street, Paterson, New Jersey 07514.

**ANSWER:**  Guarantor admits the allegations in Paragraph 11 that Liberty has an address at 63 East 24th Street, Paterson, New Jersey 07514.  The remaining statements in Paragraph 11 are legal conclusions for which no response is required.

12.    Plaintiff names Liberty as a party defendant herein because of any title or claim it might have against the Property as a mechanics lien holder.

**ANSWER:**  Guarantor lacks knowledge or information sufficient to form a belief about Plaintiff's reasons for naming Liberty as a party defendant and therefore denies the allegations in Paragraph 12.

13.    JE Grant Associates LLC d/b/a EnergyPlus Solutions ("JE") is a New Jersey limited liability company with an address at 2468 U.S. Highway 206-578, Belle Mead, New Jersey 08502. Upon information and belief, JE's sole member Jeffery Grant is a citizen of New Jersey.

**ANSWER:**  Guarantor admits the allegations in Paragraph 13 that JE has an address at 2468 U.S. Highway 206-578, Belle Mead, New Jersey 08502.  The remaining statements in Paragraph 13 are legal conclusions for which no response is required.

14.    Plaintiff names JE as a party defendant herein because of any title or claim it might have against the Property as a mechanics lien holder.

**ANSWER:**  Guarantor lacks knowledge or information sufficient to form a belief about Plaintiff's reasons for naming JE as a party defendant and therefore denies the allegations in Paragraph 14.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and complete diversity of citizenship exists between Plaintiff, a citizen of Ohio, and each of the defendants, which are citizens or subjects of Delaware, New Jersey and New York.

**ANSWER:**  Paragraph 15 contains legal conclusions for which no response is required.

16.    For purposes of diversity jurisdiction under 28 U.S.C. §1348, Plaintiff is a citizen of Ohio because it is a national banking association whose main office, is located in the State of Ohio.

**ANSWER:**  Guarantor admits the allegations in Paragraph 16 that Plaintiff is a national banking association with an office in the State of Ohio.  Guarantor lacks knowledge or information sufficient to form a belief about the location of Plaintiff's main office and therefore denies that allegation in Paragraph 16.  The remaining statements in Paragraph 16 are legal conclusions for which no response is required.

17.    Upon information and belief, based on, among other things, Borrower's Corporate Certificate, dated as of December 31, 2021, executed in connection with Loan (as defined below), Borrower is a Delaware limited liability company.  As a limited liability company its citizenship is determined by that of its members.  Upon information and belief, Borrower's sole member is Jericho Plaza Mezz LLC, a Delaware limited liability company ("Jericho Plaza Mezz").  Upon information and belief, the sole member of Jericho Plaza Mezz is Jericho Plaza Members LLC, a Delaware limited liability company ("Jericho Plaza Members").  Upon information and belief, and according to the organization chart provided by Borrower in connection with the Loan, the members of Jericho Plaza Members are (1) Menachem Meisner ("Meisner") a New Jersey resident; (2) Mark J. Nussbaum a New Jersey resident; (3) Abe Mertz a New Jersey resident; (4) Jason David a New Jersey resident; (4) Shaul Greenwald a New Jersey resident, and Jericho Plaza GP LLC, a Delaware limited liability company, whose sole member is Meisner.  Upon information and belief, based on the New Jersey citizenship of its member, Borrower is a citizen of New Jersey.

**ANSWER:**  The allegations in the second sentence and the last sentence of Paragraph 17 contain legal conclusions for which no response is required.  Guarantor admits the remainder of the allegations in Paragraph 17.

18.    Defendant DTF is a citizen of the State of New York.

**ANSWER:**  Paragraph 18 contains legal conclusions for which no response is required.

19.    Defendant Power-Flo is a citizen of the State of New York.

**ANSWER:**  Paragraph 19 contains legal conclusions for which no response is required.

20.    Defendant Liberty is a citizen of the State of New Jersey.

**ANSWER:**  Paragraph 20 contains legal conclusions for which no response is required.

21.    Defendant JE is a citizen of the State of New Jersey.

**ANSWER:**  Paragraph 21 contains legal conclusions for which no response is required.

22.    This Court has personal jurisdiction over the defendants pursuant to Rule of Civil Procedure 4, and CPLR 301, 302(a)(1) and 302(a)(4), This Court also has personal jurisdiction over Borrower under Section 11.6(b), pursuant to which Borrower irrevocably submitted to the jurisdiction of the Court.

**ANSWER:**  Paragraph 22 contains legal conclusions for which no response is required.

To the extent that the allegations in Paragraph 22 purport to describe the Loan Agreement, which

speaks for itself, Guarantor respectfully refers this Court to the Loan Agreement for its complete

contents.

23.    Venue is proper in this district pursuant to Section 11.6(b) of the Loan Agreement, which provides that the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

**ANSWER:**  Paragraph 23 contains legal conclusions for which no response is required.

To the extent that the allegations in Paragraph 23 purport to describe the Loan Agreement, which

speaks for itself, Guarantor respectfully refers this Court to the Loan Agreement for its complete

contents.

24.    Further pursuant to Section 11.3(b) of the Loan Agreement, Borrower designated and appointed:

CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK 12207-2543

AS ITS AUTHORIZED AGENT TO ACCEPT AND
ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND
ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH
SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR
STATE COURT IN NEW YORK, NEW YORK, AND
BORROWER AGREES THAT SERVICE OF PROCESS UPON
SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE
OF SAID SERVICE MAILED OR DELIVERED TO BORROWER
IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED
IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS
UPON BORROWER, IN ANY SUCH SUIT, ACTION OR
PROCEEDING IN THE STATE OF NEW YORK.

**ANSWER:** The allegations in Paragraph 24 purport to describe the Loan Agreement,

which speaks for itself, and Guarantor respectfully refers this Court to the Loan Agreement for its

complete contents.

25.    Based on the foregoing mandatory forum selection clause, venue is proper in this
Court pursuant to 28 U.S.C. § 1391(a)(3).

**ANSWER:** Paragraph 25 contains legal conclusions for which no response is required.

To the extent the allegations in Paragraph 25 purport to describe the Loan Agreement, which

speaks for itself, Guarantor respectfully refers this Court to the Loan Agreement for its complete

contents.

## FACTUAL BACKGROUND

A.    **The Loan**

26.    On or about December 31, 2021 Natixis Real Estate Capital LLC ("Original
Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrower in the original
principal amount of $149,180,000.00 (the "Loan"), governed by a Loan Agreement dated as of
December 31, 2021 (the "Loan Agreement").

**ANSWER:** Guarantor admits the allegations in Paragraph 26 that Original Lender agreed

to make a loan to Borrower in the original principal amount of $149,180,000.00, governed by the

Loan Agreement, dated as of December 31, 2021.  Guarantor denies the remaining allegations in

Paragraph 26.

27.    To evidence its indebtedness under the Loan, Borrower duly executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Consolidated Promissory Note dated December 13, 2021 in the original principal amount of $149,180,000.00 (the "Note"). A true and correct copy of the Note is annexed hereto as Exhibit 2.

**ANSWER:** Guarantor admits the allegations in Paragraph 27 that to evidence its indebtedness under the Loan, Borrower duly executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Consolidated Promissory Note in the original principal amount of $149,180,000.00 and that the first nine pages of Exhibit 2 annexed to the Complaint are a true and correct copy of the Note. Defendants deny that the Note is dated December 13, 2021, and aver the correct date of the Note is December 31, 2021.

28.    As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Mortgage, Assignment of Rents and Leases (the "ALR"), and Security Agreement dated as of December 31, 2021 (the "Mortgage") pursuant to which Borrower granted to Original Lender a security interest in the Property and to which Borrower granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by the Property.

**ANSWER:** Guarantor admits that Borrower executed the ALR and the Mortgage. The remaining allegations in Paragraph 28 purport to describe the ALR and the Mortgage, which speak themselves, and Guarantor respectfully refers this Court to the ALR and the Mortgage for their complete contents.

29.    On February 18, 2022, Original Lender recorded the Mortgage with the Office of City Register of the City of Nassau (the "City Register's Office") recorded in Liber 46359 Page 137, Document Number ("DN") 2022-00022348 and duly paid the mortgage recording taxes.

**ANSWER:** The allegations in Paragraph 29 purport to describe a publicly filed document, which is attached as Exhibit 3 to the Declaration of Christopher G. Hamilton in Support of Plaintiff's Motion for the Appointment of a Receiver (ECF No. 6-3), filed in this Action on February 2, 2024, and speaks for itself, and Guarantor respectfully refers this Court to that

document for a complete recitation of its contents and denies any characterizations inconsistent

therewith.

30.    The Mortgage also includes a security interest in favor of the holder of the Mortgage in the buildings, structures, fixtures and other improvements now or hereafter located on the Property as well as the Improvements, the Equipment, the Intangibles, the Leases and the Rents (each as defined in the Mortgage) all as more and more particularly described in Exhibit 2 annexed hereto (collectively, the "Collateral").

**ANSWER:**  The allegations in Paragraph 30 purport to describe the Mortgage, which

speaks for itself, and Guarantor respectfully refers this Court to the Mortgage for its complete

contents.

31.    To perfect its interest in the Collateral, on January 20, 2022 Original Lender recorded a Uniform Commercial Code Financing Statement with the City Register's Office as DN 2022-00256730 (the "County UCC-1").  The County UCC-1 names Original Lender as the secured party and Borrower as the Debtor.

**ANSWER:**  The allegations in Paragraph 31 purport to describe a publicly filed Uniform

Commercial Code Financing Statement, which speaks for itself, and Guarantor respectfully refers

this Court to that document for a complete recitation of its contents and denies any

characterizations inconsistent therewith.

32.    To further perfect its interest in the Collateral, on January 7, 2022 Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of State ("DE SOS") as File Number 2022-0177857 (the "State UCC-1").  The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

**ANSWER:**  The allegations in Paragraph 32 purport to describe a publicly filed Uniform

Commercial Code Financing Statement, which speaks for itself, and Guarantor respectfully refers

this Court to that document for a complete recitation of its contents and denies any

characterizations inconsistent therewith.

33.    In order to induce Original Lender to extend the Loan and to further secure its repayment, Guarantor executed a Guaranty of Recourse Obligations dated December 31, 2021, wherein and whereby Guarantor irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined therein) (the "Guaranty" and together with the Loan Agreement, Note, Mortgage, Guaranty, County UCC-1,

State UCC-1, and all other documents and agreements referred to, created, or contemplated thereunder – including all amendments and modifications thereto -- shall be referred to collectively herein as the "Loan Documents").[1]

**ANSWER:**  Guarantor admits that Guarantor executed the Guaranty.  The remaining allegations in Paragraph 33 purport to describe the Guaranty, which speaks for itself, and Guarantor respectfully refers this Court to the Guaranty for its complete contents.

**B.    The Mezzanine Loan**

34.    On or about December 31, 2021, Jericho Plaza Mezz LLC ("Mezzanine Borrower") and Original Lender entered into a that certain Mezzanine Loan Agreement ("Mezzanine Loan Agreement"), pursuant to which Original Lender made Loan to Borrower in the original principal amount of $20,000,000.00 (the "Mezzanine Loan"), evidenced by a certain Mezzanine Promissory Note dated as of December 31, 2021 made by Borrower in favor of Original Lender, as assigned to RICP V Holdings, LLC ("Mezzanine Lender") pursuant to that certain Allonge, dated as of February 4, 2022 (as may have been amended, modified and assigned, the "Mezzanine Note").

**ANSWER:**  Guarantor admits the allegations in Paragraph 34 that on December 31, 2021, Jericho Plaza Mezz LLC and Original Lender entered into a certain Mezzanine Loan Agreement, pursuant to which Original Lender made a loan to Borrower in the original principal amount of $20,000,000.00, evidenced by a certain Mezzanine Promissory Note, dated as of December 31, 2021, made by Borrower in favor of Original Lender.  Guarantor lacks knowledge or information sufficient to form a belief as to whether the Mezzanine Promissory Note was assigned to RICP V Holdings, LLC, and therefore denies that allegation.

**C.    Assignment of the Loan Documents to Plaintiff.**

35.    Original Lender executed an allonge to the Note, dated April 18, 2022 specially indorsed in favor of Plaintiff (the "Allonge"), and delivered the Note, with the Allonge firmly affixed thereto, to Plaintiff.

**ANSWER:**  To the extent the allegations in Paragraph 35 purport to describe the contents of the Note and the Allonge, which speak for themselves, Guarantor respectfully refers to the Court

---

[1]  Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

to those documents for their complete contents.  Guarantor denies the allegation in Paragraph 35 that Original Lender delivered the Note, with the Allonge firmly affixed thereto, to Plaintiff.

36.    A true and correct copy of the Note, with the Allonge firmly affixed thereto.  See Ex. 2.

**ANSWER:**  Guarantor admits the allegation in Paragraph 36 that a true and correct copy of the Note is attached to the Complaint as the first nine pages of Exhibit 2.  Guarantor denies the allegation in Paragraph 36 that the Allonge was firmly affixed to the Note.

37.    By virtue of this delivery, Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

**ANSWER:**  Paragraph 37 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations in Paragraph 37.

38.    Original Lender also executed and delivered an Assignment of Mortgage, dated May 14, 2022, to be effective as of April 18, 2022 (the "Assignment of Mortgage"), pursuant to which Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Mortgage and Plaintiff became the holder of the Mortgage and transferred to Plaintiff all rights, title and interest in and to the ALR and Plaintiff became the holder of the ALR.

**ANSWER:**  To the extent the allegations in Paragraph 35 purport to describe the contents of the Assignment of Mortgage and the ALR, which speak for themselves, Guarantor respectfully refers to the Court to those documents for their complete contents.  Paragraph 38 contains legal conclusions for which no response is required.  To the extent a response is required, Guarantor denies the allegations.

39.    On October 25, 2022, Plaintiff recorded the Assignment of Mortgage with the City Register's Office in Liber 46916 Page 912, DN 2022-00105316.

**ANSWER:**  The allegations in Paragraph 39 purport to describe a publicly filed document, which is attached as Exhibit 6 to the Declaration of Christopher G. Hamilton in Support of Plaintiff's Motion for the Appointment of a Receiver (ECF No. 6-6), filed in this Action on February 2, 2024, and speaks for itself, and Guarantor respectfully refers this Court to that

document for a complete recitation of its contents and denies any characterizations inconsistent therewith.

40.     By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on January 20, 2022, as DN 2022-00283629, Original Lender assigned the County UCC-1 to Plaintiff.

**ANSWER:**  The allegations in Paragraph 40 purport to describe a publicly filed Uniform Commercial Code Financing Statement, which speaks for itself, and Guarantor respectfully refers this Court to that document for a complete recitation of its contents and denies any characterizations inconsistent therewith.

41.     By Uniform Commercial Code Financing Statement Amendment filed with the DE SOS Original Lender assigned the State UCC-1 to Plaintiff.

**ANSWER:**  The allegations in Paragraph 41 purport to describe a publicly filed Uniform Commercial Code Financing Statement, which speaks for itself, and Guarantor respectfully refers this Court to that document for a complete recitation of its contents and denies any characterizations inconsistent therewith.

42.     Plaintiff is the current owner, assignee and holder of the original Note, with Allonge firmly affixed thereto, and Mortgage and is in physical possession of the original Note with Allonge, firmly affixed thereto, and the Loan Documents, including on the date this action was commenced.

**ANSWER:**  Paragraph 42 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations in Paragraph 42.

43.     Midland Loan Services, a division of PNC Bank National Association is the Special Servicer of the Loan and attorney-in-fact on behalf of the Plaintiff pursuant to the TSA, and in such capacities has the right to initiate, prosecute, and maintain this action on behalf of Plaintiff.

**ANSWER:**  Guarantor admits that Midland Loan Services, a division of PNC Bank National Association, is listed as the Special Servicer of the Loan and the attorney-in-fact on behalf of Plaintiff in the TSA.  The remaining statements in Paragraph 43 contain legal conclusions for

which no response is required. To the extent a response is required, Guarantor denies the allegations in Paragraph 43.

**D.    Borrower's Defaults Under the Loan Documents**

44.    Pursuant to Section 2.3.1 of the Loan Agreement, Borrower is obligated to remit the Monthly Debt Service Payment on each Monthly Payment Date of the Term of the Loan.

**ANSWER:** The allegations in Paragraph 44 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

45.    Upon an Event of Default, Plaintiff may protect and enforce its rights against Borrower and in and to the Property by foreclosing on the Mortgage pursuant to Section 10(a)(ii) of the Mortgage and Section 10.2.2 of the Loan Agreement.

**ANSWER:** Paragraph 45 contains legal conclusions for which no response is required. To the extent that the allegations in Paragraph 45 purport to describe the Loan Agreement, which speaks for itself, Guarantor respectfully refers this Court to that document for its complete contents.

46.    The Loan Documents provide that, upon the occurrence of an Event of Default, the entire principal sum shall bear interest at a default rate (the "Default Rate").

**ANSWER:** Paragraph 46 contains legal conclusions for which no response is required. To the extent that the allegations in Paragraph 46 purport to describe the Loan Documents, which speak for themselves, Guarantor respectfully refers this Court to those documents for their complete contents.

47.    The Default Rate is defined in the Loan Agreement as equal to the lessor of (i) the Maximum Legal Rate; or (ii) five percent (5%) above the Interest Rate.

**ANSWER:** The allegations in Paragraph 47 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

48.     The Loan Documents provide that, upon an Event of Default, Borrower and Guarantor shall be liable for all costs and expenses (regardless of the particular nature thereof and whether incurred prior to or during such proceeding) incident to the realization of Mortgagee's rights thereunder, including court costs and reasonable attorneys' fees, which costs and expenses shall incur interest at the Default Rate.

**ANSWER:**  The allegations in Paragraph 48 purport to describe the Loan Documents, which speak for themselves, and Guarantor respectfully refers this Court to those documents for their complete contents.

49.     The Loan Documents further provide that if payment is not paid by the due date specified in the Note, the Mortgage or any other Loan Document, Borrower shall pay upon demand an amount equal to four (4%) percent of any such unpaid sum or the maximum amount permitted by applicable law (the "Late Charge") to defray the expense incurred in handling and processing such delinquent payment, and such amount shall be deemed to be secured by the Mortgage.

**ANSWER:**  The allegations in Paragraph 49 purport to describe the Loan Documents, which speak for themselves, and Guarantor respectfully refers this Court to those documents for their complete contents.

50.     Section 10.2.1 of the Loan Agreement provides that:

> "[u]pon the occurrence and during the continuance of an Event of Default (other than an Event of Default described in subsection (g), (h) or (4 of Section 10.1) and at any time and from time to time thereafter, Lender may, in addition to any other rights or remedies available to Lender pursuant to this Agreement and the other Loan Documents or at law or in equity, take such action, without notice or demand (and Borrower hereby expressly waives any such notice or demand), that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property; including declaring the Debt to be immediately due and payable (including unpaid interest), interest at the Default Rate, Late Payment Charges, Spread Maintenance Premium, and any other amounts owing by Borrower), and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and the Property, including all rights or remedies available at law or in equity..."

**ANSWER:**  The allegations in Paragraph 50 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

     **i.**     **The Maturity Default**

51.     Section 1 of the Note provides "[f]or value received, Borrower promises to pay to the order of Lender...  the principal sum of One Hundred Forty-Nine Million One Hundred Eight Thousand and No/100 Dollars ($149,180,000.00), in lawful money of the United States of America, with interest on the unpaid principal balance from time to time outstanding to be computed in the manner, at the times and, subject to the provision..."

**ANSWER:**  The allegations in Paragraph 51 purport to describe the Note, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

52.     Section 2 of the Loan Agreement provides that "[o]n the Closing Date, Borrower shall make a payment to Lender of interest only for the period from the Closing Date through and including the next succeeding eighth (8th) day of a calendar month, whether such eighth (8th) day shall occur in the calendar month in which the Closing Date occurs or in the month immediately succeeding the month in which the Closing Date occurs (unless the Closing Date is the ninth (9th) day of a calendar month, in which case no such separate payment of interest shall be due).  On February 9, 2022 and each Payment Date thereafter throughout the Term, Borrower shall pay an amount equal to the Monthly Debt Service Payment Amount..."

**ANSWER:**  The allegations in Paragraph 52 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

53.     Section 2.3.2 of the Loan Agreement provides that Borrower shall pay to Lender on the Maturity Date the Outstanding Principal Balance, all accrued and unpaid interest and all other amounts due hereunder and under the Note and the other Loan Documents."

**ANSWER:**  The allegations in Paragraph 53 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

54.     The Stated Maturity Date, is defined in the Loan Agreement as "January 9, 2023, as the same may be extended pursuant to Section 2.9." (the "Maturity Date").

**ANSWER:**  The allegations in Paragraph 54 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.  For the avoidance of doubt, Guarantor denies the allegation that the Stated Maturity Date in the Loan Agreement is defined as January 9, 2023, and avers that it is instead defined as January 9, 2024.

55.    The Maturity Date was never extended by Original Lender or Plaintiff.

**ANSWER:**  Guarantor admits the allegations in Paragraph 55.

56.    Borrower failed to pay the "balance of the Principal, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents" on or before the Maturity Date.

**ANSWER:**  Guarantor admits the allegations in Paragraph 56 subject to the Maturity Date being January 9, 2024, as stated in the Loan Agreement, and not January 9, 2023, as alleged in Paragraph 54.

57.    Section 10.1(a)(A) provides that an Event of Default shall occur if "the Debt is not paid in full on the Maturity Date...".

**ANSWER:**  The allegations in Paragraph 57 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

58.    Section 10(a) of the Mortgage provides that:

> [u]pon the occurrence of any Event of Default, Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, by Lender itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender: (i) declare the entire Debt to be due and payable; (ii) institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Security Instrument, in which case the Property may be sold for cash or upon credit in

> one or more parcels or in several interests or portions and in any order or manner; and (vii) apply for the appointment of a trustee, Receiver, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower or of any Person liable for the payment of the Debt...

**ANSWER:**  The allegations in Paragraph 58 purport to describe the Mortgage, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

59.    Section 1 of the Mortgage provides that Borrower will pay the Debt when due in accordance with the terms of the Note and the other Loan Documents, and will perform, observe and comply with all other provisions of the Note and the other Loan Documents.

**ANSWER:**  The allegations in Paragraph 59 purport to describe the Mortgage, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

60.    Due to Borrower's failure to timely pay the outstanding principal balance together with all other amounts due and owing under the Loan Documents to Plaintiff on the Maturity Date constitutes an Event of Default under the Loan Documents (the "Maturity Default").

**ANSWER:**  Guarantor admits that it did not pay the outstanding principal balance under the Loan Documents to Plaintiff on January 9, 2024.  The remaining statements in Paragraph 60 contain legal conclusions for which no response is required.  Guarantor further responds that the Maturity Date is January 9, 2024, as stated in the Loan Agreement, and not January 9, 2023, as alleged in Paragraph 54.

61.    By Notice of Maturity Default dated January 16, 2024 (the "Notice of Default"), Plaintiff notified Borrower and Guarantor of the Events of Default, including the Maturity Default. Despite delivery of the Notice of Default, neither Borrower nor Guarantor have cured the Maturity Default.

**ANSWER:**  Guarantor admits that Plaintiff provided Borrower and Guarantor with a Notice of Maturity Default dated January 16, 2024.  The remaining allegations in Paragraph 61

purport to describe the Notice of Maturity Default, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

62.    Accordingly, Events of Default have occurred and are continuing under the Loan Documents as a result of the Maturity Default.

**ANSWER:**  Paragraph 62 contains legal conclusions for which no response is required. To the extent that the allegations in Paragraph 62 purport to describe the Loan Documents, which speak for themselves, Guarantor respectfully refers this Court to those documents for their complete contents.

ii.    **Borrower's Cash Management Defaults, Misappropriation of Operating Expenses and Failure to Pay Other Amounts Due**

63.    Section 5.2 of the Loan Agreement, Taxes and Other Charges, provides:

> Subject to Borrower's right to consent the same in accordance with the terms hereof, Borrower shall pay (or cause to be paid) all Property Taxes and Other Charges[2] now or hereafter levied, assessed or imposed as the same become due and payable, and deliver to Lender receipts for payment or other evidence satisfactory to Lender that the Property Taxes and Other Charges have been so paid no later than 30 days before they would be delinquent if not paid. . .

**ANSWER:**  The allegations in Paragraph 63 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

64.    Section 5.3.1 of the Loan Agreement, Repairs; Maintenance and Compliance, provides:

> Borrower shall at all times maintain, preserve and protect all franchises and trade names, and preserve all the remainder of its property used or useful in the conduct of its business and shall cause the Property to be maintained in a good and safe condition . . . Borrower shall promptly comply with all Legal Requirements and

---

2    "Other Charges" is defined in the Loan Agreement as "all ground rents, maintenance charges, impositions other than Property Taxes and other charges, . . . now or hereafter levied or assessed or imposed against the Property or any part thereof."

promptly cure property any violation of Legal Requirement. Borrower shall promptly notify Lender in writing after Borrower first receives notice of any such non-compliance.  Borrower shall promptly repair, replace or rebuild any part of the Property that becomes damaged, worn or dilapidated and shall complete and pay for any improvements at any time in the process of construction or repair.

**ANSWER:**  The allegations in Paragraph 64 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

65.    Section 5.4 of the Loan Agreement provides:

Borrower shall in a timely manner observe, perform and fulfill in all material respects each and every term to be observed, performed or fulfilled by it pursuant to the terms of any agreement or instrument affecting or pertaining to the Property.  Borrower shall in a timely manner observe, perform and fulfill each and every covenant term and provision of each Loan Document.

**ANSWER:**  The allegations in Paragraph 65 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

66.    Sections 10.1(b) and (c) of the Loan Agreement provide that it shall be an Event of Default if "any . . . Other Charges are not paid when due . . ." or "if any other amount payable pursuant to this Agreement, the Note or any other Loan Document . . . is not paid in full when due and payable in accordance with the provisions of the applicable Loan Document . . . [subject to applicable notice and cure periods]".

**ANSWER:**  The allegations in Paragraph 66 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

67.    Section 11.1 of the Loan Agreement further provides that Borrower's liability under the Loan Documents shall become recourse ". . .to the extent of any loss, damage, reasonable third-party out of pocket cost, expense, liability, claim or other obligation actually incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following (all such liability and obligation of Borrower for any or all of the following being referred to herein as "***Borrower's Recourse Liabilities***")":

19

(c)    any intentional physical waste of the Property

(d)    the misapplication, misappropriation or conversion by Borrower of . . . (y) any Gross Revenue (including any Rents, security deposits, advance deposits or any other deposits and Lease Termination Payments) . . . any, refund of Taxes or amounts in any Subaccount (including any distributions or payments to members/partners/shareholders of Borrower during a period which Lender did not receive the full amounts required to be paid to Lender under the Loan Documents)

(e)    failure to pay charges (including charges for labor and materials) that can create Liens on any portion of the Property to the extent such Liens are not bonded over or discharged in accordance with the terms of the Loan Documents; unless . . . (y) there is insufficient cash flow from the Property to pay the same

**ANSWER:** The allegations in Paragraph 67 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

68.    In accordance the Loan Agreement, during the period December 9, 2022 through December 9, 2023, Special Servicer provided funds to Borrower in the amount of $6,343,242.12 to be used by Borrower solely for the payment of Borrower's approved Operating Budget Expenses ($5,348,246.90) for that period and the remainder (approximately $994,995.22) to be treated as Additional Excess Cash Flow for Borrower.

**ANSWER:** Guarantor admits that during the period December 9, 2022, through December 9, 2023, Special Servicer released funds to Borrower in the amount of $6,343,242.12. Guarantor denies the remaining allegations in Paragraph 68. To the extent that the allegations in Paragraph 68 purport to describe the Loan Agreement, which speaks for itself, Guarantor respectfully refers this Court to that document for its complete contents.

69.    Specifically, section 3.12.1 (xii) of the Loan Agreement provides that income generated from the Property (i.e. Rents) is to be deposited monthly into the Deposit Account, applied (first) by the Plaintiff towards Monthly Debt Service Payments, insurance premiums and real estate taxes, and then returned to the Borrower (the "Excess Cash Flow") for payment of operating expenses based on the annual budget submitted by Borrower and approved by Plaintiff (the "Operating Budget Expenses").

**ANSWER:**  The allegations in Paragraph 69 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

70.    In accordance with Section 3.12 of the Loan Agreement, during the period December 9, 2022 through December 9, 2023, Special Servicer provided funds from the Deposit Account to the Borrower in the amount of $6,343,242.12, which amount was $994,995.22 in excess (the "Additional Excess Cash Flow") of the Borrower's approved Operating Budget Expenses ($5,348,246.90) for that period.

**ANSWER:**  Guarantor admits that during the period December 9, 2022 through December 9, 2023, Special Servicer released funds from the Deposit Account to Borrower in the amount of $6,343,242.12.  Guarantor denies the remaining allegations in Paragraph 70.  To the extent that the allegations in Paragraph 70 purport to describe the Loan Agreement, which speaks for itself, Guarantor respectfully refers this Court to that document for its complete contents.

71.    Despite Special Servicer providing more than $5 million to Borrower, in direct violation of its obligations under the Loan Documents, Borrower failed to pay operating expenses at the Property – committing waste, causing liens to be filed against the Property and threatening the operation and maintenance of the Property and the safety of its tenants (and their employees).

**ANSWER:**  Paragraph 71 contains legal conclusions for which no response is required.  To the extent a response is required, Guarantor denies the allegations in Paragraph 71.

72.    As a result, Borrower's management company, AMI Management LLC, prepared an open invoice list (the "Open Invoice List") stating there is more than $3 million in amounts due to vendors for the Property.  Some of the open vendor expenses relate to vital services such as: sanitation, elevator maintenance, electricity, fire safety, security and porter and cleaning services, and HVAC repairs.

**ANSWER:**  Guarantor admits that AMI prepared an Open Invoice List and provided it to Plaintiff.  To the extent that the allegations in Paragraph 72 purport to describe the Open Invoice List, which speaks for itself, Guarantor respectfully refers this Court to that document for its complete contents.

73.    Further, PSEG, the provider of electricity to the Property, placed a "Notice of Intention to Discontinue Electric Service" on the doors of all tenants at the Property advising that

unless payment in the amount of approximately $660,000.00 was received before 9:00 am. on February 6, 2024, electric service to the Property will be discontinued.

**ANSWER:** Guarantor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and therefore denies them, except that Guarantor admits that a "Notice of Intention to Discontinue Electric Service" was placed on at least some tenants' doors at the Property.

74.    Despite demand to Borrower to pay the amounts due to PSEG prior to February 6, 2024, and to pay all amounts due on the Open Invoice List, Borrower refused to pay unless Plaintiff agreed to enter into a forbearance agreement with Borrower.

**ANSWER:** Guarantor denies the allegations in Paragraph 74.

75.    As a result, Special Servicer on behalf of Plaintiff, contacted PSEG and obtained an extension to pay the amount due (now approximately $841,234.87) by February 9, 2024.

**ANSWER:** Guarantor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore denies them.

76.    In addition, two (2) mechanics liens[3] have been recorded against the Property as a result of Borrower's failure to pay for work performed at the Property.

**ANSWER:** Guarantor admits the allegations in the Paragraph 76 that two (2) mechanics liens have been recorded against the Property for payment for work performed on the Property..

77.    Further, a Judgment in the amount of $20,867.94 obtained by Power-Flo Technologies Inc. dba United Electric Power, has been filed against the Property.

**ANSWER:** Guarantor admits the allegations in Paragraph 77.  By way of further response, Guarantor avers that on or about February 12, 2024, Power-Flo recorded a Satisfaction of Judgment in the Office of Clerk of Court of the State of New York, Nassau County, which certifies that the Power-Flo's judgement against Guarantor has been paid and satisfied in full.

---

[3]    Defendants Liberty filed a mechanics lien on December 21, 2023 against the Property in the amount of $49,903.02; and J.E. filed a mechanic's lien against the Property on January 23, 2024 in the amount of $78,514.13.

78.     As explained above, Borrower's failure to timely pay its Operating Expenses is an Event of Default pursuant to Sections 10.1(b).(c) and (g) of the Loan Agreement.

**ANSWER:** Paragraph 78 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations.

79.     Borrower's failure to pay charges with respect to the Property, including Other Charges, and charges for labor and materials, constitutes an event of default pursuant to Section 10.1 of the Loan Agreement (collectively, the "Cash Management Default").

**ANSWER:** Paragraph 79 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations.

80.     Moreover, the failure to pay Operating Expenses amounts to an "intentional physical waste of the Property" and a misappropriation by Borrower of such funds, and the failure to pay charges (including charges for labor and materials) that can create liens on the Property also triggers recourse liability to the Borrower and Guarantor pursuant to Schedule 4 of Loan Agreement and Guaranty (the "Operating Expenses Default").

**ANSWER:** Paragraph 80 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations.

81.     Accordingly, Events of Default have occurred and are continuing under the Loan Documents as a result of the Maturity Default, the Cash Management Default, and the Operating Expenses Default (collectively, the "Defaults").

**ANSWER:** Paragraph 81 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations in Paragraph 81, except

Guarantor admits that the Maturity Default has occurred and is continuing.

## FIRST COUNT
### (Foreclosure of Mortgage)

82.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 81 above, as if the same were set forth and repeated at length herein.

**ANSWER:** Guarantor incorporates by reference his answers to the above paragraphs as if

set forth fully herein.

83.     The Loan Documents constitute valid and binding agreements of the parties thereto.

**ANSWER:** Paragraph 83 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

84.    Borrower breached the terms of the Loan Documents, as evidenced by the Defaults.

**ANSWER:** Paragraph 84 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

85.    For the reasons alleged above, the Defaults constitute Events of Default under the Loan Documents.

**ANSWER:** Paragraph 85 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations, except Guarantor admits that the Maturity Default has occurred and is continuing.

86.    Based upon the occurrence of the Events of Default, Plaintiff is entitled to exercise any and all of its rights and remedies, whether under the Loan Documents, at law, or in equity, including, but not limited to, those rights and remedies pursuant to Section 10.2 of the Loan Agreement.

**ANSWER:** Paragraph 86 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

87.    There is now due, owing and payable to Plaintiff under the Loan Documents: (i) $149,180,000.00 in principal; (ii) accrued and unpaid interest at the contract rate and default rate, which has been accruing since the first Event of Default; (iii) late charges; (iv) all costs of collection and defense, including but not limited to attorneys' fees, costs and expenses, and special servicing fees; and (v) all other sums provided for under the Loan Documents.

**ANSWER:** Paragraph 87 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

88.    In order to protect the lien and security represented by the Mortgage during the pendency of this action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property. Plaintiff asks that any amount so paid and expended by it during the pendency of this action be added, pursuant to the Loan Documents, to its claim and, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Loan Documents.

**ANSWER:** Paragraph 88 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations.

89.    Additionally, Section 2(a) of the Mortgage provides, <u>inter alia</u>, that after the occurrence of any Event of Default, the license granted to Borrower to collect, use and enjoy the rents, issues and profits and other sums payable under and by virtue of any Lease granted under the Loan Documents shall be automatically revoked and terminated.  As such, Lender shall immediately be entitled to possession of all Rents in (or required by the terms of the Loan Documents to be deposited in) the Clearing Account, the Deposit Account (including all Subaccounts thereof) and all Rents collected thereafter (including Rents past due and unpaid), whether or not Lender enters upon or takes control of the Property.

**ANSWER:** Paragraph 89 contains legal conclusions for which no response is required.

To the extent that the allegations purport to describe the Loan Agreement, which speaks for itself,

Guarantor respectfully refers this Court to that document for its complete contents.  To the extent

a further response is required, Guarantor denies the allegations.

90.    The Defendants named herein are obligated to pay the Mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

**ANSWER:** Paragraph 90 contains legal conclusions for which no response is required.

To the extent a response is required, Guarantor denies the allegations.

91.    Plaintiff has brought no other action or proceeding to recover any part of the Indebtedness herein described.

**ANSWER:** Guarantor lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 91 and therefore denies them.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.    Adjudging and decreeing the amounts due it as demanded in this Complaint by means of Borrower's default under the Loan Documents;

**ANSWER:** The immediately preceding paragraph contains Plaintiff's request for relief

for which no response is required.

B.    Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Property, which is the subject of this foreclosure action, subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property and each and every part and parcel thereof;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief

for which no response is required.

C.    Adjudging and decreeing that (a) the Property may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Property may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (i) the expenses of said sale, (ii) the costs, allowances, and disbursements of this action, (iii) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (iv) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Property, (v) its expenses of collection, including reasonable attorneys' fees, and (vi) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money property applicable thereto will pay the same;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief

for which no response is required.

D.    Adjudging and decreeing that Borrower be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the Real Property Actions and Proceedings Law;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief

for which no response is required.

E.    Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

        F.      Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

        G.      Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

**SECOND COUNT**
**(Security Interest Foreclosure)**

92.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 91 above, as if the same were set forth and repeated at length herein.

**ANSWER:**  Guarantor incorporates by reference his answers to the above paragraphs as if set forth fully herein.

93.    When Borrower executed the Mortgage, it granted a valid and enforceable security interest in the Collateral.

**ANSWER:**  Paragraph 93 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor admits the allegation in Paragraph 93 that the Mortgage granted a valid and enforceable security interest in the Collateral to Original Lender.

94.    Plaintiff holds a duly perfected security interest in the Collateral by virtue of the recorded Mortgage, the recorded County UCC-1, the filed State UCC-1, and the subsequent assignments thereof.

**ANSWER:**  Paragraph 94 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

95.    Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Property at a single public sale.

**ANSWER:**  Guarantor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 and therefore denies them.

96.    No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**ANSWER:**  Paragraph 96 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.    Adjudging that the Collateral be sold together with the Property at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

B.    Barring and foreclosing the defendants of all equity of redemption in and to the aforesaid personal property;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

C.    Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

D.    Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

## THIRD COUNT
### (Possession)

97.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 96 above, as if the same were set forth and repeated at length herein.

28

**ANSWER:** Guarantor incorporates by reference his answers to the above paragraphs as if set forth fully herein.

98.    By reason of Borrower's default under the terms of the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral located.

**ANSWER:** Paragraph 98 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

99.    Borrower is now in possession of the Property and has deprived, and continue to deprive, Plaintiff of possession of the Property and Collateral.

**ANSWER:** Guarantor denies the allegations in Paragraph 99. By way of further response, Guarantor avers that the Receiver is now in possession of the Property.

**WHEREFORE**, Plaintiff demands judgment against the defendants:

A.    Granting Plaintiff, its assignee or the purchaser of the Property at the foreclosure sale, possession of the Property and the Collateral;

**ANSWER:** The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

B.    Awarding Plaintiff damages for mesne profits;

**ANSWER:** The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

C.    Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

**ANSWER:** The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

D.    Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:** The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

## FOURTH COUNT
### (Appointment of a Receiver)

100.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 99 above, as if the same were set forth and repeated at length herein.

**ANSWER:**  Guarantor incorporates by reference his answers to the above paragraphs as if set forth fully herein.

101.    The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are the sole assets of Borrower.

**ANSWER:**  Guarantor admits the allegations in Paragraph 101.

102.    The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a Receiver upon the occurrence of an Event of Default.

**ANSWER:**  The allegations in Paragraph 102 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

103.    Borrower and its agents are still in possession of Borrower's Assets.

**ANSWER:**  Guarantor denies the allegations in Paragraph 103.  By way of further response, Guarantor avers that the Receiver is now in possession of the Property.

104.    Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrower's Assets suffering continuous waste and a dissipation or diminution in value, if Borrower remains in control of Borrower's Assets.

**ANSWER:**  Paragraph 104 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

105.    Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a Receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

**ANSWER:**  Paragraph 105 contains legal conclusions for which no response is required.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.    Appointing a Receiver of the Property and Borrower's Assets;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

      B.      Directing all tenants in possession of the Property to pay the appointed Receiver all rent, income and profits;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

      C.      Awarding Plaintiff its costs of suit and attorneys' fees; and

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

      D.      Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

## FIFTH COUNT
### (Breach of the Guaranty)

106.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 105 above, as if the same were set forth and repeated at length herein.

**ANSWER:**  Guarantor incorporates by reference his answers to the above paragraphs as if set forth fully herein.

107.    In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed, acknowledge and delivered to Original Lender, its successors and assigns, the Guaranty.

**ANSWER:**  Guarantor admits the allegations in Paragraph 107 that Guarantor executed, acknowledged and delivered the Guaranty to Original Lender.  Guarantor denies the remaining allegations in Paragraph 107.

108.    Pursuant to the Section 2(a) of the Guaranty, "Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment and performance when due of the Guaranteed Obligations.:

**ANSWER:** The allegations in Paragraph 108 purport to describe the Guaranty, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

109.    Pursuant to the Guaranty, the term "Guaranteed Obligations" means "(i) Borrower's Recourse Liabilities and (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt".

**ANSWER:** The allegations in Paragraph 109 purport to describe the Guaranty, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

110.    Section 11.1(vii) of the Loan Agreement provides that the provisions of Section 11.1 "shall not constitute a waiver of the right of Lender waiver of the right of Lender to enforce the liability and obligation of Borrower, by money judgment or otherwise, to the extent of any loss, damage, reasonable third -party out-of-pocket cost, expense, liability, claim or other obligation actually incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following (all such liability and obligation of Borrower for any or all of the following being referred to herein as "Borrower's Recourse Liabilities")":
(c) any intentional physical waste of the Property

**ANSWER:** The allegations in Paragraph 110 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

111.    Section 11.1(d) provides that "the misapplication, misappropriation or conversion by Borrower of . . . (y) any Gross Revenue (including any Rents, security deposits, advance deposits or any other deposits and Lease Termination Payments) . . . any, refund of Taxes or amounts in any Subaccount (including any distributions or payments to members/partners/shareholders of Borrower during a period which Lender did not receive the full amounts required to be paid to Lender under the Loan Documents)..." shall be included as Borrower's Recourse Liabilities.

**ANSWER:** The allegations in Paragraph 111 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

112.    Section 11.1 (e) provides that the following shall be included as Borrower's Recourse Liabilities:

failure to pay charges (including charges for labor or materials) that can create Liens on any portion of the Property to the extent such Liens are not bonded over or discharged in accordance with the terms of the Loan Documents;

**ANSWER:**  The allegations in Paragraph 112 purport to describe the Loan Agreement, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

113.    As a result of Borrower's misappropriation of funds specially designated for the payment of operating expenses at the Property, , including its failure to pay its Operating Expenses, Borrower's Recourse Liabilities is triggered pursuant to Sections 11.1(c), (d) and (e) of the Loan Agreement and the Guaranty becomes a full recourse Guaranty against the Guarantor.

**ANSWER:**  Guarantor denies the allegations in Paragraph 113.

114.    Section 5(a) of the Guaranty provides:

> The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantor under this Guaranty, or any setoff or counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety (other than the defense of payment or performance).  Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person.

**ANSWER:**  The allegations in Paragraph 114 purport to describe the Guaranty, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

115.    Moreover, pursuant to Section 16(b) of the Guaranty, Guarantor further agreed to reimburse Plaintiff for "all reasonable third-party out-of-pocket costs, charges and expenses, including reasonable attorneys' fees and disbursements, which are actually incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty."

**ANSWER:**  The allegations in Paragraph 115 purport to describe the Guaranty, which speaks for itself, and Guarantor respectfully refers this Court to that document for its complete contents.

116.    Plaintiff is the current holder of the Note, Mortgage, Guaranty and Loan Documents.

**ANSWER:**  Guarantor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 and therefore denies them.

117.    Plaintiff seeks to foreclose upon the Mortgage and recover the full amount of the Indebtedness pursuant to the terms of the Loan Documents, including attorneys' fees and costs, and that Guarantor be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the Indebtedness remaining unsatisfied after the sale of the Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

**ANSWER:**  Paragraph 117 contains legal conclusions for which no response is required. To the extent a response is required, Guarantor denies the allegations.

118.    Plaintiff has brought no other action or proceeding to recover any part of the Indebtedness herein described.

**ANSWER:**  Guarantor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 and therefore denies them.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A.    Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

B.    Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs;

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

C.    Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and,

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

D.    Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:**  The immediately preceding paragraph contains Plaintiff's request for relief for which no response is required.

## GUARANTOR'S AFFIRMATIVE DEFENSES

As and for his Affirmative Defenses, and undertaking the burden of proof with respect to such defenses only to the extent required by law, regardless of how such defenses are denominated herein, Guarantor hereby states as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part for failure to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part for lack of damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff's alleged damages, if any, are speculative and because of the impossibility of ascertaining the alleged damages.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff failed to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to the recovery of all or a portion of attorneys' fees and costs under the Loan Agreement or Guaranty.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of laches, waiver, acquiescence, estoppel, and ratification.

## SEVENTH AFFIRMATIVE DEFENSE

Guarantor specifically reserves and does not waive any and all additional, separate, or other affirmative defenses that he may have or which may be revealed by discovery or further investigation.

Dated: October 11, 2024                    Respectfully submitted,

/s/ *Blair A. Adams*

Blair A. Adams
Toby E. Futter
Alec S. Bahramipour
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: 202-538-8122
Fax: 202-538-8100
blairadams@quinnemanuel.com
tobyfutter@quinnemanuel.com
alecbahramipour@quinnemanuel.com

*Attorneys for Defendant Menachem Meisner*

36

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2024, I electronically served a copy of the foregoing

to all counsel of record via ECF.


/s/ *Blair A. Adams*
Blair A. Adams