UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE FOR NATIXIS COMMERCIAL MORTGAGE SECURITIES TRUST 2022-JERI, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2022-JERI (FOR THE BENEFIT OF THE CERTIFICATEHOLDERS), acting by and Midland Loan Services, a division of PNC Bank National Association as Special Servicer under the Trust Servicing Agreement dated as of April 18, 2022,<br><br>                    Plaintiff,<br><br>        v.<br><br>JERICHO PLAZA PORTFOLIO LLC; MENACHEM MEISNER; POWER-FLO TECHNOLOGIES INC. d/b/a UNITED ELECTRIC POWER; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; LIBERTY ELEVATOR CORPORATION; JE GRANT ASSOCIATES LLC d/b/a ENERGY PLUS SOLUTIONS; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,<br><br>The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Premises Herein Described,<br><br>                    Defendants. | Civil Action File No. 1:24-cv-00917-PAE |

**DECLARATION OF KEVIN GIBBONS FOR AMOUNTS DUE**

Pursuant to 28 U.S.C. § 1746, I, KEVIN GIBBONS, declare under penalty of perjury as follows:

1.       My name is Kevin Gibbons.  I am over 21 years of age and am competent to give testimony.

1

2. I currently serve as a Senior Asset Resolution Consultant with Midland Loan Services, a division of PNC Bank National Association ("Special Servicer"), pursuant to the Trust and Servicing Agreement dated as of April 18, 2022 (the "TSA"), as the authorized agent for plaintiff U.S. Bank Trust Company, National Association, solely in its capacity as Trustee ("Trustee") for Natixis Commercial Mortgage Securities Trust 2022-Jeri, Commercial Mortgage Pass-Through Certificates, Series 2022-Jeri (the "Trust"), for the benefit of the Certificateholders ("Plaintiff"). I have primary responsibility for the daily servicing of the subject loan obtained by defendant Jericho Plaza Portfolio LLC ("Borrower")

3. I make this declaration based upon my personal knowledge and my review of Plaintiff's business records, as maintained by Special Servicer, including the documents of any predecessor lender (as defined below), which have been incorporated into and made part of Special Servicer's records, regarding Borrower and the subject loan (the "Business Records"). In connection with performing its duties as Special Servicer for Plaintiff, Special Servicer creates, receives, and maintains records, including the exhibits attached to the complaint and/or this declaration, in the regular course of the Special Servicer's business activities. I am familiar with Special Servicer's and Plaintiff's record-keeping practices and procedures. Based on my review of and familiarity with Plaintiff's records, maintained by the Special Servicer, all the exhibits attached to this declaration were received, created, or otherwise generated at or near the dates reflected on such documents. Such exhibits also are true and correct copies of the corresponding documents in the Special Servicer's business records that are in the custody and control of the Special Servicer. I make this Declaration based upon my personal knowledge, obtained through my daily responsibilities as asset manager of the subject loan, of the facts set forth below, and

2

upon my review of the Business Records relating to the subject loan and from my own personal knowledge of how they are kept and maintained.

I.   **FACTUAL BACKGROUND**

A.   **The Loan Documents**

4. On or about December 31, 2021, Borrower obtained a loan in the original principal amount of $149,180,000.00 (the "Loan") from Natixis Real Estate Capital LLC ("Original Lender").

5. The Loan is governed by that certain Loan Agreement between Original Lender and Borrower, dated as of December 31, 2021 (the "Loan Agreement"). *See* ECF No. 6-1.

6. To evidence the Loan, Borrower acknowledged, executed and delivered to Original Lender that certain Consolidated, Amended and Restated Promissory Note dated December 31, 2021, in the original principal amount of $149,180,000.00 (the "Note"). *See* ECF No. 6-2.

7. As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Mortgage, Assignment of Rents and Leases, and Security Agreement dated as of December 31, 2021 (the "Mortgage"), encumbering real property located at One Jericho Plaza and Two Jericho Plaza, Jericho, New York (Section: 11; Block: 355; Lots: 31 and 32), and more particularly described in Exhibit A to the Mortgage (the "Property"). *See* ECF No. 6-3.

8. As additional collateral security for the payment of the Loan, Borrower executed and delivered to Original Lender an Assignment of Leases and Rents dated as of December 31, 2021 (the "ALR") pursuant to which Borrower granted to Original Lender a security interest in all Leases and Rents generated from the Property. *See* ECF No. 6-4.

9. To perfect its interest in the Collateral, on January 20, 2022, Original Lender recorded a Uniform Commercial Code Financing Statement with the Nassau County Clerk's

Office as Document Number: 2022-00256730 (the "County UCC-1"). The County UCC-1 names Original Lender as the secured party and Borrower as the Debtor.

10. To further perfect its interest in the Collateral, on January 7, 2022, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of State ("DE SOS") as File Number 2022-0177857 (the "State UCC-1"). The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

11. To induce Original Lender to extend the Loan and to further secure its repayment, Menachem Meisner ("Guarantor") executed a Guaranty of Recourse Obligations dated as of December 31, 2021 (the "Guaranty"), wherein and whereby Guarantor irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty). *See* ECF No. 6-5.

**B.    Assignment of the Loan Documents to Plaintiff.**

12. Original Lender specially indorsed an allonge to the Note in favor of Plaintiff, dated as of April 18, 2022 (the "Allonge"). *See See* ECF No. 6-2.

13. Plaintiff has been in physical possession of the original Note, with the Allonge firmly affixed thereto, and was so on the date this action was commenced.

14. In addition, Original Lender executed and delivered that certain Assignment of Mortgage dated as of May 24, 2022, effective as of April 18, 2022 ("Plaintiff Assignment of Mortgage"), pursuant to which Original Lender assigned, transferred and delivered to Plaintiff all of Original Lender's right, title and interest in and to the Mortgage. *See* ECF No. 6-2.

15. Pursuant to the Assignment of Assignment of Leases and Rents dated as of May 24, 2022, effective as of April 18, 2022, Original Lender assigned, transferred and delivered to

4

Plaintiff all of Original Lender's right, title and interest in and to the ALR ("Plaintiff Assignment of ALR"). *See* ECF No. 6-**7**.

16. As a result of the foregoing, Plaintiff is the current owner, assignee and holder of the Note, with Allonge firmly affixed thereto, Mortgage and Loan Documents.

**C.    The Mezzanine Loan**

17. On or about December 31, 2021, Jericho Plaza Mezz LLC ("Mezzanine Borrower") and Original Lender entered into that certain Mezzanine Loan Agreement ("Mezzanine Loan Agreement"), pursuant to which Original Lender made a Loan to Borrower in the original principal amount of $20,000,000.00 (the "Mezzanine Loan"), evidenced by a Mezzanine Promissory Note dated as of December 31, 2021 made by Borrower in favor of Original Lender, as assigned to RICP V Holdings, LLC ("Mezzanine Lender") pursuant to that certain Allonge, dated as of February 4, 2022 (as may have been amended, modified and assigned, the "Mezzanine Note").

**D.  Borrower's Defaults Under the Loan Documents**

   **(a)    The Maturity Default**

18. Section 2.3.1 of the Loan Agreement provides that commencing on February 9, 2022 and each Payment Date thereafter throughout the Term, Borrower shall pay an amount equal to the Monthly Debt Service Payment Amount.[1]  *See* ECF No. 6-1. §2.3.1.

19. Section 1 of the Note provides "Borrower shall pay the Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in Article 2 of the Loan Agreement . . . The balance of the Principal, together with all accrued and unpaid interest thereon,

---

[1] Monthly Debt Service Amount is defined in the Loan Agreement as "interest on the Outstanding Principal Balance accrued and accruing from the first day of the applicable Interest Period through and including the last day of the Interest Period. *See* Ex 1, page 16.

5

and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date." *See See* ECF No. 6-1, §1.

20. The "Stated Maturity Date" is defined in the Loan Agreement as January 9, 2024, as the same may be extended pursuant to Section 2.9." *See id*.

21. Borrower failed to pay all amounts due and owing to Lender under the Loan Agreement on or before the Maturity Date, which Borrower does not dispute. *See* ECF No. 171 ¶ 46.

22. Section 10.1(a) of the Loan Agreement provides that each of the following events shall constitute an event of default (an "***Event of Default***"):

> If (A) the Debt not paid in full on the Maturity Date, (B) any regularly scheduled monthly payment of interest, and, if applicable, principal due under the Note is not paid in full on the applicable Payment Date, (C) any prepayment of principal due under the Agreement or the Note is not paid when due, (d) the Spread Maintenance Premium is not paid when due, or (E) any deposit of Reserve Funds is not made on the required deposit date therefor;

*See See* ECF No. 6-1 §10.1(a) (emphasis in original).

23. Accordingly, an Event of Default has occurred under the Loan Documents as a result of Borrower's failure to pay the outstanding indebtedness on or before the Maturity Date (the "Maturity Default"). *See See* ECF No. 6-1.

24. Although no notice is required under the Loan Documents, Plaintiff sent a Notice of Maturity Default/Demand for Payment dated January 16, 2024 ("Notice of Default"), notifying Borrower of its Maturity Default, and revoking Borrower's license to collect Rents and profits generated by the Property, and demanding Borrower remit all sums due and owing under the Loan Documents. *See* ECF No. 6-**8.**

    **(b)**    **Borrower's Recourse Liability**

25.    Section 5.2 of the Loan Agreement provides:

> Subject to Borrower's right to consent to the same in accordance with the terms hereof, Borrower shall pay (or cause to be paid) all Property Taxes and Other Charges[2] now or hereafter levied, assessed or imposed as the same become due and payable, and deliver to Lender receipts for payment or other evidence satisfactory to Lender that the Property Taxes and Other Charges have been so paid no later than 30 days before they would be delinquent if not paid. . .

*See* ECF No. 6-1§5.2.

26.    Section 5.3.1 of the Loan Agreement provides:

> Borrower shall . . . cause the Property to be maintained in a good and safe condition . . . Borrower shall promptly comply with all Legal Requirements and promptly cure property any violation of Legal Requirement. Borrower shall promptly notify Lender in writing after Borrower first receives notice of any such non-compliance.

*See id.* §5.3.1.

27.    Section 5.4 of the Loan Agreement provides:

> Borrower shall in a timely manner observe, perform and fulfill in all material respects each and every term to be observed, performed or fulfilled by it pursuant to the terms of any agreement or instrument affecting or pertaining to the Property. Borrower shall in a timely manner observe, perform and fulfill each and every covenant term and provision of each Loan Document

*See id.* §5.4.

28.    Sections 10.1(b) and (c) of the Loan Agreement provide that it shall be an Event of Default if "any . . . Other Charges are not paid when due . . ." or "if any other amount payable

---

[2] "Other Charges" is defined in the Loan Agreement as "all ground rents, maintenance charges, impositions other than Property Taxes and other charges, . . . now or hereafter levied or assessed or imposed against the Property or any part thereof." *See* ECF No. 6-1, p. 18.

7

pursuant to this Agreement, the Note or any other Loan Document . . . is not paid in full when due and payable in accordance with the provisions of the applicable Loan Document . . . [subject to applicable notice and cure periods]". See ECF No. 6-1§10.1(b)-(c).

29.     Pursuant to Section 10.1 (g), it is an Event of Default if Borrower or Guarantor shall "generally not be paying its debts as they become due." See ECF No. 6-1§10.1(g).

30.     Section 11.1 of the Loan Agreement provides that Borrower's liability under the Loan Documents shall become full recourse ". . . to the extent of any loss, damage, reasonable third-party out of pocket cost, expense, liability, claim or other obligation actually incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following (all such liability and obligation of Borrower for any or all of the following being referred to herein as "***Borrower's Recourse Liabilities***"):

> (c) any intentional physical waste of the Property
>
> (d) the misapplication, misappropriation or conversion by Borrower of . . . (y) any Gross Revenue (including any Rents, security deposits, advance deposits or any other deposits and Lease Termination Payments . . . any, refund of Taxes or amounts in any Subaccount (including any distributions or payments to members/partners/shareholders of Borrower during a period which Lender did not receive the full amounts required to be paid to Lender under the Loan Documents)
>
> (e) failure to pay charges (including charges for labor and materials) that can create Liens on any portion of the Property to the extent such Liens are not bonded over or discharged in accordance with the terms of the Loan Documents; unless . . . (y) there is insufficient cash flow from the Property to pay the same

See ECF No. 6-1§11.1(c)(d)(e).

31.     In accordance the Loan Agreement, during the period December 9, 2022 through December 9, 2023, Special Servicer provided funds to Borrower in the amount of $ 6,342,742.12. See ECF No. 6-1¶70; 6 ¶42.

32. Borrower, in direct violation of its obligations under the Loan Documents, failed to pay operating expenses at the Property, including at least $3 million in outstanding expenses owed to vendors at the Property as set forth on the Open Invoice List (the "Open Invoice List"). ECF No. 6-**9**.

33. Further, in order to prevent the shut-off of electricity at the Property, Plaintiff paid $841,234.87 to PSEG on February 9, 2024. *See* ECF No. 171 ¶ 67.

34. In addition, four (4) mechanic's liens have been recorded against the Property as a result of Borrower's failure to pay for work performed at the Property. *See* ECF No. 171 ¶ 68.

35. Defendants Liberty Elevator Company filed a mechanics lien on December 21, 2023, against the Property in the amount of $49,903.02. *See* ECF No. 171 ¶ 69.

36. Defendant J.E. Grant Associates LLC d/b/a Energy Plus Solutions filed a mechanic's lien against the Property on January 23, 2024, in the amount of $78,514.13. *See* ECF No. 171 ¶ 70.

37. Defendant RMAC Supplies filed a mechanic's lien against the Property on June 21, 2024, in the amount of $32,348.06. *See* ECF No. 171 ¶ 71.

38. Defendant South Shore Building Maintenance, Corp., filed a mechanic's lien against the Property on September 26, 2024, in the amount of $174,200.00. *See* ECF No. 171 ¶ 72.

39. Further, a Judgment in the amount of $20,867.94 obtained by Power-Flo Technologies Inc. dba United Electric Power ("Power-Flo"), was filed against the Property. On February 12, 2024, Power-Flo filed a Satisfaction of Judgment stating that "the Judgment has been fully satisfied." *See* ECF No. 171 ¶ 73.

40. As explained above, Borrower's failure to timely pay its Operating Expenses is an Event of Default pursuant to Sections 10.1(b), (c), and (g) of the Loan Agreement.  *See* Ex. 1.

41.     Borrower's failure to pay charges with respect to the Property, including Other Charges, and charges for labor and materials, constitutes an event of default pursuant to Section 10.1 of the Loan Agreement. *See* ECF No. 6-1§10.1.

42.     Moreover, the failure to pay Operating Expenses amounts to an "intentional physical waste of the Property" and a misappropriation by Borrower of such funds, and the failure to pay charges (including charges for labor and materials) that can create liens on the Property also triggers recourse liability to the Borrower and Guarantor pursuant to the Loan Agreement and Guaranty.

## II. PROCEDURAL STATUS

43.     On April 8, 2024, Defendants filed a Motion to Dismiss the Complaint. *See* ECF Nos. 67-72.

44.     On September 27, 2024, the Court denied Borrower's Motion to Dismiss and Guarantor's Motion to Dismiss as to the Borrower Recourse claims, and granted the dismissal of the Springing Recourse claims against Guarantor. *See* ECF No. 117.

45.     In accordance with the Court's February 11, 2025 Order, on March 3, 2025, the Parties submitted a Joint Statement of Undisputed Facts (ECF No. 171). ECF No. 6-1**10**.

46.     By Stipulation and Order dated and entered on March 11, 2025, the Parties consented to the entry of a judgment of liability in favor of Plaintiff and against Borrower, on the first, second and third causes of action (the "Foreclosure Causes of Action"), and the Court referred this matter to a Magistrate Judge to "ascertain and compute the amount of the judgement of foreclosure". *See* ECF No. 174.

## II.     COMPUTATION OF THE AMOUNT DUE AND OWING

47.     From my examination of the Business Records, the total amount of **$160,972,499.40** as of March 31, 2025,[3] comprised of the amounts described below and as listed in the Amount Due Schedule annexed hereto as Schedule A ("Amount Due Schedule") is currently due and owing to Plaintiff.  *See* Schedule A.

### i.   Outstanding Principal Balance

48.     The outstanding principal balance due and owing under the Loan Documents is **$149,180,000.00**.  *See* Schedule A.

### ii.  Accumulated Interest

49.     Section 2.3.1 of the Loan Agreement provides that "[o]n the Closing Date, Borrower shall make a payment to Lender of interest only for the period from the Closing Date through and including the next succeeding eighth (8th) day of a calendar month . . .  On February 9, 2022, and each Payment Date thereafter throughout the Term, Borrower shall pay an amount equal to the Monthly Debt Service Payment Amount…".  *See* Ex. 1§ 2.3.1

50.     The Interest Rate is defined in the Loan Agreement as "for any Interest Period, an interest rate per annum equal to (i) for a SOFR Loan, the Spread plus the applicable SOFR Index for such Interest Period; (ii) for a Base Rate Loan, the Base Rate Spread plus the Base Rate for such Interest Period; and (iii) for a Benchmark Replacement Loan, the Spread plus the Benchmark Replacement for such Interest Period; provided, however, that the Interest Rate as determined pursuant to the foregoing clauses  (i), (ii) and (iii) shall in no event be less than the sum of the Spread plus the SOFR Floor." *See* ECF No. 6-1, p.12.

---

[3] Excluding attorneys' fees and costs, which Plaintiff is entitled to under the Loan Documents.  Plaintiff will make a separate submission for same.

11

51. As set forth in the Amount Due Schedule, **$2,033,175.72** of unpaid interest has accumulated with respect to the Loan's $149,180,000.00 unpaid principal balance at the Interest Rate as defined in the Loan Agreement. *See* Schedule A.[4]

### iii. Accumulated Default Interest

52. The Loan Documents provide that, upon the occurrence of an Event of Default, the entire principal sum shall bear interest at a default rate (the "Default Rate"). *See* ECF No. 6-18.

53. The Default Rate is defined in the Loan Agreement as equal to the lessor of (i) the Maximum Legal Rate; or (ii) five percent (5%) above the Interest Rate. *See id.*, p. 8.

54. The Loan Documents provide that, upon an Event of Default, Borrower and Guarantor shall be liable for all costs and expenses (regardless of the particular nature thereof and whether incurred prior to or during such proceeding) incident to the realization of Mortgagee's rights thereunder, including court costs and reasonable attorneys' fees, which costs and expenses shall incur interest at the Default Rate. *See* ECF No. 6-1.

55. Because Borrower indisputably defaulted on January 9, 2024 by failing to pay the full amount due and owing under the Loan, the Amount Due Schedule reflects that **$10,070,866.33** of unpaid default interest has accumulated with respect to the principal balance at the applicable time, at the Default Rate of 5% from January 9, 2024, through and including March 31, 2025, on a monthly basis. *See* Schedule A.

### iv. Special Servicing Fees

56. Section 11.3 of the Loan Agreement provides that "the Loan may be serviced by a master servicer, primary servicer, special servicer and/or trustee . . . selected by

---

[4] In addition, there is a charge in the amount of **$1,800.04**, which is an interest adjustment on Lockbox Reserves that Plaintiff is entitled to collect from Borrower.

Lender and Lender may delegate all or any portion of its responsibilities under this Agreement and the other Loan Documents to [Special] Servicer pursuant to a pooling and servicing agreement, servicing agreement, special servicing agreement and/or other agreement providing for servicing of one (1) or more of the mortgage loans . . .  *See* ECF No. 6-1, § 11.3.

> 57. Section 11.24(a) of the Loan Agreement further provides that:
>
> Borrower shall pay (i) any reasonable fees and expenses of Servicer (including without limitation, third-party attorneys' fees and disbursements) in connection with the release of the Property or a portion thereof, any prepayment, transfer, assumption, amendment or modification of the Loan, ant documents or other matters requested by Borrower or any Guarantor, any special servicing or workout of the Loan or enforcement of the Loan Documents, including without limitation, any advances made by Servicer and interest on such advances, and liquidation fees in connection with the exercise of any or all remedies permitted under this Agreement and (ii) the costs of all property inspections and/or appraisals of the Property (or any updates to any existing inspection or appraisal that a Servicer may be required to obtain (other than the cost of regular annual inspections required to be borne by Servicer under the Servicing Agreement). Without limiting the generality of the foregoing, Servicer shall be entitled to reimbursement of costs and expenses as and to the same extent (but without duplication) as Lender is entitled thereto pursuant to the terms of the Loan Documents.

*Id.*, § 11.24(a).

> 58. Pursuant to the TSA, the Special Servicing Fee Rate is defined as 0.25% per annum. Relevant excerpts of the TSA are collectively annexed hereto as **Exhibit 1**.
>
> 59. The Special Servicing Fees currently outstanding for this Loan in the amount of **$61,122.36** are set forth in Paragraph 63.

**Protective Advances, Costs and Accrued Interest**

60. Section 5.19 of the Loan Agreements provides that Borrower shall pay "all amounts due and payable to Lender hereunder (including, but not limited to, disbursements, advances and reasonable third-party out-of-pocket legal expenses incurred in connection therewith) . . . and interest thereon shall accrue at the Default Rate from the date incurred". *See* ECF No. 6-1§ 5.19.

61. Section 10.2.5 of the Loan Agreement provides in relevant part:

> If Borrower fails to perform any covenant or obligation contained herein and such failure shall continue for a period of fifteen (15) Business Days after Borrower's receipt of written notice thereof from Lender, without in any way limiting Lender's right to exercise any of its rights, powers or remedies as provided hereunder, or under any of the other Loan Documents, Lender may, but shall have no obligation to, perform, or cause performance of, such covenant or obligation, and all costs, expenses, liabilities, penalties and fines of Lender incurred or paid in connection therewith shall be payable by Borrower to Lender upon demand and if not paid shall be added to the Debt (and to the extent permitted under applicable laws, secured by the Security Instrument and other Loan Documents). Notwithstanding the foregoing, Lender shall have no obligation to send notice to Borrower of any such failure.

*See id.* § 10.2.5.

62. Plaintiff made property advances and incurred expenses with respect to the Properties and the Loan (exclusive of attorneys' fees and disbursements) as detailed and itemized below and is entitled to default interest thereon. *See* Schedule A.

**(i)   Protective Advance- Inspection**

63. Plaintiff advanced the sum of **$1,354.06** for an inspection of the Property on September 25, 2024 (the "Inspection Advance").

    **(ii)**  **Protective Advance- Special Servicing Fees**

  64.  Plaintiff advanced the sum of **$61,122.36** for special servicing fees that were advanced by the master servicer.

**Miscellaneous Disbursements**

    **(i)**  **Corporate Analysis Fee**

  65.  Plaintiff advanced the corporate analysis fee in the amount of $**600.00** with respect to the Loan.

    **(ii)**  **Payoff Processing Fees**

  66.  Plaintiff advanced payoff processing fees in the amount of $**5,000.00** with respect to the Loan.

**Interest on Advances**

  67.  As explained above, Plaintiff has incurred a total of **$61,459.47** in accrued default interest on property protective advances (including taxes, inspections, and third-party expenses), and is entitled to reimbursement of that amount pursuant to Sections 5.19 and 10.2.5 of the Loan Agreement. *See* ECF No. 6-1, and Schedule A.

**Liquidation Fee**

  68.  The TSA provides that Special Servicer shall be entitled to a "Liquidation Fee" defined as "a fee payable to the Special Servicer with respect to the Liquidated Property or the liquidation of the Mortgage Loan or the Note whether through judicial foreclosure, sale or otherwise, or in connection with the sale. . .". *See* Ex. 1, p 38-39.

  69.  Here, the Liquidation Fee Rate equates to a fee of (.5%) of the sum of the following amounts: (i) Principal Balance: **$149,180,000.00**; (ii) Accumulated Interest: **$2,033,175.72** (iii) Special Servicer Fees: **$470,331.40**; (iv) Protective Inspection Advance: **$1,354.06**; (vi) Protective Advance (Special Servicing Fees): **$61,122.36**; and (vii) Payoff

15

Processing Fees: **$5,000.00** (as set forth on Schedule A annexed hereto). Accordingly, Plaintiff is entitled to recover the sum of **$757,760.79** from Borrower.

**Credits against Total Indebtedness**

70. There are currently the following amounts which have been credited against the total indebtedness: (i) excess cash of **$31.23**; (ii) **$1,200.600** in unapplied funds; and (iii) a reserve balance of **$8.14**. *See* Schedule A.

71. The amounts detailed herein are good through March 31, 2025. The amounts due and owing to Plaintiff will be updated and recalculated at the appropriate stage of this action to reflect the additional amounts due and owing under the Loan Documents.

72. Plaintiff has brought no other action or proceeding to recover any party of the mortgage indebtedness herein described.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April __, 2025

Kevin Gibbons
Digitally signed by Kevin Gibbons
Date: 2025.04.16 13:50:23 -05'00'

KEVIN GIBBONS

## SCHEDULE A

| DESCRIPTION | AMOUNT |
|---|---|
| Principal | $ 149,180,000.00 |
| Interest | $ 2,033,175.72 |
| Default Interest | $ 10,070,866.33 |
| Protective Advance – Inspection | $ 1,354.06 |
| Protective Advance- Special Servicing Fee Advances | $ 61,122.36 |
| Corporate Analysis Fee | $ 600.00 |
| Payoff Processing Fees | $ 5,000.00 |
| Interest on Protective Advances | $ 61,459.47 |
| Liquidation Fee | $ 757,760.79 |
| Interest Adjustment on Lockbox Reserves | $1,800.04 |
| Excess Cash | ($ 31.23) |
| Unapplied Funds | ($ 1,200,600.00) |
| Reserves Balance: Leasing Commission | ($ 1.76) |
| Reserve Balance: TILC | ($6.38) |
| **Total Amount Due as of 3/31/2025** | **$ 160,972,499.40** |