**EXHIBIT - 1**

**EXECUTION VERSION**

NATIXIS COMMERCIAL MORTGAGE SECURITIES LLC

as Depositor,

MIDLAND LOAN SERVICES, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION
as Servicer and as Special Servicer,

U.S. BANK NATIONAL ASSOCIATION,
as Custodian,

and

U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION,
as Trustee and as Certificate Administrator,

TRUST AND SERVICING AGREEMENT

Dated as of April 18, 2022

Natixis Commercial Mortgage Securities Trust 2022-JERI,
Commercial Mortgage Pass-Through Certificates, Series 2022-JERI

"Investor Q&A Forum": As defined in Section 4.5(a).

"Investor Registry": As defined in Section 4.5(b).

"IRS": The Internal Revenue Service.

"KBRA": Kroll Bond Rating Agency, LLC, and its successors-in-interest. If neither KBRA nor any successor remains in existence, "KBRA" shall be deemed to refer to such other nationally recognized statistical rating organization or other comparable Person reasonably designated by the Depositor, notice of which designation shall be given to the Servicer, the Special Servicer, the Certificate Administrator and the Trustee and specific ratings of KBRA herein referenced shall be deemed to refer to the equivalent ratings of the party so designated.

"Liquidated Property": The Property, if it has been liquidated and the Special Servicer has determined that all amounts which it expects to recover from or on account of the Property have been recovered.

"Liquidation Expenses": Reasonable and customary expenses (other than expenses covered by any insurance policy) incurred by the Servicer, the Special Servicer, the Certificate Administrator or the Trustee in connection with the liquidation of the Mortgage Loan or the Property, such expenses including, without limitation, legal fees and expenses, appraisal fees, brokerage fees and commissions, conveyance taxes and trustee and co-trustee fees, if any. Liquidation Expenses shall not include any previously incurred expenses which have been previously reimbursed to the party incurring the same or which were netted against income from the Foreclosed Property and were considered in the calculation of the amount of Foreclosure Proceeds pursuant to the definition thereof.

"Liquidation Fee": A fee payable to the Special Servicer with respect to the Liquidated Property or the liquidation of the Mortgage Loan or the Note whether through judicial foreclosure, sale or otherwise, or in connection with the sale, discounted payoff or other liquidation of the Mortgage Loan, as to which the Special Servicer receives net liquidation proceeds (including by way of discounted payoff) as to which the Special Servicer receives any Net Liquidation Proceeds, equal to the product of the Liquidation Fee Rate and Net Liquidation Proceeds related to the Liquidated Property, Mortgage Loan or Note; provided, that the Liquidation Fee for the Specially Serviced Loan or Foreclosed Property will be reduced by the amount of any Modification Fees paid by or on behalf of the Borrower in regard to any Special Servicing Loan Event and received by the Special Servicer as compensation within the 12 month period preceding payment of the Liquidation Fee, but only to the extent those Modification Fees have not previously been deducted from a Work-out Fee or Liquidation Fee; and provided, further, that the Special Servicer will not be entitled to receive a Liquidation Fee in connection with (i) a repurchase of the Mortgage Loan by the Loan Seller pursuant to the Loan Purchase Agreement (so long as such repurchase occurs within the 90 day time period required under the Loan Purchase Agreement including any applicable extended cure periods) or (ii) a sale of the Mortgage Loan to the Servicer, the Special Servicer, the Directing Holder or any of their affiliates pursuant to this Agreement if such sale occurred within 90 days after the transfer of the Mortgage Loan to the Special Servicer or (iii) a purchase of the Mortgage Loan by the Mezzanine Lender pursuant to the purchase option described in the Intercreditor Agreement (so

long as the Mortgage Loan is purchased by the Mezzanine Lender within 90 days of the date on which purchase notice was first given to such Mezzanine Lender). The Liquidation Fee will be payable from, and will be calculated by application of a rate equal to 0.50% (50.0 basis points) of such net liquidation proceeds.

"Liquidation Fee Rate": A rate equal to 0.50%.

"Liquidation Proceeds": Amounts (other than Insurance Proceeds and Condemnation Proceeds) received by the Special Servicer and/or the Certificate Administrator in connection with (a) the liquidation of the Mortgage Loan or the Property, whether through judicial foreclosure, sale or otherwise or (b) the sale, discounted payoff or other liquidation of the Mortgage Loan (other than amounts required to be paid to the Borrower pursuant to law or the terms of the Loan Agreement) including the proceeds of any full, partial or discounted payoff of the Mortgage Loan (exclusive of any portion of such payoff or proceeds that represents Default Interest or late payment charges).

"Loan Agreement": As defined in the Introductory Statement.

"Loan Documents": All documents executed or delivered by the Borrower evidencing or securing or subsequently added to the Mortgage File, in each case as each of the same may be amended, restated, replaced, supplemented or otherwise modified from time to time in accordance therewith, including without limitation the Loan Agreement. For the avoidance of doubt, the Loan Documents shall not include the Securitization Indemnification Agreements, and the rights of the Loan Seller and other parties to the Securitization Indemnification Agreements thereunder will not be part of the Trust.

"Loan Event of Default": An "Event of Default" as defined in the Loan Agreement.

"Loan Interest Accrual Period": With respect to each Loan Payment Date, the period from the 9th day of the immediately preceding calendar month through the 8th day of the calendar month in which such Loan Payment Date occurs; except that the Loan Interest Accrual Period, if any, that would otherwise commence before and end after the Maturity Date will end on the Maturity Date.

"Loan Payment Date": The "Payment Date" as defined in the Loan Agreement.

"Loan Principal Balance": As of the date of any determination, with respect to the Mortgage Loan or Foreclosed Property, the outstanding principal balance of the Mortgage Loan or, as determined in accordance with Section 3.12(g), such Foreclosed Property.

"Loan Purchase Agreement": The loan purchase and sale agreement dated as of the Closing Date, by and between the Loan Seller and the Depositor.

"Loan Seller": Natixis Real Estate Capital LLC.

"Loan Seller Interest Amount": A portion of interest due under the Loan Agreement on the Loan Payment Date in May 2022 relating to the excess of the number of days

"Special Servicer Servicing Personnel": As defined in Section 6.5.

"Special Servicer Termination Event": As defined in Section 7.1(a).

"Special Servicing Fee": With respect to any Specially Serviced Loan or Foreclosed Property, a fee payable monthly to the Special Servicer equal to an amount computed on the basis of the same principal amount, on the same interest accrual basis, and for the same interest accrual period respecting which any related interest payment on the Mortgage Loan or Foreclosed Property is (or would have been) computed, at a rate of 0.25% *per annum*. Such fee shall be in addition to, and not in lieu of, any other fee or other sum payable to the Special Servicer under this Agreement. For the avoidance of doubt, the Special Servicing Fee shall be deemed payable from the Lower-Tier REMIC.

"Special Servicing Loan Event": With respect to the Mortgage Loan, (i) the Borrower has not made two consecutive Monthly Payments (and has not cured at least one such delinquency by the next Loan Payment Date under the Loan Documents) in respect of the Mortgage Loan; (ii) the Servicer and/or the Trustee has made three consecutive Monthly Payment Advances with respect to the Mortgage Loan (regardless of whether such Monthly Payment Advances have been reimbursed); (iii) the Borrower fails to make the Balloon Payment when due, and the Borrower has not delivered to the Servicer, on or before the Loan Payment Date of the Balloon Payment, a written refinancing commitment letter of intent or term sheet, in each case from an acceptable lender or signed purchase agreement from an acceptable purchaser and reasonably satisfactory in form and substance to the Servicer that provides that such refinancing or sale will occur within 120 days after the date on which such Balloon Payment will become due (and if received, the Servicer shall promptly forward a copy of any such letter or term sheet to the Special Servicer) (provided that a Special Servicing Loan Event will occur if either (x) such refinancing or sale does not occur before the expiration of the time period for refinancing or sale specified in such documentation or (y) the Servicer is required to make a Monthly Payment Advance at any time prior to such refinancing); (iv) the Servicer has received notice that the Borrower has become the subject as debtor of any bankruptcy, insolvency or similar proceeding, admitted in writing the inability to pay its debts as they come due or made an assignment for the benefit of creditors; (v) the Servicer has received notice of a foreclosure of any lien on the Property securing the Mortgage Loan; (vi) the Borrower has expressed in writing to the Servicer an inability to pay the amounts owed under the Mortgage Loan in a timely manner, (vii) in the judgment of the Servicer (consistent with Accepted Servicing Practices), a default in the payment of principal or interest under the Mortgage Loan is reasonably foreseeable unless (a) such reasonably foreseeable default is solely related to a reasonably foreseeable default in the payment of the balloon payment on the Maturity Date, (b) the Borrower requests the extension of the Maturity Date, (c) the Servicer (with the consent of the Special Servicer), grants an extension of the Maturity Date pursuant to this Agreement and (d) such extension occurs prior to the Maturity Date; or (viii) a default under the Mortgage Loan of which the Servicer has notice (other than a failure by the Borrower to pay principal or interest) and that materially and adversely affects the interests of the Certificateholders has occurred and remains unremedied beyond the expiration of the applicable grace period specified in the Loan Documents (or, if no grace period is specified, 60 days); provided, that a Special Servicing Loan Event shall cease (a) with respect to the circumstances described in clauses (i) and (ii) above, when the Borrower has brought the Mortgage Loan current and thereafter made three

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

NATIXIS COMMERCIAL MORTGAGE SECURITIES LLC, as Depositor

By: _____
Name:
Title:
Andrew Taylor
Managing Director

By: _____
Name:
Title:
William Han
Director

MIDLAND LOAN SERVICES, A DIVISION
OF PNC BANK, NATIONAL
ASSOCIATION, as Servicer

By: _____
Name: David A. Eckels
Title: Senior Vice President

MIDLAND LOAN SERVICES, A DIVISION
OF PNC BANK, NATIONAL
ASSOCIATION, as Special Servicer

By: _____
Name: David A. Eckels
Title: Senior Vice President

U.S. BANK TRUST COMPANY,
NATIONAL ASSOCIATION, as
Certificate Administrator

By: _____

Name: Christopher J. Nuxoll
Title: Vice President

U.S. BANK TRUST COMPANY,
   NATIONAL ASSOCIATION, as
   Trustee

By: _____
   Name:  Christopher J. Nuxoll
   Title:  Vice President

U.S. BANK NATIONAL ASSOCIATION, as Custodian

By: _____

Name: Kevin E. Brown
Title: Vice President