UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF NATIXIS COMMERICAL MORTGAGE SECURITIES TRUST 2022-JERI, Commercial Mortgage Passthrough Certificates Series 2022-JERI, acting by and through Midland Loan Services, a division of PNC Bank, National Association as Special Servicer under the Trust Servicing Agreement dated as of April 18, 2022,<br><br>                              Plaintiff,<br><br>        -against-<br><br><br>JERICHO PLAZA PORTFOLIO LLC, et al.,<br><br>                              Defendants. | 24-CV-0917 (PAE) (RFT)<br><br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:**

By Amended Order of Reference dated July 18, 2025 (ECF 191), this matter was referred to me for a report and recommendation concerning the amount, if any, that should be awarded to Plaintiff U.S. Bank Trust Company, National Association, from Defendant Jericho Plaza Portfolio, LLC ("Borrower"). Having reviewed the parties' submissions, I respectfully recommend that Your Honor should issue an order stating that Borrower owes Plaintiff **$166,828,139.22**, in addition to granting other relief, as set forth below.[1]

---

[1]     Unless indicated otherwise, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

**FACTUAL BACKGROUND**[2]

Borrower is a limited liability company with title to real property at two locations in Jericho, New York (together, the "Property"). (*See* ECF 147, Am. Compl. ("AC") ¶¶ 3-4.) By 2024, Borrower had defaulted on loans made to it in 2021 by Natixis Real Estate Capital LLC (the "Original Lender"). (*See id.* ¶¶ 32, 66, 85-87.)

On December 31, 2021, the Original Lender provided Borrower with a $149,180,000.00 loan (the "Loan"), which is governed by a loan agreement (the "Loan Agreement"). (*See id.* ¶¶ 32-33; ECF 6-1, Loan Agreement.)[3] The Loan Agreement states that as collateral security, Borrower executed a mortgage, an assignment of rents and lease, and a security agreement, which granted the Original Lender an interest in the Property and all rents and leases generated by the Property. (*See* ECF 147, AC ¶ 34.) The Loan Agreement provides that the rental income from the Property shall first be applied to Borrower's monthly loan payments, insurance premiums, and real estate taxes; and that the remaining rental income shall be returned to Borrower to pay its operating expenses. (*See id.* ¶ 75.) The Loan Agreement required Borrower to pay the Original Lender the outstanding principal balance and all accrued and unpaid interest on the Loan on January 9, 2024. (*See id.* ¶¶ 59-61.) Additionally, Defendant Menachem Meisner ("Guarantor") executed a Guaranty of Recourse Obligations, which "irrevocably, absolutely, and

---

[2]    The following statement of facts are taken from the Amended Complaint ("AC") (ECF 147), which the parties relied on when formulating their request for a computation of damages (*see* ECF 174, Stip. & Order).

[3]    Plaintiff refers to two separate loans made on December 31, 2021: (1) the Loan for $149,180,000; and (2) a $20,000,000 mezzanine loan agreement. (*See* ECF 147, AC ¶¶ 32, 40.) Plaintiff does not seek relief in this case in connection with the latter loan; the mezzanine loan was assigned to a nonparty to this action. (*See id.* ¶ 40.)

unconditionally guaranteed the full, prompt and complete payment when due of [certain obligations]." (*See id.* ¶ 39; ECF 6-5, Guaranty of Recourse Obligations.)[4]

On April 18, 2022, in a Trust and Servicing Agreement (the "TSA"), the Original Lender transferred its rights, title, and interest in the Loan to Plaintiff. (*See* ECF 147, AC ¶¶ 41-43; ECF 188-1, TSA.) Under the TSA, the Loan is serviced by Midland Loan Services ("Special Servicer"). (*See* ECF 147, AC ¶ 49.) On May 14, 2022, in an Assignment of Mortgage, the Original Lender assigned its rights, title, and interest in the Property and the mortgage to Plaintiff (retroactive to April 18, 2022). (*See id.* ¶ 44; ECF 6-6, Assignment of Mortgage.) Between December 9, 2022 and December 9, 2023, Special Servicer provided to Borrower $6,343,242.12 to cover Borrower's approved operating expenses of $5,348,246.90 and to provide Borrower with cash. (*See* ECF 147, AC ¶¶ 74, 76.)

Plaintiff alleges two events of default by Borrower (each event is an "Event of Default"). On January 9, 2024, Borrower failed to pay the outstanding principal balance and all accrued and unpaid interest. (*See id.* ¶¶ 60-62.) Plaintiff notified Borrower and Guarantor of the default on January 16, 2024, but neither Borrower nor Guarantor had cured the default as of February 3, 2025, although partial payments on the Loan continued to be made. (*See id.* ¶¶ 66-68.)

A second Event of Default occurred when Borrower failed to pay its operating expenses, including over $3 million owed to vendors that provided essential services at the Property. (*See id.* ¶ 78.) For example, Borrower failed to pay its electricity provider, which warned that service would be discontinued if Borrower failed to pay $660,000 by February 6, 2024. (*See id.* ¶ 79.)

---

[4]    Because the claims against Guarantor have been severed (*see* ECF 174, Stip. & Order), I limit my analysis to Borrower's obligations under the Loan Agreement.

Plaintiff alleges that "Borrower refused to pay unless Plaintiff agreed to enter into a forbearance agreement with Borrower." (*Id.* ¶ 80.) Special Servicer obtained an extension of time to pay the amount due, which was $841,234.87 as of February 3, 2025. (*See id.* ¶ 81.) Four mechanics liens were recorded against the Property: (1) Liberty Elevator Corporation ("Liberty") filed a lien for $49,903.02 on December 21, 2023; (2) JE Grant Associates LLC d/b/a EnergyPlus Solutions ("JE") filed a lien for $78,514.13 on January 23, 2024; (3) RMAC Supplies filed a lien for $32,348.06 on June 21, 2024; and (4) South Shore Building Maintenance Corp. ("SSBM") filed a lien for $174,200,00 on September 26, 2024. (*See id.* ¶ 82 & n.3.) Additionally, two entities obtained judgments against Borrower: (1) Power-Flo Technologies Inc. d/b/a United Electric Power ("Power-Flo") obtained a judgment of $20,867.94 and (2) Price, Meese, Shulman, & D'Arminio, P.C. ("PMSD") obtained a judgment of $10,888.60. (*See id.* ¶¶ 83-84.)

## PROCEDURAL BACKGROUND

### I.     The Complaint

On February 7, 2024, Plaintiff commenced this action against Borrower, seeking to foreclose on the Property, asking the Court to appoint a receiver, and claiming breach of guaranty. (*See* ECF 1, Compl. ¶¶ 91, 105, 117.) Plaintiff also named as defendants various entities that might have claims on the Property: Guarantor, New York State Department of Taxation and Finance, Power-Flo, Liberty, and JE. (*See id*. ¶¶ 5-14.)[5] On October 11, 2024,

---

[5]     On March 26, 2024, Plaintiff served the summons and Complaint on the New York State Department of Taxation and Finance, which has not responded. (*See* ECF 74, Aff. of Serv.) On February 15, 2024, Plaintiff and counsel for Power-Flo stipulated to discontinue this action against Power-Flo with prejudice, and Your Honor so ordered this stipulation on February 23, 2024. (*See* ECF 41, Stip. of Discontinuance.) On March 28, 2024, Plaintiff served the summons

Borrower and Guarantor filed their answers with affirmative defenses to the Complaint. (*See* ECF 124, Borrower Ans.; ECF 125, Guarantor Ans.)

On February 3, 2025, Plaintiff filed the AC, which added RMAC Supplies, SSBM, and PMSD as defendants. (*See* ECF 145, Letter Mot. for Leave to File AC; ECF 147, AC.)[6] Plaintiff sought foreclosure of mortgage (Count I), security interest foreclosure (Count II), possession of the Property and associated collateral (Count III), appointment of a receiver (Count IV), and alleged breach of guaranty (Count V). (ECF 147, AC ¶¶ 89-125.) On February 18, 2025, Borrower and Guarantor filed answers with affirmative defenses to the AC. (*See* ECF 159, Borrower Ans.; ECF 160, Guarantor Ans.)

---

and Complaint on Liberty. (*See* ECF 75, Aff. of Serv.) On May 18, 2024, Liberty filed an answer to the Complaint. (*See* ECF 105, Liberty Ans.) On February 3, 2025, Plaintiff filed the AC, which names Liberty as a defendant, but Liberty has not filed an answer to the AC. (*See* ECF 147, AC.) On March 29, 2024, JE's sole member filed a pro se notice of appearance. (*See* ECF 58, Not. of Appearance; ECF 61, Declaration of Jeffrey E. Grant.) On March 29, 2024, JE moved to proceed in this action in forma pauperis. (*See* ECF 59, IFP Mot.) On March 29, 2024, JE moved for the Court to request pro bono counsel for JE. (*See* ECF 60, Mot. for Pro Bono Counsel.) On April 1, 2024, Plaintiff served the summons and Complaint on JE. (*See* ECF 73, Aff. of Serv.) On April 18, 2024, Your Honor directed the Clerk of Court to attempt to locate pro bono counsel for JE. (*See* ECF 81, Order.) On June 20, 2024, counsel for JE filed a notice of appearance. (*See* ECF 108, Not. of Appearance.) On February 3, 2025, Plaintiff filed the AC, which names JE as a defendant, but JE has not filed an answer to the AC. (*See* ECF 147, AC.)

[6]     Plaintiff served the summons and the AC on RMAC Supplies on February 10 and February 11, 2025. (*See* ECF 164, Aff. of Serv.; ECF 168, Aff. of Serv.) RMAC Supplies has not filed an answer to the AC. On February 14, 2025, Plaintiff served the summons and the AC on SSBM. (*See* ECF 165, Aff. of Serv.) On March 24, 2025, SSBM filed its non-contesting answer to the AC. (*See* ECF 178, SSBM Ans.) On February 7, 2025, Plaintiff served the summons and the AC on PMSD. (*See* Aff. of Serv.) On February 12, 2025, PMSD filed its non-contesting answer to the AC. (*See* ECF 158, PMSD Ans.)

**II.      Plaintiff's Motion To Amend Order Appointing a Receiver**

On February 7, 2024, Plaintiff moved for emergency appointment of a receiver. (*See* ECF 4, Proposed Order; ECF 5, Decl. of Stacey A. Lara in Supp. of Proposed Order; ECF 6, Decl. of Christopher G. Hamilton in Supp. of Proposed Order; ECF 7, Proposed Order; ECF 8, Pl.'s Mem.) On February 9, 2024, Defendants assented to the appointment of a receiver (*see* ECF 27) and the Court granted Plaintiff's motion on February 12, 2024 (*see* ECF 33).

On March 26, 2024, Plaintiff filed a motion to amend the Court's order appointing a receiver, to authorize the receiver to engage a broker to market the Property for sale and sell the Property. (*See* ECF 43, Mot. To Amend; ECF 44, Decl. of Ian V. Lagowitz in Supp. of Mot. To Amend; ECF 45, Pl.'s Mem.; ECF 46, Proposed Order.) On April 12, 2024, Borrower and Guarantor opposed Plaintiff's motion. (*See* ECF 77, Defs.' Opp.; ECF 78, Borrower & Guarantor Decl.) On April 18, 2024, Plaintiff filed further documents in support of its motion. (*See* ECF 82, Decl. of Christopher G. Hamilton in Supp. of Mot. To Amend; ECF 83, Reply Decl. of Ian V. Lagowitz in Supp. of Mot. To Amend; ECF 84, Pl.'s Reply Mem.) On May 1, 2024, Borrower and Guarantor jointly filed a sur-reply. (*See* ECF 99, Defs.' Sur-Reply; ECF 100, Guarantor Decl. in Supp. of Sur-Reply.) On November 6, 2024, Your Honor denied Plaintiff's motion to amend, holding that it was unnecessary for the marketing and sale of the Property to occur before determining liability. (*See* ECF 129, Order at 5.)

**III.     Defendants' Motion To Dismiss**

On April 8, 2024, Borrower and Guarantor filed pre-answer motions to dismiss Plaintiff's complaint with prejudice. (*See* ECF 67, Guarantor Mot.; ECF 68, Guarantor Mem.; ECF 69, Decl. of Blair A. Adams in Supp. of Guarantor Mot.; ECF 71, Borrower Mot.; ECF 72, Borrower Mem.)

Guarantor's motion sought to dismiss only Count V for breach of guaranty in its entirety (*see* ECF 68, Guarantor Mem. at 13-14), while Borrower's motion sought dismissal of only Count I for foreclosure of mortgage "insofar as it seeks a deficiency judgment" (ECF 72, Borrower Mem. at 3-4).

On April 29, 2024, Plaintiff filed its oppositions to Borrower's and Guarantor's motions. (*See* ECF 94, Decl. of Stacey A. Lara in Opp. to Guarantor Mot.; ECF 95, Pl.'s Opp. to Guarantor Mot.; ECF 96, Pl.'s Opp. to Borrower Mot.) Plaintiff requested that the Court deny Guarantor's motion to dismiss Count V or, in the alternative, grant Plaintiff leave to file an amended complaint. (*See* ECF 95, Pl.'s Opp. to Guarantor Mot. at 21.) Plaintiff also argued that the Complaint sufficiently alleged claims that would justify a deficiency judgment against Borrower, and thus that Borrower's motion to dismiss the deficiency judgment claim should be denied. (*See* ECF 96, Pl.'s Opp. to Borrower Mot. at 4-5.) Borrower and Guarantor filed their replies to Plaintiff's oppositions on May 13, 2024. (*See* ECF 102, Borrower Reply Mem.; ECF 103, Guarantor Reply Mem.)

On September 27, 2024, the Court granted in part and denied in part Borrower's and Guarantor's motions, denying Borrower's motion to dismiss Count I and granting Guarantor's motion to dismiss Count V in part, holding that the Complaint failed to state a claim that would permit recovery of the entire outstanding balance of the loan from Guarantor. (*See* ECF 117 at 6, Opinion & Order.) However, the Court denied Guarantor's motion to dismiss Count V to the extent that Guarantor is responsible under the Guaranty Agreement for certain of Borrower's liabilities. (*See id.* at 12.)

## IV.     Damages Inquest

On March 10, 2025, Plaintiff, Borrower, and Guarantor filed a joint letter, attaching a Stipulation and Proposed Order. (*See* ECF 172, Joint Letter; ECF 172-1, Stip. & Proposed Order.) The parties requested that the Court grant summary judgment in favor of Plaintiff on Counts I, II, and III and refer the damages calculation for these claims to a magistrate judge. (*See* ECF 172, Joint Letter at 2.) The parties also requested to sever claims against Guarantor in Count V so that those claims could be addressed through non-binding mediation. (*See id.*) Any liability on the part of Guarantor would be determined after the sale of the Property. (*See id.*) On March 11, 2025, Your Honor endorsed the parties' proposed Stipulation and Order. (*See* ECF 174, Stip. & Order.)

On April 16, 2025, Plaintiff filed a declaration in support of its damages award (ECF 184, Decl. of Kevin Gibbons in Supp. of Damages ("Gibbons Decl.")). On June 6, 2025, Borrower filed an opposition (*see* ECF 187, Borrower Opp. to Gibbons Decl.); and Plaintiff replied on June 23, 2025 (*see* ECF 190, Reply Decl. of Kevin Gibbons in Further Supp. of Damages).

On July 18, 2025, Your Honor amended my order of reference (ECF 98) to include preparing a report and recommendation detailing the amounts due to Plaintiff pursuant to the Stipulation and Order. (*See* ECF 191.) On August 27, 2025, I set a briefing schedule, directing Plaintiff to file proposed findings of fact and conclusions of law ("Proposed Findings") by no later than September 10, 2025 as to the amount owed to Plaintiff in connection with the Stipulation and Order, and directing Borrower, and Guarantor to file any responses to Plaintiff's submissions by September 24, 2025. (*See* ECF 192, Scheduling Order.)

Plaintiff duly filed its Proposed Findings (ECF 195, Proposed Findings), along with the Declarations of Steve Britt (ECF 196, First Loan Damages Decl.) and Stacey A. Lara (ECF 197, Attorneys' Fees Decl.). Plaintiff seeks to recover $167,381,491.11 as of September 22, 2025 (the date of the Proposed Findings). (*See* ECF 195, Proposed Findings ¶ 1.) This amount includes: (1) the unpaid principal balance of $149,180,000.00; (2) protective advances of $55,034.60 and interest on protective advances of $129,999.20; (3) payoff processing fees of $7,500.00; (4) interest of $2,889,056.99 and default interest of $14,696,368.72; (5) a liquidation fee of $761,307.95; and (6) a credit of $337,776.35 against Plaintiff's requested recovery. (*See* ECF 196, First Loan Damages Decl. Sch. A.) Plaintiff also seeks to recover $1,156,390.88 in attorneys' fees and costs. (*See* ECF 197, Attorneys' Fees Decl. ¶ 14.)

On October 17, 2025, Borrower submitted its opposition, requesting that the Court exclude the liquidation fee of $761,307.95 and order Plaintiff to resubmit the First Loan Damages Declaration with the business records on which Mr. Britt relied to make his calculations. (*See* ECF 200, Borrower Opp. Mem. to Proposed Findings at 6-7.)

On November 24, 2025, I directed Plaintiff to make a supplemental submission by December 5, 2025 on certain aspects of the calculation of the amount owed to Plaintiff by Borrower. (*See* ECF 201, Order.) Plaintiff made its supplemental submission, which included: a componentization notice from April 11, 2022; a breakdown of the interest on each component of the Loan ("Component"); the Loan's history; a property inspection invoice; a property inspection advance; and a payoff processing fee history. (*See* ECF 202, Second Decl. of Steve Britt ("Second Loan Damages Decl."); ECF 202-1, Componentization Notice; ECF 202-2, Interest

Breakdown; ECF 202-3, Loan History Breakdown; ECF 202-4, Inspection Invoice; ECF 202-5, Inspection Advance Breakdown; ECF 202-6, Payoff Breakdown.)

On January 20, 2026, I directed Plaintiff to make a second supplemental submission by January 23, 2026 on additional aspects of the calculation of the amount owed by Plaintiff by Borrower. (*See* ECF 203, Order.) On January 23, 2026, Plaintiff made its second supplemental submission, which included: a servicing loan history, an interest calculation schedule, a breakdown of funds disbursed to Borrower, and a breakdown of the interest on each component of the Loan. (*See* ECF 204, Supplemental Decl. of Steve Britt ("Third Loan Damages Decl."); ECF 204-1, Loan History Breakdown; ECF 204-2, Interest Calculation Schedule; ECF 204-3, Receiver Funds Spreadsheet; ECF 204-4, Interest Rate Spreadsheet.)

## DISCUSSION

### I.      Legal Standard

#### A.      Amounts Owed Under the Terms of a Defaulted Mortgage

Pursuant to Section 1321 of the New York Real Property Actions and Proceedings Law, after a court has granted summary judgment in favor of a plaintiff based on an undisputed showing of default on a mortgage, the "trial court has the authority to compute the amount owed or appoint a referee to do the same." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *3-4 (S.D.N.Y. Nov. 22, 2016) ("Although section 1321 contemplates a situation where the defendant fails to answer or the right of the plaintiff is admitted, because the Court granted summary judgment in favor of Plaintiff based on an undisputed showing of default on the mortgage, the procedural posture of the case now is as if the right of Plaintiff has been admitted."). An evidentiary hearing on the amount owed is not required, "so long as there

10

is a basis for the damages awarded"; "[d]etailed affidavits and other documentary evidence can provide this basis." *Onewest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB) (RER), 2015 WL 4429014, at *3 (E.D.N.Y. July 17, 2015); *Kairos Credit Strategies Operating P'ship, LP v. Friars Nat'l Ass'n, Inc.*, No. 23-CV-2960 (AS) (RFT), 2024 WL 3387319, at *3 (S.D.N.Y. June 10, 2024), *report and recommendation adopted*, 2024 WL 3567681 (July 29, 2024). The amount owed should be determined based on "the terms of the Notes and Mortgages." *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501 (KAM) (VVP), 2014 WL 4804872, at *1 (E.D.N.Y. Sept. 10, 2014), *report and recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014).

B.    Attorneys' Fees and Costs

In assessing an application for attorneys' fees, courts award counsel the "presumptively reasonable fee," which is calculated by multiplying the reasonable hourly rate by the number of hours that were reasonably expended to litigate the action. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).[7] Fee awards typically include those reasonable out-of-pocket costs incurred by the attorney, including for items such as "shipping, filing fees, process servers, and litigation support." *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-CV-10193 (PGG) (JLC), 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021).

---

[7]    Plaintiff does not invoke Rule 54(d)(2)(B)(i) of the Federal Rules of Civil Procedure in connection with its request for attorneys' fees, which provides that a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment." Judgment has not yet been entered. Rule 54(d)(2)(B) "generally governs the timing of a motion for attorney's fees," but it "only explicitly sets a deadline by which a motion for attorney's fees must be filed; it does not prohibit the filing of such a motion before the entry of judgment." *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 1471031, at *1 n.2 (S.D.N.Y. May 10, 2022). Accordingly, the request for attorneys' fees and costs is not premature.

II.    **Analysis**

    A.    <u>Amounts Owed to Plaintiff Under the Terms of the Defaulted Mortgage</u>

I compute the amount owed to Plaintiff by Borrower based on the documentary evidence and declarations submitted by Plaintiff as well as the Proposed Findings. Borrower has not challenged my authority to perform this computation or suggested that an evidentiary hearing is warranted.[8]

    1.    Outstanding Principal Balance

The principal amount of the Loan originally was $149,180,000.00 (the "Outstanding Principal Balance"). (*See* ECF 6-1, Loan Agreement § 2.1.2; ECF 196, First Loan Damages Decl. ¶¶ 4, 52.)[9] The Loan Agreement required Borrower to pay the Outstanding Principal Balance on January 9, 2024. (*See* ECF 6-1, Loan Agreement § 2.3.2; ECF 196, First Loan Damages Decl. ¶¶ 20-21.) Borrower's failure to pay on January 9, 2024 was an Event of Default, after which the

---

[8]    At the outset, I note that Plaintiff has been granted a judgment of foreclosure, which is an equitable remedy. *See Westnau Land Corp.* v. *U.S. Small Bus. Admin.*, 1 F.3d 112, 115 (2d Cir. 1993) (recognizing that under New York law, "a creditor is required to elect between the remedies of an action for money damages on a debt or an equitable action to foreclose a mortgage that secures the debt"). Because my computation of damages is in connection with a judgment of foreclosure, that computation does not run afoul of the Seventh Amendment right to a trial by jury. *See Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (explaining that the Seventh Amendment "preserv[es] the right to a jury trial only in suits at common law").

[9]    The Loan was subdivided into seven components: $55,314,000.00 ("Component A"), $9,429,000.00 ("Component B"), $11,197,000.00 ("Component C"), $13,554,000.00 ("Component D"), $14,143,000.00 ("Component E"), $16,500,000.00 ("Component F"), and $29,043,000.00 ("Component G"), which total to the principal amount of $149,180,000.00. (*See* ECF 202-1, Componentization Notice at 3.) Payments of interest and of the principal balance were to be applied to the components in alphabetical order. (*See id.*) In the event of default, payments are to be applied first toward accrued interest and then to the components of the Outstanding Principal Balance in alphabetical order. (*See id.*; *see* ECF 6-1, Loan Agreement § 9.4(c).)

Outstanding Principal Balance became immediately due and payable. (*See* ECF 6-1, Loan

Agreement §§ 10.1(a)(A), 10.2.1; ECF 196, First Loan Damages Decl. ¶¶ 21-24.) No payments

were ever applied to the Outstanding Principal Balance. (*See* ECF 196, First Loan Damages Decl.

¶¶ 21, 23.) Accordingly, the full Outstanding Principal Balance of **$149,180,000.00** remains

unpaid. (*See* ECF 195, Proposed Findings ¶ 2.)

>    2.    Property Protection Advances and Attorneys' Fees

Plaintiff seeks $62,534.60 in protective advances ("Property Protection Advances"),

consisting of $55,034.60 in special servicing fees and $7,500.00 in payoff processing fees, and

seeks $1,156,390.88 in attorneys' fees and costs. (*See* ECF 196, First Loan Damages Decl. ¶¶ 68-

69; ECF 202, Second Loan Damages Decl. ¶¶ 27-28; ECF 197, Attorneys' Fees Decl. ¶ 14.)

Plaintiff may recover these types of costs under the Loan Agreement, which provides that

Borrower shall pay "[a]ll amounts due and payable to Lender hereunder (including, but not

limited to, disbursements, advances and reasonable third-party out-of-pocket legal expenses

incurred in connection therewith)." (ECF 6-1, Loan Agreement § 5.19(a); ECF 196, First Loan

Damages Decl. ¶ 64.) The Loan Agreement also provides that "[i]f Borrower fails to perform any

covenant or obligation contained herein" for fifteen days after receiving notice, then Plaintiff

may "perform, or cause performance of, such covenant or obligation, and all costs, expenses,

liabilities, penalties and fines of Lender incurred or paid in connection therewith shall be

payable by Borrower to Lender upon demand." (ECF 6-1, Loan Agreement § 10.2.5; ECF 196,

First Loan Damages Decl. ¶ 65.) Courts in this Circuit have allowed plaintiffs in foreclosure

actions to recover property protection advances when the plaintiffs submit sufficient

documentation to prove the accuracy of the claimed costs. *See E. Sav. Bank, FSB v. Johnson*, No.

13-CV-6070 (AMD) (ST), 2022 WL 18858919, at *5 (E.D.N.Y. Dec. 27, 2022); *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK) (VF), 2023 WL 9603893, at *7 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024). I discuss Plaintiff's specific requests for payment and the related documentation below.

a. *Special Servicing Fees*

Plaintiff requests $55,034.60 in special servicing fees, which is the remaining unpaid portion of the total $661,986.27 in special servicing fees incurred from January 11, 2024, when Special Servicer began servicing the Loan, through the end of September 2025, when the Proposed Findings were submitted. (*See* ECF 196, First Loan Damages Decl. ¶ 68; ECF 202, Second Loan Damages Decl. ¶ 20; ECF 196-3, Special Servicing Fees History.) Plaintiff's submissions demonstrate that $661,986.27 in special servicing fees were incurred; the submissions do not provide support for the payments that reduced the unpaid special servicing fees to $55,034.60, but since the amount Plaintiff is requesting for special servicing fees is less than the amount of special servicing fees incurred, I do not see this lack of support as problematic. (*See* ECF 196-3, Special Servicing Fees History.) Special servicing fees are recoverable under the Loan Agreement, which states that the Loan may be serviced by a special

servicer and that Borrower shall pay "any advances made by Servicer and interest on such advances." (ECF 6-1, Loan Agreement § 11.3(a)(i).)

Accordingly, I respectfully recommend that Your Honor should approve Plaintiff's request for **$55,034.60** in special servicing fees.

### b. Property Inspection Costs

Under the Loan Agreement, Borrower must pay Plaintiff for all property inspections and appraisals, "other than the cost of regular annual inspections required to be borne by Servicer under the Servicing Agreement." (ECF 6-1, Loan Agreement § 11.3(a)(ii).) Plaintiff does not appear to request any amount for property inspection costs. (*See* ECF 196, First Loan Damages Decl. Sch. A; ECF 202-5, Invoice.)

### c. Liquidation Fee

Plaintiff requests a liquidation fee of $761,307.95 (the "Liquidation Fee"), which is defined as "a fee payable to the Special Servicer with respect to the Liquidated Property or the liquidation of the Mortgage Loan or the Note whether through judicial foreclosure, sale or otherwise, or in connection with the sale, discounted payoff or other liquidation of the Mortgage Loan." (ECF 195, Proposed Findings ¶ 12; ECF 188-1, TSA at 38.) The TSA notes that any liquidation fee "shall be payable from, and shall be calculated using, the related Net Liquidation Proceeds" (ECF 188-1, TSA § 3.17), referring to the proceeds from a foreclosure sale. Net Liquidation Proceeds are comprised of "[t]he excess of Liquidation Proceeds received with respect to the Property or the Mortgage Loan, as the case may be, over the amount of Liquidation Expenses incurred with respect thereto." (ECF 188-1, TSA at 44.) The TSA defines liquidation fee as "equal to the product of the Liquidation Fee Rate and Net Liquidation

Proceeds related to the Liquidated Property, Mortgage Loan or Note;" and the liquidation fee rate is 0.50%. (*Id.* at 38-39.)

Section 10.2 of the Loan Agreement sets out Plaintiff's rights and remedies upon a default by Borrower. (*See* ECF 6-1, Loan Agreement § 10.2.) Plaintiff may declare the Loan to be immediately due, partially or fully foreclose on the Property, and apply any amounts recovered from the Property toward the outstanding Loan payments. (*See id.* §§ 10.2.1, 10.2.3.) Borrower must pay the special servicer "any liquidation fees in connection with the exercise of any or all remedies permitted under this Agreement." (*Id.* § 11.3(a)(i).)

Borrower disputes this fee, arguing that because a foreclosure sale has not yet occurred, the Liquidation Fee cannot yet be determined. (*See* ECF 200, Borrower Opp. Mem. to Proposed Findings at 5-6.) Case law from this District supports Borrower's position. *See Wilmington Tr., Nat'l Ass'n as Tr. for the Benefit of the Registered Holders of Wells Fargo Com. Mortg. Tr. 2018-C44, Com. Mortg. Pass-Through Certificates, Series 20 v. 31 Prince St., LLC*, No. 22-CV-5855 (JGK) (BCM), 2025 WL 1160641, at *11-12 (S.D.N.Y. Mar. 25, 2025) (recommending that the liquidation fee be calculated by the plaintiff after the foreclosure sale and that the Court then direct the defendant to pay the fee), *report and recommendation adopted*, 2025 WL 1148459 (S.D.N.Y. Apr. 18, 2025); *Wells Fargo Bank as Tr. for the Benefit of the Holders of COMM 2015-LC19 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 5615 N. LLC*, No. 20-CV-2048 (VSB) (KHP), 2023 WL 7394340, at *10 (S.D.N.Y. May 4, 2023) ("*5615 N.*") (explaining that "until there is a liquidation . . . no Liquidation Fee can be incurred" and recommending that "the judgment of foreclosure include a liquidation fee in an amount to be determined following the foreclosure sale"), *report and recommendation adopted*, 2023 WL 7384632 (S.D.N.Y. Nov. 8,

2023). Accordingly, I respectfully recommend that Your Honor should award the Liquidation Fee in an amount to be determined following a foreclosure sale of the Property.

### d. Payoff Processing Fees

Section 5.19 of the Loan Agreement provides that Borrower shall pay "all amounts due and payable to Lender hereunder (including, but not limited to, disbursements, advances and reasonable third-party out-of-pocket legal expenses incurred in connection therewith) . . . and interest thereon shall accrue at the Default Rate from the date incurred." (ECF 6-1, Loan Agreement § 5.19(a); ECF 196, First Loan Damages Decl. ¶ 64.) The Loan Agreement also provides that "[i]f Borrower fails to perform any covenant or obligation contained herein" for fifteen days after receiving notice, then Plaintiff may "perform, or cause performance of, such covenant or obligation, and all costs, expenses, liabilities, penalties and fines of Lender incurred or paid in connection therewith shall be payable by Borrower to Lender upon demand." (ECF 6-1, Loan Agreement §10.2.5; ECF 196, First Loan Damages Decl. ¶ 65.)

Plaintiff requests $7,500.00 in payoff processing fees. The Loan Agreement requires Borrower to pay such costs. (*See* ECF 6-1, Loan Agreement §§ 5.19(a); ECF 196, First Loan Damages Decl. ¶ 64.) Plaintiff provides an invoice for the payoff processing fees as an exhibit to its supplemental declaration (ECF 202-6) and describes the invoice as "three payoff quotes each incurring a charge of 2,500." (ECF 202, Second Loan Damages Decl. ¶ 28 n.4.) Accordingly, I respectfully recommend that Your Honor should approve Plaintiff's request for **$7,500.00** in payoff processing fees.

e. *Legal Fees and Costs*

Plaintiff seeks $1,156,390.88 for legal fees and costs incurred from January 2024 through September 2025 for over 2100 hours of work, supported by an attorney declaration attesting to the hours and the fees charged and paid and attaching the attorney billing records and biographies. (*See* ECF 197, Attorneys' Fees Decl. ¶¶ 11-14; ECF 197-1, Billing Records; ECF 197-2, Billing Records; ECF 197-3, Counsel Biographies.) The Loan Agreement provides that Plaintiff is entitled to reasonable attorneys' fees and costs for enforcing its rights (*see* ECF 6-1, Loan Agreement § 5.19(a)), which supports an award of reasonable attorneys' fees and disbursements to Plaintiff. *See Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 95 (2d Cir. 2013) (holding that a professional fee provision in a loan contract applied and entitled the counterclaim-plaintiff to recover professional fees).

Borrower does not dispute any portion of the requested attorneys' fees. Nevertheless, even when no party disputes any portion of the requested attorneys' fees, a court has the discretion to conduct an independent analysis to determine if the requested fees are reasonable. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,* 342 F.R.D. 84, 87-88 (S.D.N.Y. 2022) (explaining, in connection with a sanctions motion, that requested fees must be based on a reasonable hourly rate and reasonable number of hours and that "[a]lthough Defendants do not challenge the hourly rates billed by Plaintiffs, the Court has nonetheless independently reviewed Plaintiffs' submissions to determine whether their rates are reasonable"); *Vaigasi v. Solow Mgmt. Corp.,* No. 11-CV-5088 (RMB) (HBP), 2017 WL 3868990, at *2 n.1 (S.D.N.Y. Sept. 5, 2017) (conducting an independent analysis of the defendants' time records even though the plaintiff had failed to file a timely opposition to the defendants' fee application); *Elsevier Inc. v.*

18

*Grossmann*, No. 12-CV-5121 (KPF), 2019 WL 3852484, at \*3 (S.D.N.Y. Aug. 16, 2019) (explaining that, where the defendants did not offer specific objections to attorneys' fees sought by the plaintiffs in a civil RICO action, the Court "ha[d] an independent interest in ensuring that it allows recovery only of reasonable fees and expenses"); *Vigo v. 501 Second St. Holding Corp.*, 994 N.Y.S.2d 354, 356 (2d Dep't 2014) (stating in connection with a mortgage foreclosure action that attorneys' fees "may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered"). *But cf. McCormick 110, LLC v. Gordon,* 159 N.Y.S.3d 83, 86-87 (2d Dep't 2021) (on appeal of order and judgment of foreclosure and sale, holding that the lower court erred in denying the plaintiff's fee request, because the request was unopposed and the fees sought were reasonable and supported by evidence).

Accordingly, I have analyzed the fees requested, and, for the reasons set out below, I conclude that Plaintiff is entitled to **$581,388.05** in reasonable legal fees and costs in connection with this action, consisting of **$550,098.90** in fees and **$31,289.15** in costs.

i.    Plaintiff's Fee Request

Plaintiff seeks reimbursement for the fees of two partners, two associates, two paralegals, a staff attorney, a managing clerk, and a "Document Review and E-Discovery Team" made up of seven attorneys, one senior manager, and one senior team lead; these individuals performed a total of 2,125.3 hours of work between January 12, 2024 and July 30, 2025.[10] The

---

[10]    Although additional attorneys and paralegals worked on this matter, which Plaintiff highlights in the invoices, Plaintiff is not seeking reimbursement for their legal fees because they were not "principally involved." (*See* ECF 197, Attorneys' Fees Decl. ¶ 9 n.2.) One time entry by partner Stacey Lara is highlighted, but because Lara is the partner who spent the most time on this case is highlighted, I therefore understand Lara to have been "principally involved"

partners' hourly billing rates ranged from $605 to $765 during that time, and together they spent 860.3 hours on this matter. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.)[11] The partner who spent the most time on this case (over 846 hours) had an hourly billing rate of $605, which increased to $705 during that period. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) The two associates' hourly billing rates ranged from $415 to $495 during that time, and together they spent 530.6 hours on this matter. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) The associate who spent the most time on this case (500.2 hours) had an hourly billing rate of $415. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.)

The paralegal who spent the most time on this case (49.4 hours) had an hourly billing rate of $225, which increased to $315 during the relevant period, while the second paralegal had an hourly billing rate of $215; the two paralegals spent 61 hours on this matter. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) The staff attorney had an hourly billing rate of $425, which increased to $585, and the managing clerk had an hourly billing rate of $200. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) The Document Review and E-Discovery Team spent a total of 107.3 hours on this matter; hourly rates for the E-discovery attorneys ranged from $105 to $370, hourly rates for the senior manager started at $400,

---

and the 3.5 hours billed in that highlighted entry are included in the total number of hours. (ECF 197-1, Billing Records at 16.)

[11]     The invoices cover legal fees from January 12, 2024 to July 30, 2025. Plaintiff also seeks to recover $56,078.13 of legal fees incurred between August 18, 2025 and September 22, 2025. (*See* ECF 197, Attorneys' Fees Decl. ¶¶ 10-11.) Because Plaintiff does not provide any invoices supporting the fees for the later period, I do not recommend awarding any fees for that period, and my analysis is limited to the fees documented with invoices covering the earlier period.

increased to $450, and then decreased to $440, and the hourly rate for the senior team lead was $175. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.)

ii.    Hourly Rates

In considering the reasonableness of the hourly rate, a court's analysis is guided by the prevailing market rate for similar services. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Courts also consider factors including the attorneys' experience, reputation, and ability; the time, labor, and skill required; the novelty and complexity of the legal issues posed; awards in similar cases; and degree of success. *See Agudath Isr. of Am., v. Hochul*, No. 22-38, 2023 WL 2637344, at *2 n.2 (2d Cir. Mar. 27, 2023).

Having reviewed Plaintiff's declaration in support of the claimed attorneys' fees (ECF 197), I conclude that the hourly rates for the partners and associates who worked on the matter were generally reasonable, based on the rates for similar services, *see Blum*, 465 U.S. at 895 n.11, as well as the attorneys' experience and their degree of success, *see Agudath Isr.*, 2023 WL 2637344, at *2 n.2. The hourly rates, which range from $605 to $765 for partners and from $415 to $495 for associates, are comparable to rates approved in similar commercial matters. *See, e.g., UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021) (approving partners' hourly rates of up to $1,030 in complex bankruptcy and commercial litigation); *Tabatznik v. Turner*, No. 14-CV-8135 (JFK), 2016 WL 1267792, at *11-12 (S.D.N.Y. Mar. 30, 2016) (applying a per hour partner rate of $650 and associate rate of $425 in a complex action to enforce promissory note). Although Plaintiff's counsel provided biographies of the partners and associates, the biographies do not indicate how many years of experience each person has in handling foreclosure actions. (*See* ECF 197-3,

21

Counsel Biographies.) However, because their rates have been found reasonable in similar cases within this District, I conclude that their rates are reasonable here as well. *See Wilmington Tr., Nat'l Ass'n.*, 2023 WL 9603893, at *9 (finding attorney Brandofino's hourly rate reasonable due to his experience and the complexity of the action); *RSS WFCM2018-C44-NY LOD, LLC v. 1442 Lexington Operating DE, LLC,* No. 21-CV-4424 (DLC) (VF), 2024 WL 4486058, at *5-7 (S.D.N.Y Aug. 19, 2024) (approving rates in connection with a judgment of foreclosure and sale for partners, associates, and senior counsel at the same firm representing Plaintiff here).

Similarly, the hourly rates for the E-discovery review attorneys (ranging from $105 to $370) are within the appropriate range of hourly rates for document review lawyers. *See In re Citigroup Inc. Sec. Litig.,* 965 F. Supp. 2d 369, 398-99 (S.D.N.Y. 2013) (awarding $200 per hour to staff attorneys considering "the largely document-review work they performed, and the wide range of rates accepted in the market"); *In re Navidea Biopharms. Litig.,* No. 19-CV-1578 (VEC) (DF), 2021 WL 2323380, at *10-11 (S.D.N.Y. Apr. 21, 2021) (finding an attorney's voluntary reduction to $300 per hour reasonable for time he spent on document review), *report and recommendation adopted*, 2021 WL 2156276 (S.D.N.Y. May 27, 2021).

However, the hourly rates for paralegals (ranging from $215 to $315) are outside the range of hourly rates for paralegals that are typically approved in this District when the fee applicant has not documented any special qualifications of the paralegals (between $150 and $200). *See, e.g., 1979 Fam. Tr. Licensor, LLC v. Darji*, No. 19-CV-4389 (VEC), 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) (reducing the paralegals' hourly rates from $315 and $330 to $175 where no paralegal qualifications were provided); *Vaigasi,* 2017 WL 3868990, at *5 (reducing the paralegals' and filing clerk's hourly rates to $125 because their qualifications were

not provided); *Tabatznik,* 2016 WL 1267792, at *12 (reducing the paralegal's hourly rate to $200 in a complex action to enforce a promissory note); *5615 N.,* 2023 WL 7394340, at *8 (reducing the paralegals' hourly rates to $150 in a foreclosure and sale action); *RSS WFCM2018-C44-NY LOD,* 2024 WL 4486058, at *7 (same).[12] Plaintiff has not provided biographies for the paralegals, staff attorney, managing clerk, and E-discovery senior manager involved in this matter, and so there is no indication that those timekeepers had special qualifications. (*See* ECF 197, Attorneys' Fees Decl. at 6; ECF 197-3, Counsel Biographies.) Accordingly, I respectfully recommend that hourly rates of more than $200 for paralegals and similar timekeepers be reduced to $200.

### iii.   Number of Hours Expended

"If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Bentley Lab'ys LLC v. TPR Holdings LLC,* No. 14-CV-6306 (HBP), 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017); *see also N.Y. Youth Club v. Town of Harrison*, No. 12-CV-7534 (CS), 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (explaining that courts may use their discretion "to trim the fat from a fee application"). Courts may order reductions for, among other infirmities in the

---

[12]    I analogize other non-attorney professionals, such as the managing clerk, review center senior team lead, and E-discovery senior manager, to paralegals. *See Wilmington Tr.,* 2023 WL 9603893, at *9 (explaining that "[c]ourts have generally analogized such litigation support personnel to paralegals and awarded comparable hourly rates" and reducing the requested hourly rate for administrative support personnel to $200); *Abraham v. Leigh,* No. 17-CV-5429 (KPF), 2020 WL 5512718 (S.D.N.Y. Sept. 14, 2020) (awarding hourly rate of $250 to e-discovery experts, upon considering "the criticality of the e-discovery experts' work" and "the conservative billing of their hours").

billing records, "block billing," which is "the practice of aggregating multiple tasks into one billing entry." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311 (JPO) (KNF), 2016 WL 5812105, at *8 (S.D.N.Y. Sept. 22, 2016). Courts generally "order[ ] such reductions . . . only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." *Raja v. Burns,* 43 F.4th 80, 88-89 (2d Cir. 2022). Block billing is "most problematic where large amounts of time (e.g., five hours or more) are block billed"; and where the lack of specificity "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent," such as where "the billing records are so voluminous that it would be difficult for the court to parse the block-billed entries individually to determine to what extent the time was reasonably billed" and where the record contains indicia of "fat to trim within the block-billed entries." *Id.* at 89-90.

Having reviewed the nearly 300 pages of Billing Records (ECF 197-1, ECF 197-2), I conclude that it was unreasonable for counsel to have billed over two thousand hours on this matter in connection with bringing suit, seeking appointment of a receiver, opposing a motion to dismiss, and seeking damages through this inquest. In similar cases in this District, including two cases cited in Plaintiff's declaration (*see* ECF 197-4, *5615 Northern* Report & Recommendation; ECF 197-5, *Wilmington Trust* Report & Recommendation.), the Court found that between 300 and 800 hours of billed time was reasonable for work comparable to the work performed by Plaintiff's counsel here. *See RSS WFCM2018-C44-NY LOD*, 2024 WL 4486058, at *6-7 (approving 512.1 hours billed in an action for judgment of foreclosure and sale for work on pleadings, appointment of receiver, and motion for summary judgment); *5615 N.*,

24

2023 WL 7394340, at *8 (approving 342.3 hours billed in an action for judgment of foreclosure and sale for work on pleadings, appointment of a receiver, responding to the defendant's motion to dismiss, briefing a motion for summary judgment, and attempting settlement); *Wilmington Tr., Nat'l Ass'n.*, 2023 WL 9603893, at *10 (approving 761 hours billed in a judgment of foreclosure and sale action for the plaintiff's counsel's work seeking the appointment of a receiver, opposing the defendant's motion to dismiss, and briefing a summary judgment motion);[13] *cf. UMB Bank, Nat'l Ass'n*, 2021 WL 3292519, at *7 (finding that that it was reasonable for counsel to have spent 539.7 hours on a summary judgment motion for a bankruptcy and commercial action involving defaulted payments on a promissory note); *Knight MPIC Ventures, LLC v. Higginson*, No. 18-CV-8126 (LGS) (KNF), 2020 WL 4676817, at *3 (S.D.N.Y. Aug. 12, 2020) (finding 569.2 hours reasonable for work on a motion for summary judgment in a breach of guarantee action resulting from the borrowers' default).

Beyond the number of hours billed, Plaintiff's fee request is problematic because the Billing Records are flawed: most of the time entries are both vague and block-billed for long periods. (*See generally* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) Examples of vague entries include the over 70 entries reflecting "attention to" or "attend to" a project such

---

[13] The total number of hours billed by the plaintiff's counsel in *Wilmington Trust* does not appear in the report and recommendation. In that case, the Court recommended awarding the plaintiff's counsel's requested attorneys' fees as outlined in the plaintiff's attorney declaration, with changes only made to certain timekeepers' hourly rates. *Wilmington Tr.*, 2023 WL 9603893, at *10 ("As to the number of hours expended, having reviewed the records I find that the time spent was reasonable."). The attorney declaration from that docket reflects that plaintiff's counsel had billed 761 hours before the Court's attorneys' fees calculation. *See Wilmington Tr.*, No. 20-CV-5309 (JGK) (VF) (S.D.N.Y.), ECF 148, Decl. of Keith Brandofino In Supp. of Pl.'s Mot. for a Final Judgment of Foreclosure ¶ 8.

as discovery or a brief. (*See, e.g.,* ECF 197-1, Billing Records at 52 (6.3 hours for "[a]ttention to reply papers for receiver motion; calls and emails regarding same"); *id.* at 117 (3.2 hours for a weekly call and "attention to discovery and document review").) Courts in this Circuit have reduced the hours awarded because of similarly vague billing entries. *See, e.g., Chrysafis v. Marks,* No. 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *8-9 (E.D.N.Y. Sept. 21, 2023) (reducing the number of hours billed for the plaintiffs' requested attorneys' fees by 40%, for three months of litigation, in part due to vague entries such as "[w]ork on," "[e]mails regarding," and "[p]rep for" a task without further specification of the nature of the work).

Examples of block-billed entries include an entry for 8.3 hours for "Review loan agreement," "Review Motion to Dismiss," and "review case law cited therein" (ECF 197-1, Billing Records at 42); an entry for 5.3 hours for "Continue drafting memorandum of law in opposition," "analysis of pertinent loan agreement provisions," and "communications regarding the [REDACTED]" (*id.* at 45-46); an entry for 6.2 hours for "Emails with Receiver and Onxy" and "discuss with Christopher Hamilton, Asset Manager at [Special Servicer]" (*id.* at 43); and an entry for 4.2 hours for reviewing a memo and emailing with Borrower's counsel (*see id.* at 45). Courts in this Circuit have reduced the hours awarded because of similar block-billed entries. *See Meyer Corp. v. Alfay Designs, Inc.*, No. 10-CV-3647 (CBA) (MDG), 2016 WL 792398, at *9 (E.D.N.Y. Feb. 26, 2016) (reducing the hours billed by the plaintiff's counsel to prepare a sanctions motion by 50% in part because of block billing); *Erickson Prods., Inc. v. Only Websites, Inc.*, No. 12-CV-1693 (PGG) (KNF), 2016 WL 1337277, at *4 (S.D.N.Y. Mar. 31, 2016) (reducing the hours billed by the plaintiff's counsel by 40% in part because of block billing); *Anderson v.*

*County of Suffolk*, No. 09-CV-1913 (GRB), 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (reducing the hours billed by the plaintiff's counsel by 33% in part because of block billing).

The voluminous nature of the Billing Records makes it impractical to address deficiencies on an entry-by-entry basis. Accordingly, I respectfully recommend the following reductions to trim the fat from Plaintiff's request for attorneys' fees: (1) eliminating time billed by timekeepers who spent fewer than ten hours on this matter, to reflect that timekeepers who do not have significant involvement in a matter often are less efficient than timekeepers who are familiar with the case; and (2) reducing the recoverable time for all remaining timekeepers to 60% of the time billed, which brings the hours billed in this case more in line with (although still significantly higher than) the hours billed in comparable cases in this Circuit. *See 5316 Church Avenue, LLC v. Yhun*, No. 14-CV-7376 (FB) (RER), 2018 WL 6204615, at *3 (E.D.N.Y. July 18, 2019) (finding 500 hours billed on a foreclosure and sale action to be excessive and reducing the number of hours billed for the plaintiff's requested attorneys' fees by 25%), *report and recommendation adopted as modified*, 2018 WL 6201709 (E.D.N.Y. Nov. 28, 2018).

iv.   Reasonable Attorneys' Fees

Based on the foregoing analysis, I respectfully recommend that Your Honor should award attorneys' fees in the amount of **$550,098.90**, as calculated in the table below:

27

| Timekeeper | Position | Requested Rates ($) | Reasonable Rate ($) | Hours Billed | Reasonable Hours (60% of Billed Hours) | Reasonable Fee ($) (Reasonable Fee x Reasonable Hours) |
|---|---|---|---|---|---|---|
| Lara, Stacey | Partner | 605 | 605 | 466.4 | 279.84 | 169,303.20 |
| | | 695 | 695 | 321.0 | 192.6 | 133,857.00 |
| | | 705 | 705 | 59.2 | 35.52 | 25,041.60 |
| Brandofino, Keith M. | Partner | 695 | 695 | 12.8 | 7.68 | 5,337.60 |
| | | 765 | 765 | 0.9 | 0.54 | 413.10 |
| King, Brandon | Associate | 495 | 495 | 30.4 | 18.24 | 9,028.80 |
| Estis, Dani | Associate | 415 | 415 | 486.0 | 291.6 | 100,845.00 |
| | | 470 | 470 | 14.2 | 8.52 | 4,004.40 |
| Bergman, Olivia | Paralegal | 215 | 200 | 11.6 | 6.96 | 1,392.00 |
| Ovalle, Kathy | Paralegal | 225 | 200 | 47.4 | 28.44 | 5,688.00 |
| | | 315 | 200 | 2.0 | 1.2 | 240.00 |
| Pedersen, Maryanne | Staff Attorney | 425 | 200 | 556.3 | 333.78 | 66,756.00 |
| | | 585 | 200 | 4.3 | 2.58 | 516.00 |
| Wendler, Eric | E-Discovery Review Attorney | 115 | 115 | 42.7 | 25.62 | 2,946.30 |
| Karrat, James | E-Discovery Review Attorney | 105 | 105 | 30.3 | 18.18 | 1,908.90 |
| Healey, Daniel | E-Discovery Senior Manager | 400 | 200 | 5.5 | 3.3 | 660.00 |
| | | 440 | 200 | 9.9 | 5.94 | 1,188.00 |
| | | 450 | 200 | 6.7 | 4.02 | 804.00 |
| **TOTAL** | | | | **2,107.6** | **1,264.6** | **550,098.90** |

v.  Reasonable Costs

Plaintiff also requests $31,289.15 in legal costs, including: $9,100.00 for an appraisal report for the Property; $1,360.95 for a foreclosure search; $4,394.63 for process servers; $6,221.36 for transcripts; $2,622.94 for travel to Texas for a deposition; $6,356.50 for "e-Data Management Services," "Document Review and Fact Finding," and research-related expenses; and $1,232.77 for miscellaneous fees such as transportation, filing fees, and postage. (*See* ECF

197-1, Billing Records; ECF 197-2, Billing Records.) These are the types of costs that generally may be recovered. *See HSBC Bank USA*, 2021 WL 667661, at *8 (approving reimbursement for "federal court document charges, filing/recording fees, express mail charges, and ground transportation"); *RSS WFCM2018-C44-NY LOD,* 2024 WL 4486058, at *7 (awarding costs of "filing fees, postage, Westlaw research, and billable work to vendors, like process servers, title searches, and limited transportation"). Plaintiff's counsel has documented its costs. (*See* ECF 197-1, Billing Records; ECF 197-2, Billing Records.) This record is sufficient to support the request for reimbursement. *See RSS WFCM2018-C44-NY LOD,* 2024 WL 4486058, at *7 (finding that the plaintiff's counsel's contemporaneous billing records and supporting sworn declaration were sufficient to support the request for reimbursement). I therefore respectfully recommend that Plaintiff be awarded **$31,289.15** in legal costs.

      3.      Accumulated Interest

For the period covering January 9, 2024 through October 1, 2025, which is 631 days, Plaintiff requests: $2,889,056.99 in unpaid interest on the Loan (*see* ECF 196, First Loan Damages Decl. Sch. A; ECF 202, Second Loan Damages Decl. ¶ 12); $14,696,368.72 in unpaid default interest on the Loan (*see* ECF 196, First Loan Damages Decl. Sch. A; ECF 202, Second Loan Damages Decl. ¶ 16); and $129,999.20 in accrued interest on the Property Protection Advances (*see* ECF 196, First Loan Damages Decl. Sch. A; ECF 202, Second Loan Damages Decl. ¶ 29). Borrower does not contest any of these requests. However, the Court has the authority to perform its own calculations to determine the reasonableness of the requests. *See Kairos Credit Strategies Operating P'ship, LP*, 2024 WL 3387319, at *3 ("Pursuant to Section 1321 of the New York Real Property Actions and Proceedings Law, after a court has granted summary

judgment in favor of a plaintiff based on an undisputed showing of default on a mortgage, the trial court has the authority to compute the amount owed . . . ."); *Fed. Nat'l Mortg. Ass'n v. 2120 Tiebout LLC*, No. 23-CV-9445 (DEH), 2025 WL 1503957, at *7 (S.D.N.Y. May 27, 2025) (same); *Dingman*, 2016 WL 6902480, at *3-4 ("Although section 1321 contemplates a situation where the defendant fails to answer or the right of the plaintiff is admitted, because the Court granted summary judgment in favor of Plaintiff based on an undisputed showing of default on the mortgage, the procedural posture of the case now is as if the right of Plaintiff has been admitted.").

Plaintiff initially supported the amount of unpaid interest with a payoff quotation for the Loan (ECF 196-2). The quotation states: "This quote is based on interest paid to 07/09/2025, and includes interest to 10/01/2025." (*Id.* at 2.) The quotation indicates that the daily amount of unpaid interest on the Loan was $33,774.60 and the daily default interest amount was $26,717.90. (*Id.* at 3.) However, the quotation did not provide sufficient information to check the accuracy of the calculations on which the quotation was based. Moreover, Plaintiff's declarant stated that the interest amounts requested were based on the daily interest amounts over the 631-day period of default (as of October 1, 2025) (*see* ECF 196, First Loan Damages Decl. ¶¶ 55, 59), but multiplying the daily interest amounts by 631 days leads to amounts higher than the requested interest amounts.

In response to my order to supplement (ECF 201), Plaintiff provided a breakdown of the interest rates and outstanding balances for each Component of the Loan over the period from January 9, 2024 through October 1, 2025. (*See* ECF 202-2, Interest Breakdown.) In response to my second order to supplement, Plaintiff provided an interest calculation schedule that lists the

30

monthly Interest Rates, accrued interest, and payments made toward the accrued interest from January 9, 2024 to October 1, 2025. (*See* ECF 204-2, Interest Calculation Schedule.)

For the reasons set forth below, I respectfully recommend that Your Honor should award Plaintiff its requested unpaid interest and requested accrued interest on the Property Protection Advances, and award Plaintiff unpaid default interest on the Loan as discussed below.

### a. Unpaid Interest

The Loan Agreement provides that the Outstanding Principal Balance shall bear interest at an interest rate (the "Interest Rate") calculated as "the Spread plus the applicable SOFR Index for such Interest Period." (ECF 6-1, Loan Agreement at 12.)[14] The Componentization Notice assigns a different Spread to each Component. (*See* ECF 202, Second Loan Damages Decl. ¶ 9; ECF 202-1, Componentization Notice at 2-3.) The Loan Agreement states:

> Interest on the Outstanding Principal Balance shall be calculated by multiplying (A) the actual number of days elapsed in the period for which the calculation is being made by (B) a daily rate based on a three hundred sixty (360) day year (that is, the Interest Rate expressed as an annual rate divided by 360) by (C) the Outstanding Principal Balance. The accrual period for calculating interest due on each Payment Date shall be the Interest Period immediately prior to such Payment Date.

(ECF 6-1, Loan Agreement § 2.2.4.)

---

[14]    The SOFR is the "secured overnight financing rate published by the SOFR Administrator on the SOFR Administrator's Website." (ECF 6-1, Loan Agreement at 24.) The SOFR Administrator and SOFR Administrator's Website are respectively the Federal Reserve Bank of New York and its website. (*Id.*) The "SOFR Average" is defined as "the rate of interest equal to the compounded average of SOFR over a rolling 30-calendar day period as such rate is currently published on the SOFR Administrator's Website as 30-Day Average SOFR." (*Id.* at 25.)

Plaintiff's interest calculation schedule provides the information needed to verify Plaintiff's request for unpaid interest for each Loan Component. The schedule lists the Interest Rates that apply for each month during the relevant period of January 9, 2024 to October 1, 2025. (*See* ECF 204-2, Interest Calculation Schedule.) Applying the Loan Agreement's formula, I can substantially confirm the total amount of interest accrued during the relevant period as calculated by Plaintiff. (*See* ECF 6-1, Loan Agreement § 2.2.4; ECF 204, Third Loan Damages Decl. ¶ 8; ECF 204-2, Interest Calculation Schedule.) The total payments made toward the accrued interest during the relevant period were $20,079,068.47, and subtracting the total payments from my calculation of total accrued interest yields a result that is within $120.00 of Plaintiff's request for unpaid interest. (*See* ECF 204-2, Interest Calculation Schedule.)

Being able to substantially replicate Plaintiff's calculation, I respectfully recommend that Plaintiff be awarded **$2,889,056.99** in unpaid interest.

### b.  Unpaid Default Interest

In an Event of Default, the Outstanding Principal Balance and other aspects of the Loan will accrue interest at the default rate, which is calculated from the date the default occurred. (*See* ECF 6-1, Loan Agreement § 2.2.3.) The default rate is "the lesser of (i) the Maximum Legal Rate, or (ii) five percentage points (5%) above the Interest Rate" (the "Default Rate"). (*Id.*) The Maximum Legal Rate is 16%. *See* N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1); *5615 N.*, 2023 WL 7394340, at *4. Plaintiff's interest calculation schedule provides the principal balance to which the Default Rates were applied and indicates that there was $14,696,368.72 in unpaid default interest. (*See* ECF 196, First Loan Damages Decl. ¶¶ 56-59; ECF 204, Third Loan Damages Decl. ¶¶ 8-10.)

However, Plaintiff appears to have applied Default Rates that were five percentage points above the monthly Interest Rates, even though some of those rates during the relevant period exceeded the maximum legal limit of 16% (*see* ECF 204-2, Interest Calculation Schedule at 30, 35-36.); the Default Rates for those months should be reduced to 16%. Adjusting interest rates that exceeded 16%, I calculate $37,291,062.22 in accrued default interest. Following Plaintiff's formula and subtracting the total amount of accrued interest ($22,968,125.49) results in $14,322,936.73 in unpaid default interest. (*See* ECF 204, Third Loan Damages Decl. ¶¶ 8-10; ECF 204-2, Interest Calculation Schedule.) I therefore respectfully recommend that Plaintiff be awarded **$14,322,936.73** in unpaid default interest.

### c.  Accrued Interest on Property Protection Advances

Plaintiff requests $129,999.20 in accrued interest on Property Protection Advances from January 2024 through October 1, 2025. (*See* ECF 202, Second Loan Damages Decl. ¶ 29.) The Loan Agreement permits Plaintiff to be reimbursed for interest on Property Protection Advances at the Default Rate. (*See* ECF 6-1, Loan Agreement § 5.19(a); ECF 196, First Loan Damages Decl. ¶ 64.) Plaintiff has provided documentation showing its calculation of the accrued interest. (*See* ECF 196-4, Advance Interest Calculator) I was able to replicate Plaintiff's calculation by adding the "Total AI Accrued through 9/30/2025" line items. Therefore, I respectfully recommend that Your Honor should grant Plaintiff's request for **$129,999.20** in accrued interest on Property Protection Advances.

### B.      Post-Judgment Interest

Post-judgment interest is mandatory in federal civil actions: "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-

year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, post-judgment interest should be granted to Plaintiff and calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); *Builders Bank v. N. Funding, LLC*, No. 08-CV-3575 (MDG), 2012 WL 4928854, at *1 (E.D.N.Y. Oct. 16, 2012) (awarding post-judgment interest at the federal statutory rate in an action for a judgment of foreclosure and sale).

## CONCLUSION

For the foregoing reasons, I respectfully recommend:

(1) That a final judgment of foreclosure to be entered in favor of Plaintiff directing payment to Plaintiff in the amount of **$166,828,139.22,** plus post-judgment interest in accordance with point (2), below. The **$166,828,139.22** is the sum of the following amounts, less the unapplied funds of $337,776.35:[15]

    (a) The unpaid principal balance of **$149,180,000.00**;

    (b) Property Protection Advances and attorneys' fees and costs of **$643,922.65**, which amount reflects the sum of **$55,034.60** in special servicing fees; **$7,500** in payoff processing fees; and **$581,388.05** in attorneys' fees and costs;

---

[15] Plaintiff's damages request identifies $337,776.35 in unapplied funds paid by Borrower, which Plaintiff credits against the total amount of damages that Borrower owes Plaintiff. (*See* ECF 196, First Loan Damages Decl. ¶ 74.)

(c) Interest of **$17,341,992.92**, which amount reflects the sum of **$2,889,056.99** in unpaid accrued interest, **$14,322,936.73** in unpaid default interest, and **$129,999.20** in interest on Property Protection Advances, which accrued from January 9, 2024 to October 1, 2025; and

(2)  That the final judgment reflect that Plaintiff is entitled to post-judgment interest at a rate calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered; and

(3)  That the Liquidation Fee be awarded in an amount to be determined following the foreclosure sale.

Dated: January 30, 2026      RESPECTFULLY SUBMITTED,
   New York, NY

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed

with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an

extension of time for filing objections must be addressed to Judge Engelmayer.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).